E-filing

ORIGINAL VIA FAX

David C. Parisi (SBN 162248)
Suzanne Havens Beckman (SBN 188814)
PARISI & HAVENS, LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
Telephone: (818) 990-1299
dcparisi@parisihavens.com
shavens@parisihavens.com

Jay Edelson (pro hac vice pending)
KAMBEREDELSON, LLC
350 North LaSalle Street, Suite 1300
Chicago, IL 60654
(312) 589-6370
jedelson@kamberedelson.com

Ethan Preston (pro hac vice pending)
350 North LaSalle Street, Suite 1300
Chicago, IL 60654
(312) 589-6371
ep@eplaw.us

*Attorneys for Plaintiff*

FILED
JAN 26 2009
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

ADR

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVSISION**

DAVID LEVIN, an individual, on his own behalf and on behalf of all others similarly situated,

Plaintiff

v.

CITIBANK, N.A., a national banking association,

Defendant.

Case No. C09-00350 EMC

**CLASS ACTION COMPLAINT AND JURY DEMAND**

GO 44 SEC. N
NOTICE OF ASSIGNMENT TO MAGISTRATE JUDGE SENT

David Levin ("Levin" or "Plaintiff"), for his complaint, alleges as follows upon information and belief, based upon, *inter alia*, investigation conducted by and through his attorneys, except as to those allegations pertaining to Plaintiff and his counsel personally, which are alleged upon personal knowledge:

**Introduction**

1. This is case is about Defendant's illegal and improper reduction of credit limits on home equity lines across the country in a thinly-veiled, illegal attempt to limit its exposure to the risk of collapse in the United States housing market by breaking its promises to the homeowners who have obtained mortgages from Defendant. Defendant services, originates, and owns billions of dollars worth of prime and subprime mortgages, including the home equity lines of credit ("HELOCs") at issue in this Complaint.

2. Each member of the Class had a HELOC for which Defendant reduced the available credit in a manner that was both illegal and grossly unfair. As a result of Defendant's wrongful actions, Plaintiff Levin brings this class action on behalf of himself and the putative class for actual damages and attorneys fees under the Truth-in-Lending Act (15 U.S.C. § 1640(a)), damages for breach of contract, damages for breach of the implied covenant of good faith and fair dealing, and equitable and injunctive remedies under California's Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code § 17203).

**Nature of the Claim**

3. As early as April 2008, Defendant began sending form letters to thousands of homeowners with home equity lines of credit ("HELOCs") from Defendant which indicated that the homeowners' lines of credit were being summarily lowered. For many of the homeowners who received these letters, their home value had not declined significantly, but Defendant nevertheless reduced the credit limits on the corresponding HELOCs. The letter Defendant sent to Plaintiff stated:

> We have determined that ***home values in your area, including your home value, have significantly declined***. As a result of this decline, ***your home's value no longer supports the current credit limit for your home equity line of credit***. . . . This reduction in your credit limit will remain in effect until the value in your home has been sufficiently restored. In the future, if you believe that market conditions in your home's area are improving and you wish to

request that your credit limit be increased, you must call us . . .

(emphasis added). When Plaintiff called Defendant, Defendant informed Plaintiff that if he sought to reinstate his credit limit he would have to obtain a formal appraisal at his own expense. Defendant has not disclosed how it determined that these home values had decreased. On information and belief, Defendant made this determination through dubious automated valuation models ("AVMs"), which are computerized econometric models tied to a database of information related to home values. Defendant sent these letters to many homeowners whose home value had not declined significantly and reduced the credit limits on the corresponding HELOCs. Indeed, the value of Plaintiff's own home in April 2008 had not declined significantly (i.e., less than 10 percent) from its value in 2006, when the HELOC was issued.

4. On information and belief, the basis of Defendant's letter was an AVM that used unreliable or inaccurate data. The home loan industry made widespread use of the AVMs in underwriting the loans which led to the current mortgage meltdown. Indeed, the abuse and manipulation of AVMs to overvalue real estate (in order to justify larger loans and correspondingly larger origination and/or transaction fees) has been widely criticized. However, AVMs remain just as susceptible to manipulation now that the industry (including Defendant) seeks to reduce their outstanding credit lines and their exposure to the housing crisis they created.

5. Defendant's systematic, mass reduction on the limits on its HELOCs was illegal and deceptive. Federal law only permits Defendant to reduce credit limits if an individual home securing a HELOC loses a significant amount of its value, and federal regulators have recently warned financial institutions that it would violate federal law to "reduce the credit limits of all HELOC accounts in a geographic area in which real estate values are generally declining without assessing the value of the collateral that secures each affected HELOC account."

6. Defendant's conduct is especially troubling given the significant role it played in the recent turbulence in the United States housing market. Indeed, in 2002, Defendant's

parent company (Citigroup Inc.) paid $215 million to settle Federal Trade Commission charges of systematic and widespread deceptive and abusive home equity lending practices. At the same time, Citigroup's top decision-makers have profited handsomely. For instance, Charles Prince (the CEO of Citigroup, Inc.) received a staggering $110 million in cash, stock, and stock options from 2002 to November 2007. When Mr. Prince retired in November 2007, he received a cash bonus of $10.4 million, retaining almost $28 million in unvested stock and stock options, in addition to being granted perquisites worth $1.5 million per year for the next five years.

7. Defendant's mass HELOC reductions are not only illegal and deceptive, but they are deeply unfair. On October 3, 2008, Congress passed the Emergency Economic Stabilization Act of 2008, Pub. L. No. 110-343. Under this legislation, the government established the Troubled Assets Relief Program which will distribute an unprecedented $700 billion bailout (funded on the backs of American taxpayers) to Defendant's parent company (Citigroup Inc.) and some other improvident financial institutions. The rationale advanced for this bailout is that it is needed to ensure liquidity in the financial markets in the face of the meltdown of mortgage-backed securities. Citigroup alone will receive $45 billion in capital investments and guarantees for $306 billion for its mortgage-backed securities. Despite its professed need for these public funds, Citigroup has continued with profligate expenses like paying $400 million for the naming rights to the New York Met's stadium. In stark contrast, Defendant's HELOC mortgagees, like all American consumers, are struggling in the faltering economy. Defendant has deprived these mortgagors of a crucial source of consumer credit at a critical time.

**Parties**

8. **Plaintiff David Levin:** David Levin is a resident of Oakland, California. From July 2006 to May 2008, Mr. Levin had a HELOC from Defendant secured by his personal residence. On March 17, 2008, Defendant reduced the credit limit on Mr. Levin's HELOC virtually down to his outstanding balance as of that date without any prior notice to him.

9. **Defendant Citibank, N.A.:** Citibank, N.A. ("Citibank") is a national banking association with its main offices at 3900 Paradise Road, Suite 127, Las Vegas, Nevada 89109. Citibank is one of the country's largest banks and has 380 offices in this state, as well as offices in Connecticut, Delaware, the District of Columbia, Florida, Illinois, Maryland, Massachusetts, Nevada, New Jersey, New York, Pennsylvania, Texas, and Virginia.

**Jurisdiction and Venue**

10. Citibank is a national banking association whose head offices are in Nevada, and can only be a citizen of Nevada under 28 U.S.C. § 1348 and *Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303 (2006). This Complaint alleges claims on behalf of a national class of home owners who are minimally diverse from Citibank. On information and belief, the aggregate of these claims exceed the sum or value of $5,000,000. This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332(d)(2).

11. This Court has personal jurisdiction over the Defendant under Cal. Code Civ. Proc. § 410.10 because some of the acts alleged herein were committed, and Levin incurred his injury, in California (and, specifically, the Northern District of California).

12. Venue is also proper before this Court under 28 U.S.C. § 1391(a)(2), (c).

**Intradistrict Assignment**

13. A substantial part of the events which give rise to the claim occurred in the place of Levin's residence, in Oakland, Alameda County. Under Local Rule 3-2(c), (d), this civil action should be assigned to the Oakland division of the Northern District of California.

**Allegations as to Plaintiff's Individual Claims**

14. Defendant and Levin entered into a HELOC agreement in July 2006. Under the terms of the HELOC, Defendant provided Levin a $144,000 line of credit. Levin's HELOC was secured by a mortgage (as that term is defined under Cal. Civ. Code 2920) on his primary residence.

15. On March 17, 2008, without any warning whatsoever, Defendant reduced Levin's credit limit by more than $80,000 – to his balance on that date. On March 18, 2008, Defendant sent a letter to Levin which stated that Defendant had "determined that home

values in your area, including your home value, have significantly declined. As a result of this decline, your home's value no longer supports the current credit limit for your home equity line of credit." Defendant's March 18 letter was Levin's first notice that Defendant ***had already reduced his credit line the day before***.

16. On or about March 19, 2008 and prior to receiving Defendant's March 18 letter, Levin had written two checks drawn from his HELOC. Defendant did not honor these checks, causing the payees of these checks to assess "not sufficient funds" fees against Levin. Levin only received Defendant's letter on March 21, 2008.

17. After receiving Defendant's letter, Levin contacted Defendant by telephone. Defendant informed Levin that it would only reinstate the original credit limits to his HELOC if he obtained an appraisal, at his expense, which indicated his home value has sufficiently recovered. Defendant did not indicate what valuation would suffice to reinstate the original credit limit on Levin's HELOC.

18. Levin sustained a variety of damages from Defendant's wrongful acts. Under his HELOC agreement with Defendant, Levin paid Defendant a $50 annual fee to maintain an account with Defendant. When Defendant reduced Levin's credit limit, it proportionately reduced and diminished the benefit of the bargain Levin expected to realize from that fee.

19. Levin's HELOC with Defendant was his primary line of credit. Defendant's unilateral reduction of the credit limits on Levin's HELOC dramatically lowered the ratio of credit Levin had available to him to the outstanding balance on that credit. In turn, on information and belief, Defendant's acts drove up his Credit Utilization Rate ("CUR"), a major component of his credit rating. Defendant's acts damaged Levin's credit rating and increased the cost of credit to him.

20. Defendant's reduced credit limits forced Levin to find a replacement home equity line from another lender in May 2008. In connection with this replacement home equity line, Plaintiff obtained a home appraisal indicating his home had lost significantly less than ten percent of its value. Levin paid substantial closing costs (including fees for home appraisal and mortgage origination) to obtain his replacement home equity line. When Levin used his new

home equity line to pay off and terminate his HELOC with Defendant, Defendant assessed a $434 early termination fee against Levin.

**Class Certification Allegations**

21. Plaintiff seeks certification of a class and four subclasses under Federal Rule 23(b)(2).

22. **Definition of the Class and Subclasses:** Pursuant to Federal Rule of Civil Procedure 23, Levin brings this Complaint against Defendant on behalf of a class (the "Class") of all persons nationwide who:

(a) had a home equity line of credit from Defendant, the credit limits of which Defendant later reduced; and

(b) who received the same or substantially similar letters from Defendant which indicated the equity line's credit limits were reduced because of a decline in home values in their general area.

The first subclass ("TILA Subclass") consists of all Class members who have objective evidence, specifically including a home appraisal by a properly licensed appraiser or home sale, showing that the value of the home securing the HELOC had not declined significantly since the origination of Defendant's HELOC. The second subclass ("NSF Subclass") consists of all Class members who i) wrote checks from their HELOC before receiving notice that Defendant reduced their line of credit, and ii) incurred damages (including "not-sufficient-funds" fees) because Defendant did not honor these checks after it reduced their HELOC. The third subclass ("ETF Subclass") consists of all Class members who obtained a HELOC from another lender after receiving Defendant's letter and who were subsequently charged a early termination fee by Defendant. A fourth subclass ("Annual Fee Subclass") consists of all Class members who paid an annual fee to maintain their HELOC account with Defendant. Excluded from the Class and Subclasses are 1) any Judge or Magistrate presiding over this action and members of their families; 2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers and directors; and 3) persons who properly execute and file a timely request for exclusion from the class and 4) the legal representatives, successors or

assigns of any such excluded persons.

23. **Numerosity:** The exact number of the members of the Class and Subclasses is unknown and is not available to Levin, but it is clear that individual joinder is impracticable. Defendant sent its generic credit line freeze letters (or substantially similar letters) to thousands of HELOC mortgagors, and a substantial percentage of the recipients of these letters fall into the definition of one or more of the Subclasses. Class Members can easily be identified through Defendants' records and public records.

24. **Commonality:** Common questions of fact and law exist as to all members of the Class and Subclasses and predominate over the questions affecting only individual members. These common questions include:

(a) What were Defendant's criteria for reducing the credit limits on its HELOCs;

(b) What were Defendant's methods for valuing the homes securing the HELOCs which credit limits it reduced;

(c) Whether Defendant's reduction and failure to reinstate of the credit limits on its HELOCs violated Regulation Z and/or TILA;

(d) Whether Defendant's reduction and failure to reinstate of the credit limits breached the terms of its HELOCs;

(e) Whether Defendant's reduction and failure to reinstate of the credit limits on its HELOCs was unfair;

(f) Whether Defendant's reduction of the credit limits on its HELOCs without giving any prior notice of the same was deceptive;

(g) Whether Defendant's assessment of early termination fees against persons who replaced their HELOC with Defendant with a HELOC from another lender was unfair, illegal, or a breach of the implied covenant of good faith and fair dealing;

(h) Whether Defendant reduction of the credit limits on its HELOCs diminished the benefit of the bargain its mortgagors derived from paying annual fees to maintain their HELOC accounts;

(i) Whether Levin and the Class are entitled to relief, and the nature of such relief.

25. **Typicality:** Levin's claims are typical of the claims of other members of the Class and each separate Subclass, as Levin and other members sustained damages arising out of the wrongful conduct of Defendant, based upon the same transactions which were made

uniformly to Levin and the public. The California law under which Levin's claims arise do not conflict with the laws of any other state in any material way.

26. **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the members of the Class and each separate Subclass, and have retained counsel who are competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Class or any of the separate Subclasses, and Defendant has no defenses unique to Plaintiff.

27. **Policies Generally Applicable to the Class:** This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class and each separate Subclass, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class or Subclasses as a whole. The policies of the Defendant challenged herein apply and affect members of the Class and respective Subclasses uniformly, and Plaintiff's challenge of these policies hinges on Defendant's conduct, not on facts or law applicable unique to Plaintiff. The Class and the Subclasses are suitable for certification under Rule 23(b)(2) because the damages sought are incidental to the declaratory and injunctive relief requested in this Complaint.

28. **Predominance and Superiority:** This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, as joinder of all members is impracticable. The damages suffered by the individual members of the Class and Subclasses will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. It would be virtually impossible for the individual members of the Class to obtain effective relief from the misconduct of Defendant. Even if members of the Class themselves could sustain such individual litigation, it would still not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management

difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

**Count I: Declaratory Relief Under TILA and Regulation Z**
(on behalf of Levin and the Class)

29. Plaintiff incorporates the above allegations by reference.

30. The Truth-in-Lending Act ("TILA") and its implementing regulation (Regulation Z) restrict Defendant from changing any of the terms of a mortgage or HELOC – including the credit limit. 15 U.S.C. § 1647(c)(1); 12 C.F.R. § 226.5b(f)(3). The exception relevant here permits Defendant to reduce the credit limits on its HELOCs "during any period in which . . .[t]he value of the consumer's principal dwelling which secures any outstanding balance is significantly less than the original appraisal value of the dwelling." 15 U.S.C. § 1647(c)(2)(B); 12 C.F.R. § 226.5b(f)(3)(vi)(A).

31. TILA and Regulation Z prohibit Defendant from reducing the credit limits on its HELOCs unless the value of the home securing the credit line has actually declined significantly. The Federal Reserve Board's Official Staff Commentary to Regulation Z defines "significant decline" for purposes of § 226.5b(f)(3)(vi)(A) as a decline in home value so that "the initial difference between the credit limit and the available equity (based on the property's appraised value . . . ) is reduced by fifty percent." The Official Staff Commentary further states that Regulation Z "does not require a creditor to obtain an appraisal before suspending credit privileges [but] a significant decline must occur before suspension can occur." On August 26, 2008, the Office of Thrift Supervision issued official guidance that warned it would violate Regulation Z to "***reduce the credit limits of all HELOC accounts in a geographic area in which real estate values are generally declining without assessing the value of the collateral that secures each affected HELOC account.***"

32. Before reducing the limits of its HELOCs, Defendant was legally required to confirm that the value of each of the homes had in fact declined. Plaintiff alleges on information and belief that, instead, Defendant used a variety of dubious AVMs based upon

fundamentally unreliable data (including the decline of home values in broad geographic areas) to speculate about the value its mortgagors' homes and thus to justify the mass reductions on its HELOC limits.

33. Moreover, TILA and Regulation Z prohibit such a reduction in a HELOC credit limit except "during [the] period in which" a home's value has substantially declined. Defendant thus has an ongoing obligation to monitor the value of the collateral securing its loans – including the value of Levin's home. Defendant's letter indicates that the credit freeze will remain in effect "until the value in [Plaintiff's] home has been sufficiently restored," implying that Defendant recognized its obligation to monitor the value of Levin's home. However, Defendant subsequently insisted that *Levin* pay for and obtain an favorable appraisal if Levin wanted Defendant to reinstate his HELOC's original credit limit. Defendant never indicated what valuation would be necessary to reinstate Levin's HELOC, nor what it deemed a "significant decline" in value.

34. The appraisal Levin obtained in connection with his replacement HELOC indicates that his home value has declined only marginally – not enough to justify a reduction of his HELOC's credit limits. Defendant's failure to reinstate Plaintiff's HELOC raises one of three implications:

(a) Defendant's AVM may be inherently flawed because it undervalues properties, and should not be used to justify reductions of HELOC credit limits;

(b) Defendant may not have been monitoring the value of Levin's home, because it would reinstated his credit limits before he canceled his HELOC and obtained a replacement HELOC;

(c) Defendant's AVM may have provided a favorable valuation of Levin's home, but Defendant ignored it and failed to reinstate the credit limits on Levin's HELOCs.

35. On information and believe, Defendant 1) only used AVMs to reduce the credit limits on the Class's HELOCs, failed to continue to monitor the value of the Class's homes, and insisted the Class obtain formal appraisal to reinstate their HELOCs and/or 2) used inherently faulty AVMs that undervalue the Class's home to justify the reduction of the credit limits on the Class member's HELOCs.

36. Plaintiff and the other members of the Class have suffered concrete, actual harm from these practices. Defendant has indicated it will refuse and has refused to honor checks drawn from HELOCs which exceed the improper reduction of credit limits which Defendant imposed in connection with the letters alleged above.

37. The Class and Defendant have adverse legal interests, and there is a substantial controversy between the Class and Defendant of sufficient immediacy and reality to warrant the issuance of a declaratory judgment as to whether Defendant's mass reduction of and subsequent failure to reinstate the credit limits for the Class's HELOCs violates TILA and Regulation Z. Levin, on his own behalf and behalf of the other Class members, seeks a declaratory judgment under 27 U.S.C. § 2201 that Defendant's use of AVMs and related mass reduction of HELOC credit limits, and/or its failure to reinstate HELOC credit limits based on its own AVMs, violates TILA and Regulation Z.

**Count II: Violation of the TILA and Regulation Z**
**(on behalf of Levin and TILA Subclass)**

38. Plaintiff incorporates the above allegations by reference.

39. Defendant reduced the credit limit for Levin and other TILA Subclass members' HELOCs. Contrary to Defendant's explanation, the homes securing the HELOCs for Levin and other TILA Subclass members did not decline significantly in value. As alleged above, the explanation in Defendant's letters was merely pretextual. Alternatively, the value of the homes securing the HELOCs for Levin and other TILA Subclass members was no longer in a significant decline from the original valuation, and Defendant's failed to reinstate their credit limits.

40. Defendant's reduction of and/or refusal to reinstate the credit limit for Levin and other TILA Subclass members' HELOCs violated the Truth-in-Lending Act and Regulation Z.

41. Defendant's violations of the Truth-in-Lending Act and Regulation Z damaged Levin and the other TILA Subclass members. These damages include early termination fees, appraisal fees, replacement HELOC closing costs, the increased price of credit, the lost benefit of the bargain on annual account fees, and "not sufficient fund" fees.

42. Levin, on his own behalf and behalf of the other TILA Subclass members, seeks actual damages under 15 U.S.C. § 1640(a)(1), statutory damages under 15 U.S.C. § 1640(a)(2)(B), and costs of the action, together with a reasonable attorneys' fee under 15 U.S.C. § 1640(a)(3).

**Count III: Breach of Contract**
**(on behalf of Levin and TILA Subclass)**

43. Plaintiff incorporates the above allegations by reference.

44. Levin and the other TILA Subclass members obtained HELOCs from Defendant. The terms of these HELOCs constitute a contract between the TILA Subclass members and Defendant.

45. The HELOCs contain a term which purports to provide Defendant the discretion to reduce the credit limit "during any period in which . . . the value of the [home securing the HELOC] declines significantly below the [home's] appraised value for purposes of the Account." Defendant drafted the terms of the HELOCs, and the ambiguity in the phrase "declines significantly" must be construed against Defendant.

46. Levin and the other TILA Subclass members performed under their HELOCs with Defendant. They made the payments due to Defendant under the HELOC (including, where appropriate, Defendant's early termination fee).

47. The credit limit under TILA Subclass members' HELOCs was a material term of the contract between TILA Subclass members and Defendant. Defendant materially breached the terms of the HELOCs by reducing the credit limit for Levin and other TILA Subclass members' HELOCs because their home value did not decline significantly. Alternatively, Defendant materially breached the terms of the HELOCs by failing to reinstate the credit limit for Levin and other TILA Subclass members' HELOCs after the value of the homes securing the HELOCs for Levin and other TILA Subclass members was no longer in a significant decline.

48. To the extent that any of the TILA Subclass members' HELOCs contain any term purporting to allow Defendant to unilaterally reduce the credit limit of TILA Class

members without complying with TILA and Regulation Z, such terms are void and violate public policy.

49. Defendant's breach of contract damaged Levin and the other TILA Subclass members. These damages include early termination fees, appraisal fees, replacement HELOC closing costs, the increased price of credit, the lost benefit of the bargain on annual account fees, and "not sufficient fund" fees.

50. Levin, on his own behalf and behalf of the other TILA Subclass members, seeks damages for Defendant's breach of contract, as well as interest and attorney's fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

**Count IV: Violation of California's UCL, Cal. Bus. & Prof. Code § 17200 (on behalf of Levin and TILA Subclass)**

51. Plaintiff incorporates the above allegations by reference.

52. Defendant's reduction of and/or failure to reinstate the original credit limits for Levin and other TILA Subclass members' HELOCs violated TILA and Regulation Z. Defendant sent a form letter to each of the Appraisal Class members which stated:

> We have determined that home values in your area, including your home value, have significantly declined. As a result of this decline, your home's value no longer supports the current credit limit for your home equity line of credit. . . . In the future, if you believe that market conditions in your home's area are improving and you wish to request that your credit limit be increased, you must call us

53. Defendant's form letters were deceptive and untrue because they were based on AVMs which recklessly or intentionally undervalued the homes securing the TILA Subclass's HELOCs. On information and belief, Defendant either recklessly used AVMs which did not have adequate safeguards to ensure their integrity or intentionally manipulated AVMs to justify reducing Levin and other TILA Subclass members' HELOC credit limits. Moreover, Defendant's use of these AVMs violated TILA and Regulation Z inasmuch as the AVMs were not sufficient, reliable, or adequate grounds to justify Defendant's reduction of the HELOC credit limits.

54. Moreover, given all of the other allegations in this Complaint, Defendant's acts alleged herein were unfair. Defendant's misconduct is a thinly-veiled attempt to limit its

exposure to the risk of collapse in the United States housing market. Defendant's conduct is especially unfair because it contributed to the mortgage meltdown that led to the current economic crisis. Defendant services, originates, and owns billions of dollars worth of mortgages. Defendant bears a measure of responsibility for the effects of the mortgage crisis on the housing market, and on Levin's home value in particular. In light of Defendant's actions, its reduction of and/or failure to reinstate the TILA Subclass's HELOC credit limits was unfair because it caused a substantial injury to consumers and competition that was not outweighed by any countervailing benefits to consumers or to competition and was not an injury the consumers themselves could reasonably have avoided. Moreover, Defendant's reduction of and/or failure to reinstate the TILA Subclass's HELOC credit limits offends public policy and/or violates the policy or spirit behind TILA, Regulation Z, Title XI of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, and the UCL, is oppressive and unscrupulous, and threatens or harms competition in the post-bust HELOC market.

55. These unlawful, deceptive, and unfair acts and practices are unfair competition in violation of the UCL. Defendant's violations of the UCL caused Levin and the other TILA Subclass members injury in fact, through lost money and property.

56. Defendant's violations of the UCL damaged Levin and the other TILA Subclass. These damages occurred in the form of early appraisal fees, replacement HELOC closing costs, the increased price of credit, the lost benefit of the bargain on annual account fees, and "not sufficient fund" fees.

57. Levin, on his own behalf and behalf of the other TILA Subclass members, seeks an order enjoining Defendant's unfair competition alleged herein, and restitution of any money or property obtained by Defendant through such unfair competition under the UCL (Cal. Bus. & Prof. Code § 17203), as well as interest and attorney's fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

**Count V: Breach of the Implied Covenant of Good Faith and Fair Dealing (on behalf of Levin and NSF Subclass)**

58. Plaintiff incorporates the above allegations by reference.

59. Levin and the other NSF Subclass members obtained HELOCs from Defendant. The terms of these HELOCs constitute a contract between the NSF Subclass members and Defendant.

60. Implied in the terms of each of these HELOCs was a covenant of good faith and fair dealing. This implied covenant prevents Defendant from engaging in conduct which frustrates the NSF Subclass members' rights to the benefits of the contract or which would injure the right of the NSF Subclass members' to receive the benefits of their HELOCs.

61. The credit limit was a material term of the NSF Subclass members' HELOCs. Defendant breached the implied covenant of good faith and fair dealing in the HELOCs by reducing the credit limit for Levin and other ETF Subclass members' HELOCs without notice.

62. Defendant's breach of contract caused Levin and other NSF Subclass members to incur damages, including "not-sufficient-funds" fees which were charged by payees of checks drawn from NSF Subclass members' HELOCs (and/or Defendant) and written after Defendant reduced NSF Subclass members' credit line and before NSF Subclass members received notice of the same.

63. Levin, on his own behalf and behalf of the other NSF Subclass members, seeks damages for Defendant's breach of the implied covenant of good faith and fair dealing, as well as interest and attorney's fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

**Count VI: Fraudulent Concealment (on behalf of Levin and NSF Subclass)**

64. Plaintiff incorporates the above allegations by reference.

65. Levin and the other NSF Subclass members obtained HELOCs from Defendant. The HELOCs contained credit limits. Prior to receiving Defendant's letter notifying them that their HELOCs' credit limit had been reduced, Levin and the other NSF Subclass members had an expectation or assumption that they would be able to write checks against the entire amount of the HELOCs' credit limit. Having created this expectation or assumption, Defendant had a duty to disclose to Levin and the other NSF Subclass members that it was going to reduce their HELOCs' credit limit.

66. Defendant failed to disclose to Levin and the other NSF Subclass members that it was reducing their HELOCs' credit limit until after they wrote checks on their HELOC which incurred "not-sufficient-funds" fees. The credit limit available under their HELOCs was material to the decision by Levin and the other NSF Subclass members to write checks out of their HELOC after Defendant reduced those credit limits. If Levin and the other NSF Subclass members had known that Defendant would dishonor their post-credit reduction checks, they would not have written such checks.

67. Defendant's failure to disclose that it was going to reduce the credit limits of Levin and the other NSF Subclass members' HELOCs was constituted fraudulent concealment.

68. Defendant's deceptive failure to disclose that it was going to reduce the credit limits of Levin and the other NSF Subclass members' HELOCs damaged Levin and the other NSF Subclass members. These damages took the form of "not-sufficient-funds" fees which were charged by payees of checks drawn from NSF Subclass members' HELOCs (and/or Defendant) and written after Defendant reduced NSF Subclass members' credit line and before NSF Subclass members received notice of the same.

69. Levin, on his own behalf and behalf of the other NSF Subclass members, seeks damages arising from Defendant's fraudulent concealment, as well as interest and attorney's fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

**Count VII: Violation of California's UCL, Cal. Bus. & Prof. Code § 17200**
**(on behalf of Levin and NSF Subclass)**

70. Plaintiff incorporates the above allegations by reference.

71. Levin and the other NSF Subclass members obtained HELOCs from Defendant. The HELOCs contained credit limits. Prior to receiving Defendant's letter notifying them that their HELOCs' credit limit had been reduced, Levin and the other NSF Subclass members had an expectation or assumption that they would be able to write checks against the entire amount of the HELOCs' credit limit. Having created this expectation or assumption, Defendant had a duty to disclose to Levin and the other NSF Subclass members that it was going to reduce their HELOCs' credit limit.

72. Defendant failed to disclose to Levin and the other NSF Subclass members that it was reducing their HELOCs' credit limit until after they wrote checks on their HELOC which incurred "not-sufficient-funds" fees. The credit limit available under their HELOCs was material to the decision by Levin and the other NSF Subclass members to write checks out of their HELOC after Defendant reduced those credit limits. If Levin and the other NSF Subclass members had known that Defendant would dishonor their post-credit reduction checks, they would not have written such checks.

73. Defendant's failure to disclose that it was going to reduce the credit limits of Levin and the other NSF Subclass members' HELOCs was deceptive and constituted unfair competition under the UCL. Defendant's violations of the UCL caused Levin and the other NSF Subclass members injury in fact, through lost money and property.

74. Defendant's deceptive failure to disclose that it was going to reduce the credit limits of Levin and the other NSF Subclass members' HELOCs damaged Levin and the other NSF Subclass members. These damages took the form of "not-sufficient-funds" fees which were charged by payees of checks drawn from NSF Subclass members' HELOCs (and/or Defendant) and written after Defendant reduced NSF Subclass members' credit line and before NSF Subclass members received notice of the same.

75. Levin, on his own behalf and behalf of the other NSF Subclass members, seeks an order enjoining Defendant's unfair competition alleged herein, and restitution of any money or property gained by the Defendant through such unfair competition under the UCL (Cal. Bus. & Prof. Code § 17203), as well as interest and attorney's fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

**Count VIII: Breach of the Implied Covenant of Good Faith and Fair Dealing (on behalf of Levin and ETF Subclass)**

76. Plaintiff incorporates the above allegations by reference.

77. Levin and the other ETF Subclass members obtained HELOCs from Defendant. The terms of these HELOCs constitute a contract between the ETF Subclass members and Defendant.

78. Implied in the terms of each of these HELOCs was a covenant of good faith and fair dealing. This implied covenant prevents Defendant from engaging in conduct which frustrates the ETF Subclass members' rights to the benefits of the contract or which would injure the right of the ETF Subclass members' to receive the benefits of their HELOCs.

79. The credit limit was a material term of the ETF Subclass members' HELOCs. Defendant breached the implied covenant of good faith and fair dealing in the HELOCs by reducing and refusing to reinstate the credit limit for Levin and other ETF Subclass members' HELOCs and then charging Levin and other ETF Subclass members early termination fees when they replaced Defendant's HELOC with that of another lender, or simply terminated their HELOCs after determining that they were not economical to maintain under the reduced credit limits.

80. Defendant's breach of the implied covenant of good faith and fair dealing damaged Levin and the other ETF Subclass members. These damages include Defendant's early termination fees.

81. Levin, on his own behalf and behalf of the other ETF Subclass members, seeks damages for Defendant's breach of the implied covenant of good faith and fair dealing, as well as interest and attorney's fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

**Count IX: Violation of California's UCL, Cal. Bus. & Prof. Code § 17200**
**(on behalf of Levin and ETF Subclass)**

82. Plaintiff incorporates the above allegations by reference.

83. Levin and the other ETF Subclass members obtained HELOCs from Defendant. Defendant reduced the credit limit for Levin and other ETF Subclass members' HELOCs without prior warning. Defendant charged Levin and other ETF Subclass members early termination fees when they obtained a replacement HELOC from other lenders after receiving Defendant's letter, or otherwise terminated their HELOCs.

84. On information and belief, Defendant has used an AVM to justify its reduction of the credit limit for Levin and other ETF Subclass members' HELOCs. Defendant refuses to reinstate the credit limits for the ETF Subclass's HELOCs without an appraisal. On information

and belief, Defendant recklessly used AVMs which did not have adequate safeguards to ensure their integrity, intentionally manipulated AVMs to justify reducing Levin and other ETF Subclass members' HELOC credit limits, and/or failing to revalue the homes of the ETF Subclass using its own AVM to reinstate their credit limits.

85. Defendant's misconduct is a thinly-veiled attempt to limit its exposure to the risk of collapse in the United States housing market. Defendant's conduct is especially unfair because it contributed to the mortgage meltdown that led to the current economic crisis. Defendant services, originates, and owns billions of dollars worth of mortgages. Defendant bears a measure of responsibility for the effects of the mortgage crisis on the housing market, and on Levin's home value in particular.

86. Defendant imposed the early termination fees after 1) its actions contributed to the decline of home values across the country and 2) its reduction of credit limits forced Levin and other ETF Subclass to seek replacement HELOCs. In light of Defendant's actions, its imposition of early termination fees was unfair because it caused a substantial injury to consumers and competition by punishing consumers for seeking alternate sources of home equity credit and is not outweighed by any countervailing benefits to consumers or to competition. Finally, the imposition of early termination fees is not an injury the consumers themselves could reasonably have avoided.

87. Further, Defendant's imposition of early termination fees offends public policy and/or violates the policy or spirit behind TILA, Regulation Z, and the UCL. Moreover, the imposition of early termination fees is oppressive and unscrupulous, and threatens or harms competition in the post-mortgage bust market for HELOCs. Defendant's early termination fees also violate Cal. Civ. Code § 1671 as penalties.

88. These unfair acts and practices are unfair competition in violation of the UCL. Defendant's violations of the UCL caused Levin and the other ETF Subclass members injury in fact, through lost money and property.

89. Defendant's violations of the UCL have damaged Levin and the other ETF Subclass members. These damages include Defendant's early termination fees.

90. Levin, on his own behalf and behalf of the other ETF Subclass members, seeks an order enjoining Defendant's unfair competition alleged herein, and restitution of any money or property gained by the Defendant through such unfair competition under the UCL (Cal. Bus. & Prof. Code § 17203), as well as interest and attorney's fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

**Count X: Breach of the Implied Covenant of Good Faith and Fair Dealing (on behalf of Levin and Annual Fee Subclass)**

91. Plaintiff incorporates the above allegations by reference.

92. Levin and the other Annual Fee Subclass members obtained HELOCs from Defendant. The terms of these HELOCs constitute a contract between the Annual Fee Subclass members and Defendant. Under the HELOCs, Levin and the other Annual Fee Subclass members paid Defendant an annual fee to maintain their HELOC accounts. When Defendant reduced their credit limits, it proportionately diminished the benefit of the bargain associated with that fee.

93. Implied in the terms of each of these HELOCs was a covenant of good faith and fair dealing. This implied covenant prevents Defendant from engaging in conduct which frustrates the Annual Fee Subclass members' rights to the benefits of the contract or which would injure the right of the ETF Subclass members' to receive the benefits of their HELOCs.

94. On information and belief, Defendant has used an AVM to justify its reduction of the credit limit for Levin and other Annual Fee Subclass members' HELOCs. Defendant refuses to reinstate the credit limits for the Annual Fee Subclass's HELOCs without an appraisal. On information and belief, Defendant recklessly used AVMs which did not have adequate safeguards to ensure their integrity, intentionally manipulated AVMs to justify reducing Levin and other Annual Fee Subclass members' HELOC credit limits, and/or failing to revalue the homes of the Annual Fee Subclass using its own AVM to reinstate their credit limits.

95. Defendant's breach of the implied covenant of good faith and fair dealing

damaged Levin and the other Annual Fee Subclass members. These damages include the lost benefit of the bargain associated with Defendant's annual fee.

96. Levin, on his own behalf and behalf of the other ETF Subclass members, seeks damages for Defendant's breach of the implied covenant of good faith and fair dealing, as well as interest and attorney's fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

**Count XI: Violation of California's UCL, Cal. Bus. & Prof. Code § 17200 (on behalf of Levin and Annual Fee Subclass)**

97. Plaintiff incorporates the above allegations by reference.

98. Levin and the other Annual Fee Subclass members obtained HELOCs from Defendant. Under the HELOCs, Levin and the other Annual Fee Subclass members paid Defendant an annual fee to maintain their HELOC accounts.

99. Defendant's misconduct is a thinly-veiled attempt to limit its exposure to the risk of collapse in the United States housing market. Defendant's conduct is especially troubling because it contributed to the subprime mortgage fiasco which has led to the current economic crisis generally and the recent turbulence in the housing market in particular. Indeed, Defendant played a significant role in the current collapse in the mortgage market: it services, originates, and owns billions of dollars worth of subprime mortgages. Defendant bears a measure of responsibility for the effects of the subprime mortgage bust on the housing market, and on Levin's home value in particular. When Defendant reduced their credit limits, it proportionately diminished the benefit of the bargain associated with that fee.

100. On information and belief, Defendant has used an AVM to justify its reduction of the credit limit for Levin and other Annual Fee Subclass members' HELOCs. On information and belief, Defendant breached the implied covenant of good faith and fair dealing in the HELOCs by either recklessly using AVMs which did not have adequate safeguards to ensure their integrity or intentionally manipulated AVMs to justify reducing Levin and other Annual Fee Subclass members' HELOC credit limits. Defendant's use of AVMs deprived Levin and other Annual Fee Subclass members of the benefit of the bargain associated with Defendant's annual fee.

101. The imposition and failure to refund the annual fee was unfair because Defendant's reduction of Levin and other Annual Fee Subclass members' HELOC credit limits and use of AVMs deprived them of the benefit of the bargain associated with Defendant's annual fee. This caused a substantial injury to consumers and competition that was not outweighed by any countervailing benefits to consumers or to competition and was not an injury the consumers themselves could reasonably have avoided. Moreover, Defendant's imposition and failure to refund the annual fee offends public policy and/or violates the policy or spirit behind TILA, Regulation Z, Title XI of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, and the UCL, is oppressive and unscrupulous, and threatens or harms competition in the post-mortgage bust market for HELOCs.

102. These unfair acts and practices are unfair competition in violation of the UCL.

103. Defendant's violations of the UCL damaged Levin and the other Annual Fee Subclass members. These damages include the lost benefit of the bargain associated with Defendant's annual fee. Defendant's violations of the UCL caused Levin and the other Annual Fee Subclass members injury in fact, through lost money and property.

104. Levin, on his own behalf and behalf of the other Annual Fee Subclass members, seeks an order enjoining Defendant's unfair competition alleged herein, and restitution of any money or property gained by the Defendant through such unfair competition under the UCL (Cal. Bus. & Prof. Code § 17203), as well as interest and attorney's fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

WHEREFORE, Plaintiff prays that the Court enter judgment and orders in their favor and against Defendant as follows:

(a) Certifying the action as a class action and designating Plaintiff and his counsel as representatives of the Class and Subclasses;

(b) Declaratory relief for the Class on Count I;

(c) Statutory damages under 15 U.S.C. § 1640(a)(2)(B) for the TILA Subclass on Count II;

(d) Actual damages for the TILA Subclass on Counts II to IV, including

early termination fees, appraisal fees, replacement HELOC closing costs, the increased price of credit, the lost benefit of the bargain on annual account fees, and "not sufficient fund" fees, actual damages on Count V and Count VI for the NSF Subclass, including "not-sufficient-funds" fees, actual damages on Count VIII for the ETF Subclass, including early termination fees, and actual damages on Count X, including Defendant's annual fees, in an amount to be proved at trial;

(e) Equitable and injunctive relief for the TILA Class on Count IV, Count VII for the NSF Subclass, Count IX for the ETF Subclass, and Count XI for the Annual Fee Subclass, including restitution of property gained by the unfair competition alleged herein, and an order for accounting of such property;

(f) An award of reasonable attorney's fees for Plaintiff and his counsel;

(g) Awarding pre- and post-judgment interest; and

(h) Granting such other and further relief as the Court may deem just and proper.

Dated: January 26, 2009

By: ______________________

David C. Parisi (Cal. Bar. No. 162248)
Suzanne L. Havens Beckman (Cal. Bar. No. 188814)
Parisi & Havens LLP
15233 Valleyheart Drive
Sherman Oaks, CA 91403
(818) 990-1299
dparisi@parisihavens.com
shavens@parisihavens.com

Jay Edelson (Pro hac vice pending)
KAMBEREDELSON, LLC
350 North LaSalle Street, Suite 1300
Chicago, IL 60654
(312) 589-6370
jedelson@kamberedelson.com

Ethan Preston (Pro hac vice pending)
350 North LaSalle Street, Suite 1300
Chicago, IL 60654
(312) 589-6371
ep@eplaw.us

**JURY TRIAL DEMAND**

The Plaintiff hereby demands a trial by jury of all issues so triable.

Dated: January 23, 2009

By:

David C. Parisi (Cal. Bar. No. 162248)
Suzanne L. Havens Beckman (Cal. Bar. No. 188814)
Parisi & Havens LLP
15233 Valleyheart Drive
Sherman Oaks, CA 91403
(818) 990-1299
dparisi@parisihavens.com
shavensbeckman@parisihavens.com

Jay Edelson
KAMBEREDELSON, LLC
350 North LaSalle Street, Suite 1300
Chicago, IL 60654
(312) 589-6370
jedelson@kamberedelson.com

Ethan Preston
350 North LaSalle Street, Suite 1300
Chicago, IL 60654
(312) 589-6371
ep@eplaw.us