IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID LEVIN,<br><br>    Plaintiff,<br><br>v.<br><br>CITIBANK, N.A.,<br><br>    Defendant | No. C-09-0350 MMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS; GRANTING DEFENDANT'S MOTION TO STRIKE; CONTINUING CASE MANAGEMENT CONFERENCE** |

    Before the Court is defendant Citibank, N.A.'s ("Citibank") "Motion to Dismiss Each Claim and All of the Claims in Plaintiff's Complaint," filed June 5, 2009, and Citibank's "Motion to Strike Certain Allegations in Plaintiff's Complaint," filed June 5, 2009. Plaintiff David Levin ("Levin") has filed opposition to each motion, and Citibank has filed a reply to each opposition. Having read and considered the papers filed in support of and in opposition to the motions, the Court rules as follows.[1]

**BACKGROUND**

    On July 7, 2006, Levin entered into an agreement with Citibank titled Home Equity Line of Credit Agreement and Disclosure ("HELOC"). (See Miller Decl. Ex. A at 1.)[2] Under the terms of the HELOC, Citibank provided Levin with a $144,000 line of credit secured by

---

[1] By order filed August 25, 2009, the Court took the motions under submission.

[2] The Court grants Citibank's unopposed request for judicial notice of the HELOC.

Levin's real property located in Oakland, California. (See id.) The HELOC provided that Citibank "may prohibit additional extensions of credit or reduce [the] Credit Limit during any period in which . . . [t]he value of the Property declines significantly below the Property's appraised value for purposes of the Account." (See id. Ex. A at 5.)

In his complaint, Levin alleges that Citibank, on March 17, 2008, "reduced Levin's credit limit by more than $80,000 – to his balance on that date." (See Compl. ¶ 15.) According to Levin, Citibank made its determination "through dubious automated valuation models ('AVMs')" and, in particular, by employing "an AVM that used unreliable or inaccurate data." (See Compl. ¶¶ 3-4.) Levin also alleges he was not informed of Citibank's determination until March 21, 2008, when he received from Citibank a letter Citibank mailed to him on March 18, 2008 (see Compl. ¶¶ 15-16), which letter stated:

> We have determined that home values in your area, including your home value, have significantly declined. As a result of this decline, your home's value no longer supports the current credit limit for your home equity line of credit. . . . This reduction in your credit limit will remain in effect until the value in your home has been sufficiently restored. In the future, if you believe that market conditions in your home's area are improving and you wish to request that your credit limit be increased, you must call us . . . .

(See Compl. ¶ 3.)

Levin further alleges that, on March 19, 2008, before he received the letter, he had written two checks drawn against the HELOC line of credit, and that he subsequently was required to pay "not sufficient funds" fees. (See Compl. ¶ 16.) Levin additionally alleges that, in May 2008, he was "forced [ ] to find a replacement home equity line from another lender," that he paid "substantial closing costs" to the other lender, and that, in connection with his application to such other lender, Levin obtained an appraisal indicating that, as of April 2008, the value of his home had declined "less than 10 percent" from its value in 2006 when the line of credit was opened (see Compl. ¶¶ 3, 20), an amount Levin alleges does not suffice to constitute a "significant" decline (see Compl. ¶ 3). Thereafter, according to Levin, when he used the replacement home equity line "to pay off and terminate" the HELOC, Citibank assessed a "$434 early termination fee" against Levin. (See Compl. ¶ 20.)

**DISCUSSION**

Citibank moves to dismiss each count in the complaint and, additionally, to strike certain allegations from the complaint.

**A. Motion to Dismiss**

The complaint includes eleven counts, each of which Citibank argues is subject to dismissal.

### 1. Count I: Declaratory Relief Under TILA and Regulation Z

Under the Truth in Lending Act ("TILA"), a creditor may "[p]rohibit additional extensions of credit or reduce the credit limit applicable to an account under [an open end consumer credit] plan during any period in which the value of the consumer's principle dwelling which secures any outstanding balance is significantly less than the original appraisal value of the dwelling." See 15 U.S.C. § 1647(c)(2)(B). Similarly, under "Regulation Z," a creditor may "[p]rohibit additional extensions of credit or reduce the credit limit applicable to an agreement during any period in which [ ] [t]he value of the dwelling that secures the plan declines significantly below the dwelling's appraised value for purposes of the [home equity] plan." See 12 C.F.R. § 226.5b(f)(3)(vi).

Levin alleges Citibank sent "generic credit line freeze letters" to "thousands of HELOC mortgagees," including himself. (See Compl. ¶¶ 3, 23.) In Count I, Levin seeks, on behalf of himself and a class he seeks to represent, a declaration that Citibank's "use of AVMs and related mass reduction of HELOC credit limits, and/or failure to reinstate HELOC credit limits based on its own AVMs, violates TILA and Regulation Z." (See Compl. ¶ 37.) Citibank argues Levin lack standing to seek such declaratory relief.

A plaintiff has standing to seek equitable relief, such as a declaration that the defendant's conduct has violated the law, where he "has suffered or is threatened with a concrete and particularized legal harm, coupled with a sufficient likelihood that [he] will again be wronged in a similar way." See Bird v. Lewis & Clark College, 303 F.3d 1015, 1019 (9th Cir. 2002) (internal quotations and citations omitted). As noted, Levin alleges he terminated the HELOC after Citibank reduced the credit limits. Because Levin and Citibank

3

1 no longer have a contractual relationship of any type, and because Levin does not include
2 any allegation suggesting that, in the absence of such a relationship, there exists any
3 possibility Citibank will violate Levin's rights under TILA and/or Regulation Z in the future,
4 the Court finds Levin has failed to allege facts sufficient to support a claim for declaratory
5 relief. See id. at 1019-20 (holding plaintiff lacked standing to seek declaration college had
6 discriminated against her on basis of disability, where she had "since graduated" and did
7 not allege any plans to return as student).

Accordingly, Count I is subject to dismissal.

### 2. Count II: Violation of TILA and Regulation Z

In Count II, Levin alleges that, contrary to Citibank's letter, the property securing the HELOC "did not decline significantly in value." (See Compl. ¶ 39.) In support thereof, Levin, as set forth above, alleges that in connection with his application for a line of credit from another lender, an appraisal of his property was conducted and that, according to said appraisal, the value of his property, between the date on which the line of credit was opened and April 2008, had declined "less than ten percent." (See Compl. ¶ 3.)

As noted, TILA and Regulation Z allow a creditor to reduce a credit limit if the "value" of the "dwelling" securing the mortgage declines "significantly" below the value at which the property was appraised at the time the line of credit was opened. See 15 U.S.C. § 1647(c)(2)(B); 12 C.F.R. § 226.5b(f)(3)(vi)(A). In a supplement to Regulation Z in which "official staff interpretations of Regulation Z" are set forth, the staff of the Federal Reserve Board states as follows: "What constitutes a significant decline for purposes of § 226.5b(f)(3)(vi)(A) will vary according to individual circumstances. In any event, if the value of the dwelling declines such that the initial difference between the credit limit and the available equity (based on the property's appraised value for purposes of the plan) is reduced by fifty percent, this constitutes a significant decline in the value of the dwelling for

//
//
//

purposes of § 226.5b(f)(3)(vi)(A)." See 12 C.F.R. Part 226, Supp. I, § 5b(f)(3)(vi) ¶ 6.[3]

In light of such interpretation, Citibank argues, Levin's complaint is insufficient to state a claim for the reason that Levin has not alleged the <u>equity</u> in his home did not decline significantly. The Court disagrees. In essence, Citibank argues that Levin is required to negate in his complaint a particular theory on which Citibank's assertion of a significant reduction in value could be based. If Citibank's notice had set forth such theory, Citibank's position might be argued with more persuasive force. Because the law on which Citibank relied in sending the subject notice contemplates a variety of individual circumstances under which a finding of a significant decline can be predicated, however, Levin should not be required to anticipate and endeavor to negate, in his complaint, the particular circumstances underlying Citibank's determination.

Accordingly, Citibank has failed to show Count II is subject to dismissal.

**3. Count III: Breach of Contract**

The HELOC, using language similar to that set forth in Regulation Z, provides that "Citibank may prohibit additional extensions of credit or reduce [the] Credit Limit" under specified circumstances, one of which is "[t]he value of the Property declines significantly below the Property's appraised value for purposes of the Account." (See Miller Decl. Ex. A at 5.)

As noted, Levin alleges Citibank sent him a letter setting forth its determination that the value of Levin's property had declined significantly. In Count III, Levin alleges Citibank breached the terms of the HELOC by reducing his credit line, because the value of his property had not declined significantly below the property's appraised value. Citibank argues that Levin's allegations are insufficient to state a claim, again on the theory that Levin is required to allege that the equity in his home did not decline significantly.

---

[3]Consistent therewith, the HELOC does not define the phrase "declines significantly," but does provide one "example": "[I]f the value of the Property declines such that the initial difference between the Credit Limit and the available equity (based on the Property's appraised value) is reduced by fifty percent, such an event would constitute a significant decline in the value of the Property." (See Miller Decl. Ex. A at 5.)

5

The Court, for the reasons set forth above with respect to Count II, finds Levin is not required, in his complaint, to negate all possible circumstances on which Citibank could have based its determination that the value of Levin's property significantly declined.

Accordingly, Citibank has failed to show Count III is subject to dismissal.

**4. Count IV: Violation of California's UCL, Cal. Bus. & Prof. Code § 17200**

In Count IV, Levin alleges Citibank's violation of TILA constituted an "unlawful" act in violation of § 17200 of the California Business & Professions Code. Citibank argues Count IV is subject to dismissal because Levin has failed to allege a violation of TILA.

"[A] lender's violation of TILA can be an unfair business practice or act under [§ 17200]." Pacific Shore Funding v. Lozo, 138 Cal. App. 4th 1342, 1347 (2006). Because the Court, for the reasons set forth above with respect to Count II, finds Levin's TILA claim is not subject to dismissal, the Court finds Citibank has failed to show the entirety of Count IV is subject to dismissal on the ground asserted by Citibank.

To the extent Levin seeks as relief for such violation, however, an order "enjoining [Citibank's] unfair competition" (see Compl. ¶ 57), Count VI is subject to dismissal. As noted, a plaintiff has standing to seek equitable relief, such as an order enjoining the defendant from engaging in certain conduct, where he "has suffered or is threatened with a concrete and particularized legal harm, coupled with a sufficient likelihood that [he] will again be wronged in a similar way." See Bird, 303 F.3d at 1019 (holding plaintiff who had "since graduated" and did not allege any plans to return as student lacked standing to seek order requiring college to "change its overseas program"). The Court, for the reasons set forth above with respect to Count I, finds Levin has failed to allege sufficient facts to establish his standing to seek the injunctive relief sought in Count IV.

**5. Count V: Breach of Implied Covenant of Good Faith and Fair Dealing**

As noted, Levin alleges Citibank made the determination to reduce his credit limit on March 17, 2008 (see Compl. ¶ 15) and mailed him a letter so notifying him on March 18, 2008 (see id.), which letter he received on March 21, 2008 (see Compl. ¶ 16). Also, as noted, Levin alleges that, on March 19, 2008, before he received the letter, he had written

6

two checks drawn against the HELOC line of credit and subsequently was required to pay "not sufficient funds" fees. (See id.) In Count V, Levin alleges Citibank breached the implied covenant of good faith and fair dealing implicit in the HELOC by reducing his credit limit "without notice," thus causing him to be liable for "not sufficient funds" fees. (See Compl. ¶¶ 61-62.) Citibank argues Count V is subject to dismissal for the reason that the conduct upon which the claim is based is addressed in a specific provision of the HELOC.

Under California law, the implied covenant of good faith and fair dealing "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." See Guz v. Bechtel Nat'l, Inc., 24 Cal.4th 317, 349-50 (2000). Consequently, where a plaintiff bases a claim for breach of the implied covenant of good faith and fair dealing on the theory that the plaintiff is entitled to a substantive right "beyond those to which the parties actually agreed, the claim is invalid," and where a plaintiff bases such a claim on the defendant's failure to comply with the "terms to which the parties did agree, it is superfluous." See id. at 352.

Here, the HELOC includes the following provision, titled "Notices":

> All Notices provided for in the Agreement shall be in writing and shall be deemed given (a) when delivered on a Business Day if delivered personally, (b) on the day after deposit with any overnight courier if such date is a Business Day, (c) three days after deposit in the United States mail, if delivered by certified mail, return receipt requested, postage prepaid and addressed to you at the address set forth on the first page of the Agreement or addressed to Citibank at the customer service address shown on your monthly statement.

(See Miller Decl. Ex. A at 7.)

Because the time by which Citibank is required to provide notice is addressed by an express provision of the HELOC, Levin may not base a claim for breach of the implied covenant of good faith and fair dealing on a theory Citibank failed to provide timely notice of the subject determination.

Accordingly, Count V is subject to dismissal.[4]

---

[4] Because the complaint contains no allegation that the manner in which Citibank provided him notice violated the HELOC, the Court has not considered whether Levin could state a breach of contract claim on the theory Citibank failed to comply with the above-

### 6. Count VI: Fraudulent Concealment

In Count VI, Levin alleges Citibank "failed to disclose to Levin . . . that it was reducing [his] credit limit until after [he] wrote checks on [his] HELOC which incurred 'not-sufficient-funds' fees" (see Compl. ¶ 66), and that Citibank's "failure to disclose that it was going to reduce the credit limits of Levin . . . constituted fraudulent concealment" (see Compl. ¶ 67), and was "deceptive" (see Compl. ¶ 68). Citibank argues Count VI is subject to dismissal because Levin has failed to plead his claim with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure.

Under California law, "[c]oncealment is a species of fraud or deceit." See Blickman Turkus LP v. MF Downtown Sunnyvale, 162 Cal. App. 4th 858, 868 (2008). "The elements of an action for fraud and deceit based on concealment are: (1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage." Id. (internal quotation, citation, and alteration omitted). With respect to the third of the above-referenced elements, the plaintiff must plead the concealment was "made by the defendant with the intent to induce action (or inaction) by the plaintiff." See id. at 869 (emphasis in original).

Here, as Citibank correctly notes, Levin fails to plead any facts to support a finding that Citibank, by mailing notice of its determination after it made the determination, acted with the intent to defraud Levin in any manner, much less that Citibank intended to induce Levin to write checks that would not be honored. Levin's conclusory reference to "fraudulent concealment" and his stated conclusion that the delay in notification was "deceptive" (see Compl. ¶¶ 67, 68) are insufficient. See In re Glenfed Sec. Litig., 42 F.3d

---

quoted provision.

8

1541, 1547-48 (9th Cir. 1994) (holding "Rule 9(b) requires particularized allegations of the circumstances <u>constituting</u> fraud"; further holding "it [is] insufficient to set forth conclusory allegations of fraud") (emphasis in original).

Accordingly, Count VI is subject to dismissal.

### 7. Count VII: Violation of California's UCL, Cal. Bus. & Prof. Code § 17200

In Count VII, Levin alleges Citibank, by engaging in a "deceptive failure to disclose that it was going to reduce the credit limits," also engaged in "unfair competition." (<u>See</u> Compl. ¶¶ 73, 74.) In other words, Levin bases Count VII on the same theory as that supporting Count VI. Indeed, the allegations supporting Count VI and Count VII are in all material respects the same. (<u>See</u> Compl. ¶¶ 65-68; Compl. ¶¶ 71-74.)

A § 17200 claim based on a theory of a deceptive conduct is subject to Rule 9(b). <u>See</u> <u>Kearns v. Ford Motor Co.</u>, 567 F.3d 1120, 1125-27 (9th Cir. 2009) (affirming dismissal of § 17200 claims based on theories of "fraudulent conduct" and "failure to disclose information pertinent to consumers," where plaintiff failed to allege claims in conformity with Rule 9(b)). Here, the Court finds, for the reasons set forth above with respect to Count VI, Count VII is subject to dismissal for failure to comply with Rule 9(b).

Moreover, to the extent Levin seeks an order "enjoining [Citibank's] unfair competition" (<u>see</u> Compl. ¶ 75), Count VII is subject to dismissal for the additional reasons set forth above with respect to Count IV.

### 8. Count VIII: Breach of Implied Covenant of Good Faith and Fair Dealing

As noted, Levin alleges that after Citibank reduced his credit limit, he was "forced [ ] to find a replacement home equity line from another lender," and that, when he used the replacement home equity line "to pay off and terminate" the HELOC, Citibank assessed a "$434 early termination fee" against him. (<u>See</u> Compl. ¶ 20.) In Count VIII, Levin alleges Citibank breached the implied covenant of good faith and fair dealing implicit in the HELOC by charging him the early termination fee. (<u>See</u> Compl. ¶ 79.) Citibank argues Count VIII is subject to dismissal because it had a contractual right to charge an early termination fee.

Under California law, the "implied covenant will only be recognized to further the

9

contract's purpose; it will not be read into a contract to prohibit a party from doing that which is expressly permitted by the agreement itself." See Wolf v. Walt Disney Pictures and Television, 162 Cal. App. 4th 1107, 1120 (2008). Stated otherwise, "if the defendant did what it was expressly given the right to do, there can be no breach [of the implied covenant]." See id.

Here, the HELOC, in a section titled "Early Closure Release Fee," provides as follows:

> If Citibank pays the closing costs to open your Account and, within 36 months of the date of this Agreement, you request that your Account be closed or take any other action which will result in a release of the Mortgage, you agree to pay an early closure release fee which will consist of all costs Citibank incurred to open your Account. These costs are disclosed as Closing Costs on the first page of this Agreement.

(See Miller Decl. Ex. A at 4.)

The first page of the HELOC states that Citibank paid the total amount of $434.25 in "Closing Costs" when the HELOC was opened. (See id.) Further, the date of the HELOC is July 7, 2006 (see id.), and Levin alleges he closed the HELOC in May 2008 (see Compl. ¶ 20), a date less than 36 months thereafter. Consequently, Citibank was expressly permitted by the terms of the HELOC to charge Levin a fee of $434.

Accordingly, Count XIII is subject to dismissal.[5]

### 9. Count IX: Violation of California's UCL, Cal. Bus. & Prof. Code § 17200

As pleaded, Count IX is derivative of Count XIII. (See Compl. ¶¶ 83, 86 (challenging Citibank's imposition of "early termination fees").) Accordingly, the Court finds, for the reasons set forth above with respect to Count XIII, Count IX is subject to dismissal.

Moreover, to the extent Levin seeks an order "enjoining [Citibank's] unfair competition" (see Compl. ¶ 90), Count IX is subject to dismissal for the additional reasons set forth above with respect to Count IV.

---

[5] If Levin establishes his claim that Citibank breached the terms of the HELOC by improperly reducing the credit limit, however, it would appear Levin could recover the early termination fee as part of his damages. Indeed, Levin has alleged the damages incurred as a result of the alleged breach of contract include his payment of the early termination fee. (See Compl. ¶ 49.)

10

**10. Count X: Breach of Implied Covenant of Good Faith and Fair Dealing**

In Count X, Levin alleges he paid Citibank an "annual fee to maintain [the] HELOC." (See Compl. ¶ 92.) Levin further alleges that Citibank breached the implied covenant of good faith and fair dealing by improperly reducing his credit limit (see Compl. ¶ 94), thereby depriving him of the "benefit of the bargain associated with [Citibank's] annual fee" (see Compl. ¶ 95).

As Citibank correctly notes, the alleged breach identified in Count X is the improper reduction of Levin's credit limit. In particular, Levin alleges that one result of such breach is that he did not receive access to the full credit limit for the entirety of the year, even though he paid an annual fee. Indeed, in Count III, Levin expressly seeks to recover, in the event he establishes a breach of contract, "the lost benefit of the bargain on annual account fees." (See Compl. ¶ 49.)[6]

Accordingly, Count X is subject to dismissal as duplicative of Count III.

**11. Count XI: Violation of California's UCL, Cal. Bus. & Prof. Code § 17200**

In Count XI, Levin alleges Citibank improperly reduced his credit limit. (See Compl. ¶¶ 100.) As a result, Levin alleges, he was deprived of the "benefit of the bargain associated with [Citibank's] annual fee." (See Compl. ¶ 101.) In other words, Count XI is derivative of Count III.

Citibank argues Count XI is subject to dismissal because Levin has failed to allege a viable substantive claim on which Count XI could be based. Because the Court, for the reasons set forth above with respect to Count III, has found Levin's breach of contract claim is not subject to dismissal, and because Levin alleges the reduction of his credit limit occurred as part of a unlawful practice by Citibank imposed on "thousands" (see Compl. ¶ 3), the Court finds Citibank has failed to show Count XI is subject to dismissal on the ground asserted by Citibank.

---

[6]Under the terms of the HELOC, Levin was required to pay a $50 annual fee, payable July 7 of each year. (See Miller Decl. Ex. A at 1, 3.) Because Levin had full use of the HELOC from July 2007 to March 17, 2008, it appears Levin is seeking a partial refund of the annual fee in the event he establishes a breach of contract.

11

To the extent Levin seeks an order "enjoining [Citibank's] unfair competition" (see Compl. ¶ 104), however, Count XI is subject to dismissal for the reasons set forth above with respect to Count IV.

**B. Motion to Strike**

"The court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Citibank argues that certain paragraphs in the complaint, or portions thereof, should be stricken as immaterial, impertinent and scandalous.

In that regard, Citibank first argues ¶¶ 6 and 7 in the complaint should be stricken because such paragraphs set forth alleged wrongdoing by Citigroup, Inc. ("Citigroup"), which is not a party to the instant action. Consequently, Citibank argues, ¶¶ 6 and 7 are immaterial. The Court agrees. The complaint does not allege that Citigroup itself had any involvement or participation in any of the activity giving rise to the claims alleged by Levin herein. Accordingly, ¶¶ 6 and 7 are subject to dismissal.

Second, Citibank argues that the following portions of ¶¶ 54, 85, and 99 are immaterial and impertinent, and should be stricken:

> Moreover, given all of the other allegations in this complaint, Defendant's acts alleged herein were unfair. Defendant's misconduct is a thinly-veiled attempt to limit its exposure to the risk of collapse in the United States housing market. Defendant's conduct is especially unfair because it contributed to the mortgage meltdown that led to the current economic crisis. . . . Defendant bears a measure of responsibility for the effects of the mortgage crisis on the housing market, and on Levin's home value in particular.

(See Compl. ¶ 54.)

> Defendant's misconduct is a thinly-veiled attempt to limit its exposure to the risk of collapse in the United States housing market. Defendant's conduct is especially unfair because it contributed to the mortgage meltdown that led to the current economic crisis. . . . Defendant bears a measure of responsibility for the effects of the mortgage crisis on the housing market, and on Levin's home value in particular.

(See Compl. ¶ 85.)[7]

---

[7] Paragraph 85 is set forth in Count IX, which, as discussed above, is subject to dismissal. Said paragraph, however, is incorporated by reference in Count XI (see Compl. ¶ 97), which count will not be dismissed.

12

> Defendant's misconduct is a thinly-veiled attempt to limit its exposure to the risk of collapse in the United States housing market. Defendant's conduct is especially unfair because it contributed to the subprime mortgage fiasco which has lead to the current economic crisis generally and the recent turbulence in the housing market in particular. Indeed, defendant played a significant role in the current collapse in the mortgage market: it services, originates, and owns billions of dollars worth of subprime mortgages. Defendant bears a measure of responsibility for the effects of the subprime mortgage bust on the housing market, and on Levin's home value in particular. . . .

(See Compl. ¶ 99.)

The Court finds the above-quoted allegations constitute hyperbolic and conclusory remarks that have no bearing on the question of whether Citibank, by reducing Levin's credit limit, failed to comply with TILA, Regulation Z, and/or the terms of the HELOC.

Accordingly, the above-quoted portions of ¶¶ 54, 85, and 99 will be stricken from the complaint.

**CONCLUSION**

For the reasons stated above:

1. Citibank's motion to dismiss is hereby GRANTED in part and DENIED in part, as follows:

    a. Counts I, V, VI, VII, VIII, IX, and X are hereby DISMISSED.

    b. To the extent Counts IV and XI include a claim for injunctive relief, Counts VI and XI are hereby DISMISSED.

    c. In all other respects, the motion is DENIED.

2. Citibank's motion to strike is hereby GRANTED:

    a. Paragraphs 6 and 7 are hereby STRICKEN.

    b. The portions of ¶¶ 54, 85, and 99 quoted above (see, supra, at 12-13) are hereby STRICKEN.

3. In the event Levin seeks to amend any or all of the dismissed counts to cure the deficiencies identified above, Levin is hereby ordered to file a First Amended Complaint no later than October 9, 2009. If Levin elects not to file a First Amended Complaint, the instant action will proceed on the remaining claims in the initial complaint.

13

4. The Case Management Conference is hereby CONTINUED from September 25, 2009 to December 4, 2009. A Joint Case Management Statement shall be filed no later than November 25, 2009.

**IT IS SO ORDERED.**

Dated: September 17, 2009

MAXINE M. CHESNEY
United States District Judge