David C. Parisi (Cal. Bar. No. 162248)
Suzanne Havens Beckman (Cal. Bar. No. 188814)
Parisi & Havens LLP
15233 Valleyheart Drive
Sherman Oaks, California  91403
(818) 990-1299
dparisi@parisihavens.com
shavens@parisihavens.com

Jay Edelson
Michael McMorrow
KamberEdelson, LLC
350 North LaSalle Street, Suite 1300
Chicago, IL 60654
(312) 589-6370
jedelson@kamberedelson.com
mmcmorrow@kamberedelson.com

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID LEVIN, an individual, on his own behalf and on behalf of all others similarly situated,<br><br>Plaintiff<br><br>v.<br><br>CITIBANK, N.A., a national banking association,<br><br>Defendant. | Case No. C-09-0350 MMC<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR:**<br><br>**1)  Violation of TILA and Regulation Z;**<br>**2)  Violation of TILA and Regulation Z;**<br>**3)  Breach of Contract;**<br>**4)  Violation of Cal. Bus. & Prof. Code § 17200, et seq.;**<br>**5)  Violation of Cal. Bus. & Prof. Code § 17200, et seq.; and**<br>**6)  Violation of Cal. Bus. & Prof. Code § 17200, et seq.**<br><br>**DEMAND FOR JURY TRIAL** |

1    David Levin ("Levin" or "Plaintiff"), for his first amended complaint, alleges as follows

2  upon information and belief, based upon, *inter alia*, investigation conducted by and through his

3  attorneys, except as to those allegations pertaining to Plaintiff and his counsel personally, which

4  are alleged upon personal knowledge:

**Introduction**

5

6    1.    This is case is about Defendant's illegal and improper reduction of credit limits

7  on home equity lines across the country in a thinly-veiled, illegal attempt to limit its exposure to

8  the risk of collapse in the United States housing market by breaking its promises to the

9  homeowners who have obtained mortgages from Defendant.  Defendant services, originates,

10  and owns billions of dollars worth of prime and subprime mortgages, including the home equity

11  lines of credit ("HELOCs") at issue in this Complaint.

12    2.    Each member of the Class had a HELOC for which Defendant reduced the

13  available credit in a manner that was both illegal and grossly unfair.  As a result of Defendant's

14  wrongful actions, Plaintiff Levin brings this class action on behalf of himself and the putative

15  class for actual damages and attorneys' fees under the Truth-in-Lending Act (15 U.S.C.

16  §1640(a)), damages for breach of contract, and restitution under California's Unfair

17  Competition Law ("UCL") (Cal. Bus. & Prof. Code § 17203).

**Nature of the Claim**

18

19    3.    As early as April 2008, Defendant began sending form letters to thousands of

20  homeowners with home equity lines of credit ("HELOCs") from Defendant that indicated that

21  the homeowners' lines of credit were being summarily lowered.  For many of the homeowners

22  who received these letters, their home value had not declined significantly, but Defendant

23  nevertheless reduced the credit limits on the corresponding HELOCs.  The letter Defendant sent

24  to Plaintiff stated:

25          We have determined that ***home values in your area, including your home
          value, have significantly declined***. As a result of this decline, ***your home's***
26          ***value no longer supports the current credit limit for your home equity***
          ***line of credit***. . . . This reduction in your credit limit will remain in effect
27          until the value in your home has been sufficiently restored. In the future, if
          you believe that market conditions in your home's area are improving and
28

First Amended Class Action Complaint
and Jury Demand (C-09-0350 MMC)          2

you wish to request that your credit limit be increased, you must call us . . . (emphasis added).  When Plaintiff called Defendant, Defendant informed Plaintiff that if he sought to reinstate his credit limit he would have to obtain a formal appraisal at his own expense.  Defendant has not disclosed how it determined that these home values had decreased.

4.     On information and belief, Defendant made this value determination through dubious automated valuation models ("AVMs"), which are computerized econometric models tied to a database of information related to home values.  Defendant sent these letters to many homeowners whose home value had not declined significantly and reduced the credit limits on the corresponding HELOCs.  Indeed, the value of Plaintiff's own home had not declined significantly (*i.e.*, less than 10 percent) from its value in 2006, when the HELOC was issued.

5.     On information and belief, the basis of Defendant's letter was an AVM that used unreliable or inaccurate data.  The home loan industry made widespread use of the AVMs in underwriting the loans that led to the current mortgage meltdown.  Indeed, the abuse and manipulation of AVMs to overvalue real estate (in order to justify larger loans and correspondingly larger origination and/or transaction fees) has been widely criticized.  However, AVMs remain just as susceptible to manipulation now that the industry (including Defendant) seeks to reduce their outstanding credit lines and their exposure to the housing crisis they created.

6.     Defendant's systematic, mass reduction on the limits on its HELOCs was illegal and deceptive.  Federal law permits Defendant to reduce a HELOC credit limit only if an individual home securing a HELOC loses a significant amount of its value, and federal regulators have recently warned financial institutions that it would violate federal law to "reduce the credit limits of all HELOC accounts in a geographic area in which real estate values are generally declining without assessing the value of the collateral that secures each affected HELOC account."

### Parties

7.     **Plaintiff David Levin:** David Levin is a resident of Oakland, California. From July 2006 to May 2008, Mr. Levin had a HELOC from Defendant secured by his personal

residence.  On March 17, 2008, Defendant reduced the credit limit on Mr. Levin's HELOC virtually down to his outstanding balance as of that date without any prior notice to him.

8.    **Defendant Citibank, N.A.:** Citibank, N.A. ("Citibank") is a national banking association with its main offices at 3900 Paradise Road, Suite 127, Las Vegas, Nevada 89109. Citibank is one of the country's largest banks and has 380 offices in this state, as well as offices in Connecticut, Delaware, the District of Columbia, Florida, Illinois, Maryland, Massachusetts, Nevada, New Jersey, New York, Pennsylvania, Texas, and Virginia.

### Jurisdiction and Venue

9.    Citibank is a national banking association whose head offices are in Nevada, and can only be a citizen of Nevada under 28 U.S.C. § 1348 and *Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303 (2006).  This Complaint alleges claims on behalf of a national class of home owners who are minimally diverse from Citibank.  On information and belief, the aggregate of these claims exceed the sum or value of $5,000,000.  This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332(d)(2).  This Court further has federal question subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises in significant part under Regulation Z of the Truth in Lending Act, 15 U.S.C, § 1601 et seq., 15 U.S.C. § 1640(e) and 12 C.F.R. § 226.5(b).  Supplemental jurisdiction over Plaintiff's state law claims is proper under 28 U.S.C. § 1367.

10.    This Court has personal jurisdiction over the Defendant under Cal. Code Civ. Proc. § 410.10 because some of the acts alleged herein were committed, and Levin incurred his injury, in California (and, specifically, the Northern District of California).

11.    Venue is also proper before this Court under 28 U.S.C. § 1391(b)(2).

### Intradistrict Assignment

12.    A substantial part of the events that give rise to the claim occurred in the place of Levin's residence, in Oakland, Alameda County. Under Local Rule 3-2(c), (d), this civil action should be assigned to the Oakland division of the Northern District of California.

### Allegations as to Plaintiff's Individual Claims

13.    Defendant and Levin entered into a HELOC agreement in July 2006.  Under the

terms of the HELOC, Defendant provided Levin a $144,000 line of credit for primarily personal, family and/or household uses.  Levin's HELOC was secured by a mortgage (as that term is defined under Cal. Civ. Code 2920) on his primary residence.

14.    On March 17, 2008, without any warning whatsoever, Defendant reduced Levin's credit limit by more than $80,000 – to his balance on that date.  On March 18, 2008, Defendant sent a letter to Levin which stated that Defendant had "determined that home values in your area, including your home value, have significantly declined. As a result of this decline, your home's value no longer supports the current credit limit for your home equity line of credit."  Defendant's March 18 letter was Levin's first notice that Defendant *had already reduced his credit line the day before*.

15.    On or about March 19, 2008 and prior to receiving Defendant's March 18 letter, Levin wrote two checks drawn from his HELOC.  Defendant did not honor these checks, causing the payees of these checks to assess "not sufficient funds" fees against Levin.  Levin only received Defendant's letter on March 21, 2008.

16.    After receiving Defendant's letter, Levin contacted Defendant by telephone. Defendant informed Levin that it would only reinstate the original credit limits to his HELOC if he obtained an appraisal, at his expense, which indicated his home value has sufficiently recovered. Defendant did not indicate what valuation would suffice to reinstate the original credit limit on Levin's HELOC.

17.    Levin sustained a variety of damages from Defendant's wrongful acts.  Under his HELOC agreement with Defendant, Levin paid Defendant a $50 annual fee to maintain an account with Defendant.  When Defendant reduced Levin's credit limit, it proportionately reduced and diminished the benefit of the bargain Levin expected to realize from that fee.

18.    Levin's HELOC with Defendant was his primary line of credit.  Defendant's unilateral reduction of the credit limits on Levin's HELOC dramatically lowered the ratio of credit Levin had available to him to the outstanding balance on that credit.  In turn, on information and belief, Defendant's acts drove up his Credit Utilization Rate ("CUR"), a major component of his credit rating.  Defendant's acts damaged Levin's credit rating and increased the cost of credit to

him.

19.    Defendant's reduced credit limits forced Levin to find a replacement home equity line from another lender in May 2008.  In connection with this replacement home equity line, Plaintiff obtained a home appraisal indicating his home had lost significantly less than ten percent of its value.  Levin paid substantial closing costs (including fees for home appraisal and mortgage origination) to obtain his replacement home equity line.  When Levin used his new home equity line to pay off and terminate his HELOC with Defendant, Defendant assessed a $434 early termination fee against Levin.

### Class Certification Allegations

20.    Plaintiff seeks certification of a class and four subclasses under Federal Rule 23(b)(2).

21.    **Definition of the Class and Subclasses:** Pursuant to Federal Rule of Civil Procedure 23, Levin brings this Complaint against Defendant on behalf of a class (the "Class") of all persons nationwide who:

> (a)    had a home equity line of credit from Defendant, the credit limits of which Defendant later reduced; and
>
> (b)    who received the same or substantially similar letters from Defendant which indicated the equity line's credit limits were reduced because of a decline in home values in their general area.

The first subclass ("TILA Subclass") consists of all Class members for whom the value of the home securing their HELOC did not decline significantly in value.  The second subclass ("NSF Subclass") consists of all Class members who i) wrote checks from their HELOC before receiving notice that Defendant reduced their line of credit, and ii) incurred damages (including "not-sufficient-funds" fees) because Defendant did not honor these checks after it reduced their HELOC.  The third subclass ("ETF Subclass") consists of all Class members who obtained a HELOC from another lender after receiving Defendant's letter and who were subsequently charged an early termination fee by Defendant.  The fourth subclass ("Annual Fee Subclass") consists of all Class members who paid an annual fee to maintain their HELOC account with Defendant.  Excluded from the Class and Subclasses are 1) any Judge or Magistrate presiding over this action and

members of their families; 2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers and directors; and 3) persons who properly execute and file a timely request for exclusion from the class and 4) the legal representatives, successors or assigns of any such excluded persons.

22.     **Numerosity:** The exact number of the members of the Class and Subclasses is unknown and is not available to Levin, but it is clear that individual joinder is impracticable. Defendant sent its generic credit line freeze letters (or substantially similar letters) to thousands of HELOC mortgagors, and a substantial percentage of the recipients of these letters fall into the definition of one or more of the Subclasses.  Class Members can easily be identified through Defendants' records and public records.

23.     **Commonality:** Common questions of fact and law exist as to all members of the Class and Subclasses and predominate over the questions affecting only individual members. These common questions include:

(a)     What were Defendant's criteria for reducing the credit limits on its HELOCs;

(b)     What were Defendant's methods for valuing the homes securing the HELOCs which credit limits it reduced;

(c)     Whether Defendant's reduction of, and/or failure to reinstate, the credit limits on the HELOCs violated Regulation Z and/or the Truth-in-Lending Act;

(d)     Whether Defendant's reduction of, and/or failure to reinstate, the credit limits breached the terms of the HELOCs;

(e)     Whether Defendant's reduction of, and/or failure to reinstate, the credit limits on the HELOCs was unfair and/or illegal and constituted a violation of California's UCL;

(f)     Whether Defendant's notice of its credit limit reductions violated Regulation Z and/or the Truth-in-Lending Act;

(g)     Whether Defendant's reduction of, and/or failure to reinstate, the credit limits on the HELOCs diminished the benefit of the bargain its customers derived from paying annual fees to maintain their HELOC accounts;

(h)     Whether Defendant's assessment of early termination fees against customers who replaced their HELOC with Defendant with a HELOC from another lender was unfair and/or illegal and constituted a violation

of California's UCL;

(i)     Whether Defendant's reduction of, and/or failure to reinstate, the credit limits on the HELOCs while assessing and collecting annual account fees was unfair and/or illegal and constituted a violation of California's UCL; and

(j)     Whether Levin and the Class are entitled to relief, and the nature of such relief.

24.     **Typicality:** Levin's claims are typical of the claims of other members of the Class and each separate Subclass, as Levin and other members sustained damages arising out of the wrongful conduct of Defendant, based upon the same transactions that were made uniformly to Levin and the public.  The California laws under which Levin's claims arise do not conflict with the laws of any other state in any material way.

25.     **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the members of the Class and each separate Subclass, and has retained counsel who are competent and experienced in complex class actions.  Plaintiff has no interest antagonistic to those of the Class or any of the separate Subclasses, and Defendant has no defenses unique to Plaintiff.

26.     **Policies Generally Applicable to the Class:** This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class and each separate Subclass, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class or Subclasses as a whole. The policies of the Defendant challenged herein apply and affect members of the Class and respective Subclasses uniformly, and Plaintiff's challenge of these policies hinges on Defendant's conduct, not on facts or law applicable unique to Plaintiff.  The Class and the Subclasses are suitable for certification under Rule 23(b)(2) because the damages sought are incidental to the declaratory and injunctive relief requested in this Complaint.

27.     **Predominance and Superiority:** This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, as joinder of all members is impracticable.  The damages suffered by the individual members of the Class and Subclasses will likely be

relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions.  It would be virtually impossible for the individual members of the Class to obtain effective relief from the misconduct of Defendant. Even if members of the Class themselves could sustain such individual litigation, it would still not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint.  By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court.  Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

### Count I: Violation of TILA and Regulation Z[1]
### (on behalf of Levin and TILA Subclass)

28.     Plaintiff incorporates the above allegations by reference.

29.     The Truth-in-Lending Act ("TILA") and its implementing regulation (Regulation Z) restrict Defendant from changing any of the terms of a mortgage or HELOC – including the credit limit.  15 U.S.C. § 1647(c)(1); 12 C.F.R. § 226.5b(f)(3).  The exception relevant here permits Defendant to reduce the credit limits on its HELOCs "during any period in which . . .[t]he value of the consumer's principal dwelling which secures any outstanding balance is significantly less than the original appraisal value of the dwelling."  15 U.S.C. § 1647(c)(2)(B); 12 C.F.R. § 226.5b(f)(3)(vi)(A).

30.     TILA and Regulation Z prohibit Defendant from reducing the credit limits on its HELOCs unless the value of the home securing the credit line has actually declined significantly.  The Federal Reserve Board's Official Staff Commentary to Regulation Z defines "significant decline" for purposes of § 226.5b(f)(3)(vi)(A) as a decline in home value so that "the initial difference between the credit limit and the available equity (based on the property's appraised value . . . ) is reduced by fifty percent."  The Official Staff Commentary further states

---

[1] Count I is substantially similar to Count II (with incorporated allegations) of the original Complaint filed on January 26, 2009.

that Regulation Z "does not require a creditor to obtain an appraisal before suspending credit privileges [but] a significant decline must occur before suspension can occur."  On August 26, 2008, the Office of Thrift Supervision issued official guidance that warned it would violate Regulation Z to "***reduce the credit limits of all HELOC accounts in a geographic area in which real estate values are generally declining without assessing the value of the collateral that secures each affected HELOC account.***"

31.     Before reducing the limits of its HELOCs, Defendant was legally required to confirm that the value of each of the homes had in fact declined.  Plaintiff alleges on information and belief that, instead, Defendant used a variety of dubious AVMs based upon fundamentally unreliable data (including the decline of home values in broad geographic areas) to speculate about the value its mortgagors' homes and thus to justify the mass reductions on its HELOC limits.

32.     Moreover, TILA and Regulation Z prohibit such a reduction in a HELOC credit limit except "during [the] period in which" a home's value has substantially declined. Defendant thus has an ongoing obligation to monitor the value of the collateral securing its loans – including the value of Levin's home.  Defendant's letter indicates that the credit freeze will remain in effect "until the value in [Plaintiff's] home has been sufficiently restored," implying that Defendant recognized its obligation to monitor the value of Levin's home. However, Defendant subsequently insisted that *Levin* pay for and obtain an favorable appraisal if Levin wanted Defendant to reinstate his HELOC's original credit limit.  Defendant never indicated what valuation would be necessary to reinstate Levin's HELOC, nor what it deemed a "significant decline" in value.

33.     The appraisal Levin obtained in connection with his replacement HELOC indicates that his home value has declined only marginally – not enough to justify a reduction of his HELOC's credit limits.  Defendant's failure to reinstate Plaintiff's HELOC raises one of three implications:

(a)     Defendant's AVM may be inherently flawed because it undervalues properties, and should not be used to justify reductions of HELOC credit limits;

(b)    Defendant may not have been monitoring the value of Levin's home, because it would reinstated his credit limits before he canceled his HELOC and obtained a replacement HELOC;

(c)    Defendant's AVM may have provided a favorable valuation of Levin's home, but Defendant ignored it and failed to reinstate the credit limits on Levin's HELOCs.

34.    On information and belief, Defendant 1) used only AVMs to reduce the credit limits on the Class's HELOCs, failed to continue to monitor the value of the Class's homes, and insisted the Class obtain formal appraisal to reinstate their HELOCs and/or 2) used inherently faulty AVMs that undervalue the Class's home to justify the reduction of the credit limits on the Class member's HELOCs.

35.    Defendant reduced the credit limit for Levin and other TILA Subclass members' HELOCs.  Contrary to Defendant's explanation, the homes securing the HELOCs for Levin and other TILA Subclass members did not decline significantly in value.  As alleged above, the explanation in Defendant's letters was merely pretextual.  Alternatively, the value of the homes securing the HELOCs for Levin and other TILA Subclass members was no longer in a significant decline from the original valuation, and Defendant's failed to reinstate their credit limits.

36.    Defendant's reduction of and/or refusal to reinstate the credit limit for Levin and other TILA Subclass members' HELOCs violated TILA and Regulation Z.

37.    Defendant's violations of TILA and Regulation Z damaged Levin and the other TILA Subclass members.  These damages include the denial of the full use of the bargained-for benefit of the HELOCs, early termination fees, appraisal fees, replacement HELOC closing costs, the increased price of credit, adverse effects on credit scores, the lost benefit of the bargain on annual account fees, and "not sufficient funds" fees.

38.    Levin, on his own behalf and behalf of the other TILA Subclass members, seeks actual damages under 15 U.S.C. § 1640(a)(1), statutory damages under 15 U.S.C. § 1640(a)(2)(B), and costs of the action, together with reasonable attorneys' fees under 15 U.S.C. § 1640(a)(3).

### Count II: Violation of TILA and Regulation Z
### (on behalf of Levin and the NSF Subclass)

39.    Plaintiff incorporates the above allegations by reference.

40.     Regulation Z requires that, where a creditor reduces a credit line or prohibits additional extensions of the credit limit, "the creditor shall mail or deliver written notice of the action to each consumer who will be affected.  The notice must be provided not later than three business days after the action is taken and shall contain specific reasons for the action."  Regulation Z, 12 C.F.R. § 226.9(c)(3).

41.     In violation of Regulation Z, Defendant failed to provide Levin and the members of the NSF Subclass with formal written notice of the HELOC reductions within three business days after the credit limits were reduced.

42.     Pursuant to the HELOC contracts between Defendant and the members of the NSF Subclass, Defendant's notice to the Subclass members of its HELOC reductions was deemed given three days after being placed in the mail.  With respect to Plaintiff, the notice was placed in the mail on March 18, 2008 and was, thus, deemed given on March 21, 2008, which was the fourth business day following the March 17, 2008 credit limit reduction.  On information and belief, Defendant's respective notices to the NSF Subclass members were deemed given beyond the three-day period required by Regulation Z.

43.     Defendant's violation of TILA and Regulation Z damaged Levin and the other NSF Subclass members.  These damages include the denial of the full use of the bargained-for benefit of the HELOCs, early termination fees, appraisal fees, replacement HELOC closing costs, the increased price of credit, adverse effects on credit scores, and the lost benefit of the bargain on annual account fees.

44.     Additionally, Levin and, on information and belief, the other NSF Subclass members wrote checks subsequent to Defendant reducing their respective credit limits but prior to notice of the credit limit reduction being given.  Defendant did not honor these checks, causing the payees of these checks to assess "not sufficient funds" fees against Levin and the members of the NSF Subclass.  Levin and the other NSF Subclass members were further damaged by having to pay these "not-sufficient-funds" fees.

45.     Levin, on his own behalf and behalf of the other NSF Subclass members, seeks actual damages under 15 U.S.C. § 1640(a)(1), statutory damages under 15 U.S.C. § 1640(a)(2)(B),

and costs of the action, together with reasonable attorneys' fees under 15 U.S.C. § 1640(a)(3).

## Count III: Breach of Contract[2]
### (on behalf of Levin and TILA Subclass)

46.     Plaintiff incorporates the above allegations by reference.

47.     Levin and the other TILA Subclass members obtained HELOCs from Defendant. The terms of these HELOCs constitute a contract between the TILA Subclass members and Defendant.

48.     The HELOCs contain a term which purports to provide Defendant the discretion to reduce the credit limit "during any period in which . . .  the value of the [home securing the HELOC] declines significantly below the [home's] appraised value for purposes of the Account." Defendant drafted the terms of the HELOCs, and the ambiguity in the phrase "declines significantly" must be strictly construed against Defendant.

49.     Levin and the other TILA Subclass members performed under their HELOCs with Defendant.  They made the payments due to Defendant under the HELOC (including, where appropriate, Defendant's early termination fee).

50.     The credit limit under TILA Subclass members' HELOCs was a material term of the contract between TILA Subclass members and Defendant.  Defendant materially breached the terms of the HELOCs by reducing the credit limit for Levin and other TILA Subclass members' HELOCs because their home value did not decline significantly.  Alternatively, Defendant materially breached the terms of the HELOCs by failing to reinstate the credit limit for Levin and other TILA Subclass members' HELOCs after the value of the homes securing the HELOCs for Levin and other TILA Subclass members was no longer in a significant decline.

51.     To the extent that any of the TILA Subclass members' HELOCs contain any term purporting to allow Defendant to unilaterally reduce the credit limit of TILA Class members without complying with TILA and Regulation Z, such terms are void and violate public policy.

52.     Defendant's breach of contract damaged Levin and the other TILA Subclass

---

[2] Count III is substantially similar to Count III of the original Complaint filed on January 26, 2009.

members. These damages include the denial of the full use of the bargained-for benefit of the HELOCs, early termination fees, appraisal fees, replacement HELOC closing costs, the increased price of credit, adverse effects on credit scores, the lost benefit of the bargain on annual account fees, and "not sufficient funds" fees.

53.   Levin, on his own behalf and behalf of the other TILA Subclass members, seeks damages for Defendant's breach of contract, as well as interest, attorney's fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

**Count IV: Violation of California's UCL, Cal. Bus. & Prof. Code § 17200[3]**
**(on behalf of Levin and TILA Subclass)**

54.   Plaintiff incorporates the above allegations by reference.

55.   Defendant's reduction of and/or failure to reinstate the original credit limits for Levin and other TILA Subclass members' HELOCs violated TILA and Regulation Z.  Defendant sent a form letter to each of the TILA Subclass members which stated:

> We have determined that home values in your area, including your home value, have significantly declined. As a result of this decline, your home's value no longer supports the current credit limit for your home equity line of credit. . . . In the future, if you believe that market conditions in your home's area are improving and you wish to request that your credit limit be increased, you must call us[.]

56.   Defendant's form letters were deceptive and untrue because they were based on AVMs that recklessly or intentionally undervalued the homes securing the TILA Subclass's HELOCs.  On information and belief, Defendant either recklessly used AVMs which did not have adequate safeguards to ensure their integrity, or intentionally manipulated AVMs to justify reducing Levin and other TILA Subclass members' HELOC credit limits.  Moreover, Defendant's use of these AVMs violated TILA and Regulation Z inasmuch as the AVMs were not sufficient, reliable, or adequate grounds to justify Defendant's reduction of the HELOC credit limits.

57.   In light of Defendant's actions, its reduction of and/or failure to reinstate the TILA Subclass's HELOC credit limits was unfair because it caused a substantial injury to consumers and competition that was not outweighed by any countervailing benefits to consumers or to competition

---

[3] Count IV is substantially similar to Count IV of the original Complaint filed on January 26, 2009.

and was not an injury the consumers themselves could reasonably have avoided.  Moreover, Defendant's reduction of and/or failure to reinstate the TILA Subclass's HELOC credit limits offends public policy and/or violates the policy or spirit behind TILA, Regulation Z, Title XI of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, and the UCL, is oppressive and unscrupulous, and threatens or harms competition in the post-bust HELOC market.

58.     These unlawful, deceptive, and unfair acts and practices are unfair competition in violation of the UCL.  Defendant's violations of the UCL caused Levin and the other TILA Subclass members injury in fact, through lost money and property.

59.     Defendant's violations of the UCL damaged Levin and the other TILA Subclass members, as Defendant obtained money and/or property that rightfully belonged to Levin and the TILA Subclass members, including the lost benefit of the bargain on annual account fees, and lost use of the funds available for credit.

60.     Levin, on his own behalf and behalf of the other TILA Subclass members, seeks restitution of any money or property obtained by Defendant from Levin and the TILA Subclass members through such unfair competition under the UCL (Cal. Bus. & Prof. Code § 17203), as well as interest, attorney's fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

**Count V: Violation of California's UCL, Cal. Bus. & Prof. Code § 17200[4]**
**(on behalf of Levin and Annual Fee Subclass)**

61.     Plaintiff incorporates the above allegations by reference.

62.     Levin and the other Annual Fee Subclass members obtained HELOCs from Defendant.  Under the HELOCs, Levin and the other Annual Fee Subclass members paid Defendant an annual fee to maintain their HELOC accounts.  When Defendant reduced their credit limits, it proportionately diminished the benefit of the bargain associated with that fee.

63.     On information and belief, Defendant has used an AVM to justify its reduction of the credit limit for Levin and other Annual Fee Subclass members' HELOCs.  On information and belief, Defendant violated TILA and Regulation Z and breached the implied covenant of good faith

---

[4] Count V is substantially similar to Count XI of the original Complaint filed on January 26, 2009.

1   and fair dealing in the HELOCs by either recklessly using AVMs which did not have adequate
2   safeguards to ensure their integrity or intentionally manipulated AVMs to justify reducing Levin
3   and other Annual Fee Subclass members' HELOC credit limits.  Defendant's use of AVMs
4   deprived Levin and other Annual Fee Subclass members of the benefit of the bargain associated
5   with Defendant's annual fee.

6          64.     The imposition and failure to refund the annual fee was unfair because Defendant's
7   reduction of Levin's and other Annual Fee Subclass members' HELOC credit limits and use of
8   AVMs deprived them of the benefit of the bargain associated with Defendant's annual fee.  This
9   caused a substantial injury to consumers and competition that was not outweighed by any
10  countervailing benefits to consumers or to competition and was not an injury the consumers
11  themselves could reasonably have avoided.  Moreover, Defendant's imposition and failure to
12  refund the annual fee was premised on a violation of TILA and Regulation Z and offends public
13  policy and/or violates the policy or spirit behind TILA, Regulation Z, Title XI of the Financial
14  Institutions Reform, Recovery, and Enforcement Act of 1989, and the UCL, is oppressive and
15  unscrupulous, and threatens or harms competition in the post-mortgage bust market for HELOCs.

16         65.     These unfair acts and practices are unfair competition in violation of the UCL.

17         66.     Defendant's violations of the UCL damaged Levin and the other Annual Fee
18  Subclass members.  Defendant's violations of the UCL caused Levin and the other Annual Fee
19  Subclass members injury in fact, through lost money and property, including the lost benefit of the
20  bargain associated with Defendant's annual account fees.

21         67.     Levin, on his own behalf and behalf of the other Annual Fee Subclass members,
22  seeks restitution of any money or property gained by the Defendant from Levin and the other
23  Annual Fee Subclass members through such unfair competition under the UCL (Cal. Bus. & Prof.
24  Code § 17203), as well as interest, attorney's fees and costs pursuant to Cal. Code Civ. Proc. §
25  1021.5.

26

27

28

**Count VI: Violation of California's UCL, Cal. Bus. & Prof. Code § 17200[5]**
**(on behalf of Levin and ETF Subclass)**

68.     Plaintiff incorporates the above allegations by reference.

69.     Levin and the other ETF Subclass members obtained HELOCs from Defendant. Defendant reduced the credit limit for Levin and other ETF Subclass members' HELOCs without prior warning.  Defendant charged Levin and other ETF Subclass members early termination fees when they obtained a replacement HELOC from other lenders after receiving Defendant's letter, or otherwise terminated their HELOCs.

70.     On information and belief, Defendant has used an AVM to justify its reduction of the credit limit for Levin and other ETF Subclass members' HELOCs.  Defendant refuses to reinstate the credit limits for the ETF Subclass's HELOCs without an appraisal. On information and belief, Defendant recklessly used AVMs that did not have adequate safeguards to ensure their integrity, intentionally manipulated AVMs to justify reducing Levin and other ETF Subclass members' HELOC credit limits, and/or failed to revalue the homes of the ETF Subclass using its own AVM to reinstate their credit limits.

71.     Defendant imposed the early termination fees after its illegal and unfair reduction of credit limits forced Levin and other ETF Subclass to seek replacement HELOCs.  In light of Defendant's actions, its imposition of early termination fees was unfair because it caused a substantial injury to consumers and competition by punishing consumers for seeking alternate sources of home equity credit and is not outweighed by any countervailing benefits to consumers or to competition.  Defendant's imposition of early termination fees further constitute unfair competition because it was caused by, or premised upon Defendant's credit limit reductions that violated TILA and Regulation Z.  Finally, the imposition of early termination fees is not an injury the consumers themselves could reasonably have avoided.

72.     Further, Defendant's imposition of early termination fees offends public policy and/or violates the policy or spirit behind TILA, Regulation Z, and the UCL.  Moreover, the imposition of early termination fees is oppressive and unscrupulous, and threatens or harms

---

[5] Count VI is substantially similar to Count IX in the original Complaint filed on January 26, 2009.

competition in the post-mortgage bust market for HELOCs.  Defendant's early termination fees also violate Cal. Civ. Code § 1671 as penalties.

73.     These unfair acts and practices are unfair competition in violation of the UCL. Defendant's violations of the UCL caused Levin and the other ETF Subclass members injury in fact, through lost money and property.

74.     Defendant's violations of the UCL have damaged Levin and the other ETF Subclass members.  These damages include Defendant's early termination fees, money which is in Defendant's possession but rightfully belongs to Levin and the other members of the ETF Subclass.

75.     Levin, on his own behalf and behalf of the other ETF Subclass members, seeks restitution of any money or property gained by the Defendant from Levin and the ETF Subclass members through such unfair competition under the UCL (Cal. Bus. & Prof. Code § 17203), as well as interest, attorney's fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

WHEREFORE, Plaintiff prays that the Court enter judgment and orders in their favor and against Defendant as follows:

(a)     Certifying the action as a class action and designating Plaintiff and his counsel as representatives of the Class and Subclasses;

(b)     Statutory damages under 15 U.S.C. § 1640(a)(2)(B) for the TILA Subclass on Count I;

(c)     Statutory damages under 15 U.S.C § 1640(a)(2)(B) for the NSF Subclass on Count II

(d)     Actual damages for the TILA Subclass on Count I and Count III, including damages for denial of the full use of the bargained-for benefit of the HELOCs, damages for adverse effects on credit scores, early termination fees, appraisal fees, replacement HELOC closing costs, the increased price of credit, the lost benefit of the bargain on annual account fees, and "not sufficient funds" fees;

(e)     Actual damages for the NSF Subclass under Count II, including damages for denial of the full use of the bargained-for benefit of the HELOCs, damages for adverse effects on credit scores, early termination fees, appraisal fees, replacement HELOC closing costs, the increased price of credit, the lost benefit of the bargain on annual account fees, and "not sufficient funds" fees;

(f)     Restitution for the TILA Subclass on Count IV for all money or property obtained by Defendant from Plaintiff and the other TILA Subclass members through Defendant's unfair competition, including annual account fees and lost use of the funds available for credit;

(g)     Restitution for the Annual Fee Subclass under Count V for all money or property obtained by Defendant from Plaintiff and the other NSF Subclass members through Defendant's unfair competition, including Defendant's annual account fees;

(h)     Restitution for the ETF Subclass under Count VI for all money and property obtained by Defendant from Plaintiff and the other ETF Subclass members through Defendant's unfair competition, including early termination fees;

(i)     An award of reasonable attorney's fees for Plaintiff and his counsel;

(j)     Awarding pre- and post-judgment interest; and

(k)     Granting such other and further relief as the Court may deem just and proper.

Dated: October 9, 2009                    PARISI & HAVENS LLP


                                  By: /s/ Suzanne Havens Beckman

                                  David C. Parisi (Cal. Bar. No. 162248)
                                  Suzanne L. Havens Beckman (Cal. Bar. No. 188814)
                                  Parisi & Havens LLP
                                  15233 Valleyheart Drive
                                  Sherman Oaks, California   91403
                                  (818) 990-1299
                                  dparisi@parisihavens.com
                                  shavensbeckman@parisihavens.com


                                  Jay Edelson
                                  Michael McMorrow
                                  KamberEdelson, LLC
                                  350 North LaSalle Street, Suite 1300
                                  Chicago, IL 60654
                                  (312) 589-6370
                                  jedelson@kamberedelson.com
                                  mmcmorrow@kamberedelson.com

                                  Counsel for Plaintiff David Levin, on his own behalf and on behalf of all others similarly situated

1

**JURY TRIAL DEMAND**

2
  The Plaintiff hereby demands a trial by jury of all issues so triable.

3

4
Dated: October 9, 2009    PARISI & HAVENS LLP

5

6
        By: /s/ Suzanne Havens Beckman

7
         David C. Parisi (Cal. Bar. No. 162248)

8
         Suzanne L. Havens Beckman (Cal. Bar. No. 188814)
         Parisi & Havens LLP

9
         15233 Valleyheart Drive
         Sherman Oaks, California   91403

10
         (818) 990-1299
         dparisi@parisihavens.com

11
         shavensbeckman@parisihavens.com

12
         Jay Edelson
         Michael McMorrow

13
         KamberEdelson, LLC
         350 North LaSalle Street, Suite 1300

14
         Chicago, IL 60654
         (312) 589-6370

15
         jedelson@kamberedelson.com
         mmcmorrow@kamberedelson.com

16
         Counsel for Plaintiff David Levin, on his own behalf and

17
         on behalf of all others similarly situated

18

19

20

21

22

23

24

25

26

27

28

1

**PROOF OF SERVICE**

2      I hereby certify that on October 9, 2009, I electronically filed the foregoing *First*

3 *Amended Class Action Complaint and Jury Demand* with the Clerk of the Court using the

4 CM/ECF system. Notice of this filing is sent to the following parties by operation of the Court's

5 electronic filing system.  Parties may access this filing through the Court's system:

6
Lucia Nale
7 Debra Bogo-Ernst
Mayer Brown LLP
8 71 South Wacker Drive
Chicago, Illinois 60606

9
William I. Edlund
10 Howard I. Miller
Bartko, Zankel, Tarrant & Miller
11 900 Front Street, Suite 300
San Francisco, California 94111

12
Jay Edelson
13 Michael McMorrow
KamberEdelson, LLC
14 350 N. LaSalle Street, Suite 1300
Chicago, Illinois 60654

15

16

17                                                        /s/ Suzanne Havens Beckman
                                                         Suzanne Havens Beckman

18

19

20

21

22

23

24

25

26

27

28

First Amended Class Action Complaint
and Jury Demand (C-09-0350 MMC)          21