IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE CITIBANK HELOC REDUCTION LITIGATION
_____/

No. C-09-0350 MMC

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS; AFFORDING PLAINTIFFS LEAVE TO FILE THIRD AMENDED/CONSOLIDATED CLASS ACTION COMPLAINT**

Before the Court is defendant Citibank, N.A.'s ("Citibank") "Motion to Dismiss Plaintiffs' Second Amended/Consolidated Class Action Complaint," filed by Citibank on June 23, 2010 and amended June 24, 2010. On July 19, 2010, plaintiffs David Levin ("Levin"), Gary and Marie Cohen ("Cohens") and Mark Winkler ("Winkler") filed opposition, to which Citibank, on July 27, 2010, replied. Thereafter, on August 17, 2010, plaintiffs filed a "Correction" to their opposition. Having read and considered the above-referenced papers filed in support of and in opposition to the motion, the Court rules as follows.[1]

## BACKGROUND

In the Second Amended/Consolidated Class Action Complaint ("SAC"), plaintiffs allege that each plaintiff entered into a home equity line of credit agreement ("HELOC") with Citibank, secured by a personal residence, and that Citibank, in violation of the terms

---

[1]By order filed August 3, 2010, the Court took the motion under submission.

of the HELOC and in violation of federal and state law, suspended further draws or reduced the applicable credit limit.

## LEGAL STANDARD

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Consequently, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." See id. Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." See id. (internal quotation, citation, and alteration omitted).

In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint, and construe them in the light most favorable to the nonmoving party. See NL Industries, Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). "To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" Twombly, 550 U.S. at 555. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." See Iqbal, 129 S. Ct. at 1950 (internal quotation and citation omitted).

## DISCUSSION

Citibank moves to dismiss the SAC to the extent the SAC is brought on behalf of the Cohens and Winkler.[2]

//

---

[2] Citibank does not seek dismissal of the SAC to the extent it is brought on behalf of Levin.

## A. Count I: Violation of TILA and Regulation Z

In Count I, plaintiffs allege that Citibank violated the Truth in Lending Act ("TILA") and an implementing regulation, Regulation Z, by "suspend[ing] the Cohens' HELOC from any further draws" (see SAC ¶¶ 21, 48) and by "reduc[ing] [Winkler's] HELOC from $250,000 to $10,000" (see SAC ¶¶ 31, 48).

Under TILA, a creditor may "[p]rohibit additional extensions of credit or reduce the credit limit applicable to an account under [an open end consumer credit] plan during any period in which the value of the consumer's principal dwelling which secures any outstanding balance is significantly less than the original appraisal value of the dwelling." See 15 U.S.C. § 1647(c)(2)(B). Similarly, under Regulation Z, a creditor may "[p]rohibit additional extensions of credit or reduce the credit limit applicable to an agreement during any period in which [ ] [t]he value of the dwelling that secures the plan declines significantly below the dwelling's appraised value for purposes of the [home equity] plan." See 12 C.F.R. § 226.5b(f)(3)(vi). In a supplement to Regulation Z setting forth "official staff interpretations of Regulation Z," the staff of the Federal Reserve Board states as follows: "What constitutes a significant decline for purposes of § 226.5b(f)(3)(vi)(A) will vary according to individual circumstances. In any event, if the value of the dwelling declines such that the initial difference between the credit limit and the available equity (based on the property's appraised value for purposes of the plan) is reduced by fifty percent, this constitutes a significant decline in the value of the dwelling for purposes of § 226.5b(f)(3)(vi)(A)." See 12 C.F.R. Part 226, Supp. I, § 5b(f)(3)(vi) ¶ 6.

Citibank argues that plaintiffs have failed to allege sufficient facts to support a claim that Citibank violated TILA and/or Regulation Z with respect to either the Cohens' HELOC or Winkler's HELOC. The Court disagrees.

First, with respect to the Cohens, the SAC alleges that at the time Citibank and the Cohens entered into a HELOC in May 2006, the Cohens' residence had been appraised at $1,650,000, the balance owed on their first mortgage was $610,000, and the line of credit provided under the HELOC was $500,000, later increased by Citibank to $510,000 in

December 2006.  (See ¶¶ SAC 20, 22.)  The SAC also alleges that after Citibank, in August 2009, suspended the HELOC from further draws and advised the Cohens it had valued the property at $1,018,000, the Cohens obtained from an "independent company" an appraisal stating the "current market value of the property as of September 21, 2009, was $1,700,000."  (See SAC ¶¶ 21-22, 25.)  The SAC further alleges that the available equity in the property had increased because "[b]y the time Citibank suspended their HELOC, the Cohens had paid down their first mortgage by nearly $50,000."  (See SAC ¶ 28.)  Finally, the SAC alleges that the valuation performed by Citibank in August 2009 was "inaccurate" and "faulty."  (See SAC ¶ 50.)  The Court finds the above-stated allegations are sufficient to allege that Citibank's suspension of further draws was in violation of TILA and Regulation Z.  Citibank's argument, that neither TILA nor Regulation Z requires a creditor to accept an appraisal performed on behalf of a borrower, is unavailing.  Although Citibank may not be required to accept any particular appraisal or to perform any particular method of valuation, where, as here, plaintiffs allege that the value of the Cohens' property had not substantially declined at the time of the suspension, plaintiffs have sufficiently pleaded a violation of TILA and Regulation Z.[3]

With respect to Winkler, the SAC alleges that at the time Citibank and Winkler entered into a HELOC in April 2007, his home was appraised at "over $1,000,000," the balance owed on his first mortgage was $500,000, and the line of credit provided under the HELOC was $250,000.  (See SAC ¶ 30.)  The SAC also alleges that, in April 2008, when Citibank reduced the line of credit to $10,000, "there had not been a significant decline in value" in Winkler's property because Winkler had previously paid off his first mortgage in its entirety (see SAC ¶¶ 5, 9,[4] 31), such that the equity in the home was "more than $1,000,000" (see SAC ¶ 5.)  The Court finds such allegations are sufficient to allege that

---

[3]If Citibank is relying on the safe harbor provided by 15 U.S.C. § 1640(c), Citibank has made no argument in that regard, nor from the face of the SAC could the Court make a determination as to such defense.

[4]The SAC includes two paragraphs numbered "9"; the Court's citation above is to the first of the two paragraphs numbered "9."

4

Citibank's reduction was in violation of TILA and Regulation Z. Citibank's argument, that neither TILA nor Regulation Z requires a creditor to investigate whether a first mortgage has been paid off or paid down, is unavailing. Although Citibank may not be required to perform any particular step to determine if the value of a property has or has not substantially declined, where, as here, plaintiffs allege that the value of Winkler's property had not substantially decreased at the time Citibank reduced the line of credit, plaintiffs have sufficiently pleaded a violation of TILA and Regulation Z.

Citibank also argues the claim alleged on behalf of Winkler is subject to dismissal for the asserted reason it is barred by the one-year statute of limitations applicable to TILA claims for damages.[5] See 15 U.S.C. § 1640(e). Citibank correctly notes that Winkler filed his initial complaint on September 11, 2009 (see Winkler v Citigroup Inc, Civil Case No. 10-0572, Document No. 1),[6] more than a year after Citibank reduced Winkler's available credit, which, as noted, was in April 2008 (see SAC ¶ 31). Plaintiffs argue, however, that Winkler is entitled to equitable tolling because Winkler is a member of the putative class identified in Levin's initial complaint against Citibank, which complaint was filed on January 26, 2009, a date within the one-year limitations period applicable to Winkler's TILA claim. See In re Hanford Nuclear Reservation Litig., 534 F.3d 986, 1008 (9th Cir. 2008) (holding "commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class"). The relevant putative class identified in Levin's initial complaint is persons "who have objective evidence . . . showing that the value of the home securing the HELOC had not declined significantly since the origination of [the] HELOC." (See Complaint, filed January 26, 2009, at 7:12-15, 12:13.) Contrary to Citibank's argument, the Court cannot determine from the face of the SAC that Levin is not a member of such putative class, i.e., that Levin lacks objective evidence to show the value of his

---

[5]Plaintiffs only seek damages as a remedy for violations of the claims alleged in Count I.

[6]Winkler filed his initial complaint in the Southern District of California. By order filed therein on January 28, 2010, the action was transferred to this district.

home had not declined significantly.

Accordingly, Citibank has failed to show the claims alleged in Count I on behalf of the Cohens and Winkler are subject to dismissal.[7]

**B. Count II: Declaratory Judgment/Injunctive Relief**

In Count II, plaintiffs seek, on behalf of the Cohens, a declaration that "Citibank violated TILA and Regulation Z" and an injunction requiring "full reinstatement" of the Cohen's credit limit. (See SAC ¶ 62.)

Citibank argues that, to the extent Count II seeks declaratory relief, Count II is unnecessary because plaintiffs, in Count I, seek damages for the same conduct. The Court agrees. "A claim for declaratory relief is unnecessary where an adequate remedy exists under some other cause of action." Mangindin v. Washington Mutual Bank, 637 F. Supp. 2d 700, 707 (N.D. Cal. 2009). Here, in Count I, plaintiffs seek an award of damages under TILA for alleged TILA and Regulation Z violations, including, as discussed above, Citibank's having allegedly violated TILA and Regulation Z when it suspended the Cohens' HELOC from any further draws.

Citibank also argues the request for injunctive relief within Count II is improper, for the asserted reason that, under TILA, injunctive relief is not an available remedy. The Court finds it unnecessary to consider the merits of such argument because plaintiffs, in their opposition, state they are "withdraw[ing] their prayer for injunctive relief in Count II." (See Pls.' Opp., filed July 19, 2010, at 16:9-26.)[8]

---

[7]In their opposition, plaintiffs argue that if Citibank suspended or reduced HELOCs without having a "sound factual basis," apparently even if the subject dwelling had in fact substantially declined in value, such conduct would support an "independent claim" under TILA. (See Pls.' Opp. at 9:16-18.) As Citibank correctly points out, however, TILA includes no requirement that a creditor have a "sound factual basis" in the abstract; the issue is, as discussed above, whether the value did substantially decline. Accordingly, to the extent plaintiffs may be requesting leave to amend to allege such an "independent" claim, such leave is denied.

[8]In their opposition, plaintiffs request leave to amend "to pray for injunctive relief in other counts where such relief is warranted, including their UCL claims." (See id. at 16:26-27.) As discussed below, the Court will afford plaintiffs leave to amend to cure deficiencies in the SAC; plaintiffs may include therein a prayer for injunctive relief as to claims for which such relief appropriately is sought.

6

1  Accordingly, Count II is subject to dismissal.

**C. Count III: Breach of Contract**

In Count III, plaintiffs allege that Citibank failed to comply with the provisions of the Cohens' HELOC by suspending the Cohens' HELOC from any further draws and not thereafter reinstating the credit limit, and failed to comply with the provisions of the Winkler's HELOC by reducing the credit limit applicable to Winkler's HELOC and not thereafter reinstating Winkler's access to the full credit limit.

The HELOCs,[9] using language similar to that set forth in Regulation Z, provide that "Citibank may prohibit additional extensions of credit or reduce [the] Credit Limit" under specified circumstances, one such circumstance occurring when "[t]he value of the Property declines significantly below the Property's appraised value for purposes of the Account." (See Def's Req. for Judicial Notice Ex. A at 5.)[10] Further, the HELOCs provide that if the "circumstances change" and the borrower wishes to "reopen [the] Account or increase [the] Credit Limit to the original Credit Limit, [the borrower] must make such a request to Citibank in writing and pay any bona fide and reasonable appraisal and credit report fees actually incurred by Citibank to investigate whether the [ ] circumstances continue to exist." (See id. Ex. A at 6.)

Citibank argues that Count III, to the extent it is based on the suspension of the Cohen's HELOC from further draws and reduction of the credit limit applicable to Winkler's HELOC, is subject to dismissal. As with Count I, Citibank asserts that the HELOCs do not require Citibank to accept a borrower's appraisal or investigate the amount of equity available. Again, the Court is not persuaded. Although the HELOCs do not require Citibank to accept any particular appraisal or to perform any particular method of valuation,

---

[9] The Court grants each party's request for judicial notice of the contents of the HELOCs.

[10] The HELOCs do not define the phrase "declines significantly," but provide one "example": "[I]f the value of the Property declines such that the initial difference between the Credit Limit and the available equity (based on the Property's appraised value) is reduced by fifty percent, such an event would constitute a significant decline in the value of the Property." (See id.)

7

1 where, as here, plaintiffs allege that the value of the subject properties had not substantially

2 declined at the time of the suspension/reduction, plaintiffs have sufficiently pleaded a claim

3 for breach of contract.

4 Accordingly, Citibank has failed to show Count III, to the extent it is based on the

5 suspension of the Cohen's HELOC from further draws and reduction of the credit limit

6 applicable to Winkler's HELOC, is subject to dismissal.

7 Citibank next argues that to the extent Count III is based on Citibank's asserted

8 failure to reinstate Winkler's access to the full credit limit, such cause of action is subject to

9 dismissal for the reason that plaintiffs do not allege Winkler ever requested reinstatement.

10 The Court agrees. As discussed above, the terms of the HELOCs provide that after a

11 reduction of the credit limit, any request for an increase must be in writing. The SAC

12 includes no allegation that Winkler ever made a request for an increase, and, indeed,

13 alleges that "[a]fter his HELOC reduction, Winkler "close[d] the HELOC and obtain[ed] a

14 replacement at a significantly higher interest rate." (See SAC ¶ 33; see also id. (alleging

15 Winkler was "forced to close his HELOC").)

16 Accordingly, Count III, to the extent it is based on Citibank's not reinstating Winkler's

17 access to the full credit limit, is subject to dismissal.

### D. Count IV: Breach of Implied Covenant of Good Faith and Fair Dealing

19 As noted, the HELOCs provide that if a borrower seeks to "reopen [the] Account or

20 increase [the] Credit Limit to the original Credit Limit, [the borrower] must make such a

21 request to Citibank in writing and pay any bona fide and reasonable appraisal and credit

22 report fees actually incurred by Citibank to investigate whether the [ ] circumstances

23 continue to exist." (See Def.'s Req. for Judicial Notice Ex. A at 6.) In Count IV, brought on

24 behalf of the Cohens, plaintiffs allege that Citibank breached the implied covenant of good

25 faith and fair dealing in the HELOC by requiring the Cohens to pay "excessive fees" for an

26 appraisal. (See SAC ¶ 74.)

27 In support of this claim, plaintiffs allege that after Citibank informed the Cohens that

28 their residence had substantially declined in value and the Cohens "dispute[d]" Citibank's

valuation, Citibank "responded that in order for Citibank to even consider reinstatement, the Cohens must order and pay for an on-site appraisal of their home by an appraisal company of Citibank's own choosing," specifically, Lender Services, Inc. ("LSI"). (See SAC ¶¶ 22, 23, 74.) According to plaintiffs, the Cohens contacted LSI, which told them it would charge them an appraisal fee of $750, even though the "standard rate for appraisals was $175 to $350" (see SAC ¶ 23), and even though an "independent" appraiser only charged the Cohens $175 (see SAC ¶ 29). Further, plaintiffs allege, Citibank's "arrangement with LSI was designed to discourage HELOC borrowers from seeking reinstatement of their suspended or reduced HELOCs." (See SAC ¶ 75.)

Citibank argues the above allegations are insufficient to state a claim for breach of the implied covenant of good faith and fair dealing. The Court disagrees.

First, contrary to Citibank's argument, plaintiffs' claim is not an attempt to impose on Citibank a substantive contractual obligation inconsistent with the terms of the Cohens' HELOC. See Wolf v. Walt Disney Pictures and Television, 162 Cal. App. 4th 1107, 1120 (2008) (holding "if the defendant did what it was expressly given the right to do, there can be no breach [of the implied covenant"). Nothing in the Cohen's HELOC allows Citibank to require a borrower to pay an appraisal fee well in excess of the standard rate.

Second, contrary to Citibank's argument, plaintiffs' claim is not an attempt to impose on Citibank a new substantive contractual obligation. See Guz v. Bechtel Nat'l, Inc., 24 Cal. 4th 317, 349-50 (2000) (holding implied covenant of good faith and fair dealing "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement"). Plaintiffs' claim is not based on the theory that Citibank should not have required the Cohens to pay for an appraisal, but, rather, that Citibank should not have refused to entertain the Cohens' request for reinstatement unless and until the Cohens paid an excessive appraisal fee to LSI.

Third, and finally, the Court finds unpersuasive Citibank's argument that the Cohens have failed to allege a cognizable injury, specifically, that their ability to enjoy a contractual right was frustrated. As noted, plaintiffs have alleged that the Cohens were required to pay

9

LSI an appraisal fee well in excess of the market rate before Citibank would reconsider its valuation determinations (see SAC ¶¶ 22, 29, 76); such allegation is sufficient at the pleading stage to allege a frustration of the Cohens' contractual right to have Citibank reconsider its determination, subject to certain conditions such as reimbursement for any "reasonable appraisal" fee incurred by Citibank.

Accordingly, Citibank has failed to show Count IV is subject to dismissal.

### E. Count V: Violation of California's UCL, Cal. Bus. & Prof. Code § 17200

In Count V, plaintiffs allege that Citibank's asserted violations of TILA and Regulation Z, with respect to the Cohens and Winkler, constituted "unlawful, deceptive, and unfair acts and practices" for purposes of § 17200 of the California Business & Professions Code. Citibank argues Count V is subject to dismissal because plaintiffs have failed to state a TILA or Regulation Z claim on behalf of the Cohens and Winkler.

"[A] lender's violation of TILA can be an unfair business practice or act under [§ 17200]." Pacific Shore Funding v. Lozo, 138 Cal. App. 4th 1342, 1347 (2006). For the reasons stated above, the Court finds plaintiffs have adequately alleged that Citibank violated TILA and Regulation Z with respect to the Cohens and Winkler.

Accordingly, Citibank has failed to show Count V is subject to dismissal..

### F. Count VI: Violation of California's UCL, Cal. Bus. & Prof. Code § 17200

Citibank argues that Count VI should be dismissed to the extent it is brought on behalf of the Cohens and Winkler. Count VI, however, is only alleged on behalf of Levin. (See SAC at 21:20-21.)

Accordingly, Citibank has failed to show Count VI is subject to dismissal.

### G. Count VII: Violation of California's UCL, Cal. Bus. & Prof. Code § 17200

In Count VII, plaintiffs allege that Citibank "knew of LSI's practice of charging excessive appraisal fees and either ignored the practice or encouraged it" (see SAC ¶ 97), and that it was "unfair," within the meaning of § 17200, for Citibank to require the Cohens to pay to LSI an "excessive and unreasonable appraisal fee" before Citibank would reconsider its valuation of the Cohen's residence. (See SAC ¶¶ 95-97.) As relief for such

alleged unfair practice, plaintiffs seek "restitution of any money or property gained by Citibank and its agent LSI from the Cohens." (See SAC ¶ 101.)

Citibank argues that plaintiffs have failed to allege sufficient facts to support a claim for restitution against Citibank. In particular, Citibank asserts, plaintiffs cannot state a claim for restitution against Citibank because plaintiffs allege the Cohens paid the appraisal fee directly to LSI, and not to Citibank.

Contrary to Citibank's argument, plaintiffs' allegation that the Cohens paid the fee directly to LSI does not necessarily foreclose them from stating a claim for restitution. A restitution claim can be stated, for example, where the plaintiff, at the defendant's instruction, pays a fee to a third party, provided the defendant "receive[s] a benefit from [the] payments" made to the third party. See, e.g., Troyk v. Farmers Group, Inc., 171 Cal. App. 4th 1339-40 (2009) (holding, where defendant insurer required plaintiff policyholders to pay service charges to third party, "[insurer] may be liable to [policyholders] for restitution under the UCL" because "substantial portion of the service charges paid by [policyholders] to [third party was] indirectly received by [insurer] through payments made by [third party] to [insurer] for services rendered"). Other examples of viable restitution claims based on a payment to a third party include claims wherein the third party is alleged to have acted as the "agent" of the defendant, see id. at 1340-41, or where the third party allegedly was part of a "single enterprise" with the named defendant, see id. at 1341-42.

Here, however, the SAC fails to include any facts to support a finding that Citibank itself obtained a benefit from the Cohens' payment of the appraisal fee to LSI, that LSI was acting as the agent of Citibank when it charged the appraisal fee, that LSI and Citibank are a single enterprise, or that any other circumstance exists such that Citibank can be held liable for restitution based on the Cohens' payment to LSI. Although the SAC includes a conclusory allegation that LSI was "acting as Citibank's agent and/or co-conspirator" (see SAC ¶ 95), such conclusory allegation is insufficient to state a claim for restitution against Citibank. See Iqbal, 129 S. Ct. at 1950 (holding, on motion to dismiss, district court is "not bound to accept as true a legal conclusion couched as a factual allegation"); Karim-Panahi

v. Los Angeles Police Dep't, 839 F.2d 621, 626 (9th Cir. 1988) (holding, where plaintiff seeks to proceed under theory of conspiracy, "mere allegation of conspiracy without factual specificity is insufficient").

Accordingly, Count VII is subject to dismissal.

**CONCLUSION**

For the reasons stated above,

1. Citibank's motion to dismiss is hereby GRANTED in part and DENIED in part, as follows:

    a. Counts II and VII are DISMISSED.

    b. To the extent Count III includes a claim based on Citibank's not reinstating Winkler's access to the full credit limit, Count III is DISMISSED.

    c. In all other respects, the motion is DENIED.

2. In the event plaintiffs seek to amend any or all of the dismissed counts to cure the deficiencies identified above, plaintiffs are directed to file a Third Amended/Consolidated Class Action Complaint no later than September 20, 2010. If plaintiffs elect not to further amend, the instant action will proceed on the remaining claims in the SAC.

**IT IS SO ORDERED.**

Dated: August 30, 2010

MAXINE M. CHESNEY
United States District Judge