1  Sean Reis (SBN 184044)
   EDELSON MCGUIRE LLP
2  30021 Tomas Street, Suite 300
   Rancho Santa Margarita, CA 92688
3  714-352-5200 (phone)
   714-352-5201 (fax)
4  sreis@edelson.com

5  *Attorneys for Plaintiffs*
   (Additional counsel appear on the signature page)
6

7              IN THE UNITED STATES DISTRICT COURT

8           FOR THE NORTHERN DISTRICT OF CALIFORNIA

9
                                    Case No. C-09-0350 MMC
10

11  IN RE CITIBANK HELOC REDUCTION      THIRD AMENDED /
                                        CONSOLIDATED CLASS
12  LITIGATION                          ACTION COMPLAINT FOR:

13                                      1) Violation of TILA and Regulation Z;
                                        2) Breach of Contract;
14                                      3) Breach of Implied Covenants;
                                        4) Violation of Cal. Bus. & Prof.
15                                      Code § 17200, et seq.; and
                                        5) Violation of Cal. Bus. & Prof.
16                                      Code § 17200, et seq.

17

18

19                                      DEMAND FOR JURY TRIAL

20

21                                      Hon. Maxine M. Chesney

22

23

24

25

26

27

28

                                    1
Third Amended / Consolidated Class Action Complaint and Jury Demand
Case No. 09-cv-0350 MMC

David Levin ("Levin"), Gary and Marie Cohen ("the Cohens"), and Mark Winkler ("Winkler") (collectively "Plaintiffs"), for their Third Amended / Consolidated Complaint ("Complaint"), allege as follows upon information and belief, based upon, *inter alia*, investigation conducted by and through their attorneys, except as to those allegations pertaining to Plaintiffs and their counsel personally, which are alleged upon personal knowledge:

## Introduction

1.     This case is about Defendant Citibank, N.A.'s ("Citibank") illegal and improper reduction and suspension of credit limits on home equity lines of credit ("HELOCs") across the country in a thinly-veiled, unlawful attempt to limit its exposure to the risk of collapse in the United States housing market and to rid itself of below-market interest rate loans.  Citibank broke its promises to the homeowners that were depending on their HELOC loans and broke the law in the process.

2.     Citibank originates, services, and owns billions of dollars worth of prime and subprime mortgages, including the HELOCs at issue in this Complaint.  Each member of the proposed class had a HELOC that Citibank either unfairly and unlawfully reduced or suspended without justification.  Plaintiffs bring this class action on behalf of themselves and the putative class for damages and attorneys' fees under the Truth-in-Lending Act (15 U.S.C.§1640(a)) ("TILA"), damages for breach of contract and breach of the implied covenants of good faith and fair dealing, and restitution and injunctive relief under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17203 ("UCL").

## Nature of the Claim

3.     As early as April 2008, Citibank began sending form letters to thousands of homeowners indicating that their HELOC loans were being summarily decreased or suspended because of a purported decline in their home values.  Many of these homes had not actually suffered a significant decline in value, but Citibank nevertheless suspended or reduced the credit

2

limits on the corresponding HELOCs.  For instance, the letter Citibank sent to Plaintiff Levin stated:

> We have determined that *home values in your area, including your home value, have significantly declined*.  As a result of this decline, *your home's value no longer supports the current credit limit for your home equity line of credit*. . . . This reduction in your credit limit will remain in effect until the value in your home has been sufficiently restored.  In the future, if you believe that market conditions in your home's area are improving and you wish to request that your credit limit be increased, you must call us . . . .

(emphasis added).  Citibank never informed Levin how it determined Levin's home value had significantly declined.  Instead, Citibank informed Levin that if he sought to reinstate his credit limit he would have to obtain a formal appraisal at his own expense.

4.      On information and belief, for the purposes of the suspensions and reductions of its HELOCs, Citibank made value determinations through dubious automated valuation models ("AVMs"), which are computerized econometric models tied to a database of information related to home values.  These self-serving AVM's were specifically tailored to serve Citibank's unlawful purpose of manufacturing a basis to decrease or suspend homeowners' HELOC loans to protect Citibank's own financial interests associated with the downside risk of the declining housing market and to get rid of the low interest rate HELOC loans.  As a result, Citibank sent its suspension and reduction letters to many homeowners whose home value had not declined significantly and reduced the credit limits on the corresponding HELOCs.

5.      On information and belief, the basis of Citibank's letters was an AVM that used unreliable or inaccurate data.  The home loan industry made widespread use of the AVMs in underwriting the loans that led to the current mortgage meltdown.  Indeed, the abuse and manipulation of AVMs to overvalue real estate (in order to justify larger loans and correspondingly larger origination and/or transaction fees) has been widely criticized. AVMs remain just as susceptible to manipulation and gross error now that the major TARP recipients (including Citibank) seek to aggressively reduce their outstanding credit lines.  For

Third Amended / Consolidated Class Action Complaint and Jury Demand
Case No. 09-cv-0350 MMC

example, with respect to Plaintiffs Cohens' home, Citibank's AVM admittedly estimated Cohens' house to be worth $280,000 less than the value stated by Citibank's own appraiser. Citibank's AVM further apparently failed to consider that Plaintiff Winkler had paid off his first mortgage and owned his home free and clear at the time his HELOC was reduced to $10,000. Indeed, at the time Winkler's HELOC was reduced, it was secured by more than $750,000 in available equity.

6.      Citibank's systematic mass reduction and suspension of its HELOCs was unlawful and deceptive.  Federal regulators have warned financial institutions that it is a direct violation of federal law to "reduce the credit limits of all HELOC accounts in a geographic area in which real estate values are generally declining without assessing the value of the collateral that secures each affected HELOC account."  Citibank's misuse of its secret, self-serving AVMs did not account for individual property characteristics and other critical variables, which prevented Citibank from having a sound factual basis for the HELOC suspensions and reductions and which deprived homeowners of their lawful right to an individual determination of whether their homes had suffered a significant decline in value.

**Parties**

7.      **Plaintiff David Levin:**  Levin is a resident of Oakland, California.  From July 2006 to May 2008, Levin had a HELOC from Citibank secured by his personal residence. On March 17, 2008, Citibank reduced the credit limit on Mr. Levin's HELOC virtually down to his outstanding balance as of that date without any prior notice to him.

8.      **Plaintiffs Gary and Marie Cohen:**  The Cohens are residents of Los Angeles, California.  In May 2006, Citibank originated a HELOC for the Cohens, secured by their personal residence.  On August 10, 2009, Citibank suspended the Cohens' HELOC from future draws.

9.      **Plaintiff Mark Winkler**:  Winkler resides in San Diego, California.  In April 2007, Citibank originated a $250,000 HELOC for Winkler that was secured by his personal

4

residence.  Just one year later, and after Winkler had paid off his first mortgage on the property, Citibank reduced Winkler's HELOC to $10,000.

10.     **Defendant Citibank, N.A.:** Citibank is a national banking association with its main offices at 3900 Paradise Road, Suite 127, Las Vegas, Nevada 89109.  Citibank is one of the country's largest banks and has offices in this state and throughout the country.

### Jurisdiction and Venue

11.     Citibank is a national banking association whose head offices are in Nevada, and is a citizen of Nevada under 28 U.S.C. § 1348 and *Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303 (2006).  This Complaint alleges claims on behalf of a national class of homeowners who are minimally diverse from Citibank.  On information and belief, the aggregate of these claims exceed the sum or value of $5,000,000.  This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332(d)(2).  This Court further has federal question jurisdiction under 28 U.S.C. § 1331, as the action arises in significant part under Regulation Z of TILA, 15 U.S.C, § 1601 et seq., 12 C.F.R. § 226.5b.  Supplemental jurisdiction over Plaintiffs' state law claims is proper under 28 U.S.C. § 1367.

12.     This Court has personal jurisdiction over Citibank under Cal. Code Civ. Proc. § 410.10 because some of the acts alleged herein were committed, and Plaintiffs incurred their injury, in California (and, specifically, the Northern District of California with respect to Levin).

13.     Venue is also proper before this Court under 28 U.S.C. § 1391(b)(2).

### Intradistrict Assignment

14.     A substantial part of the events that give rise to the claim occurred in the place of Levin's residence, in Oakland, Alameda County.  Under Local Rules 3-2(c), (d), this civil action should be assigned to the Oakland division of the Northern District of California.

*Third Amended / Consolidated Class Action Complaint and Jury Demand*
*Case No. 09-cv-0350 MMC*

**Allegations as to Levin's Individual Claims**

15.     Citibank and Levin entered into a HELOC agreement in July 2006.  Under the terms of that agreement, Citibank provided Levin a $144,000 line of credit for personal, family and/or household uses.  Levin's HELOC was secured by a mortgage (as that term is defined under Cal. Civ. Code 2920) on his primary residence.

16.     On March 17, 2008, without any warning whatsoever, Citibank reduced Levin's credit limit by more than $80,000 – to his balance on that date.  On March 18, 2008, Citibank sent a letter to Levin stating that Citibank had "determined that home values in your area, including your home value, have significantly declined. As a result of this decline, your home's value no longer supports the current credit limit for your home equity line of credit."  Citibank's March 18 letter was Levin's first notice that Citibank had already reduced his credit line the day before.

17.     On or about March 19, 2008 and prior to receiving Citibank's March 18 letter, Levin wrote two checks drawn from his HELOC account.  Citibank did not honor these checks, causing the payees of these checks to assess "not sufficient funds" fees against Levin.  Levin received Citibank's letter on March 21, 2008, only after his checks were declined.

18.     Levin contacted Citibank by telephone and was informed that Citibank would only consider reinstating the original credit limit to his HELOC if he obtained an appraisal, at his own expense, which indicated his home value has sufficiently recovered.  Citibank did not indicate what valuation would suffice to reinstate the original credit limit on Levin's HELOC.

19.     Levin sustained a variety of damages from Citibank's wrongful acts.  Under his HELOC agreement with Citibank, Levin paid Citibank a $50 annual fee to maintain an account with Citibank.  When Citibank reduced Levin's credit limit, it proportionately reduced and diminished the benefit of the bargain Levin expected to realize from that fee.

20.     Levin's HELOC with Citibank was his primary line of credit.  Citibank's unilateral reduction of the credit limits on Levin's HELOC dramatically lowered the ratio of credit Levin had available to him to the outstanding balance on that credit.  In turn, on information and belief,

6

Citibank's acts drove up his Credit Utilization Rate, a major component of his credit rating. Citibank's acts damaged Levin's credit rating and increased the cost of credit to him.

21.     Citibank's reduction of the credit limit forced Levin to find a replacement home equity line from another lender in May 2008.  In connection with this replacement HELOC, Levin obtained a home appraisal confirming that his home value had not significantly declined, and in fact had declined by less than 10% since he obtained his original HELOC from Citibank.  Levin paid substantial closing costs (including fees for home appraisal and mortgage origination) to obtain his replacement HELOC.  When Levin paid off and terminated his HELOC with Citibank, Citibank assessed a $434 early termination fee against Levin.

**Allegations as to the Cohens' Individual Claims**

22.     Citibank and the Cohens entered into a HELOC agreement in May 2006.  Under the terms of the agreement, Citibank provided the Cohens a $500,000 line of credit, obtained by the Cohens for personal, family and/or household purposes.  In December 2006, Citibank increased the level of the available credit to $510,000.  The Cohens' first mortgage balance at that time was approximately $610,000.  The Cohens' HELOC was secured by a mortgage (as that term is defined under Cal. Civ. Code 2920) on their primary residence.

23.     In August 2009, the Cohens received a letter from Citibank indicating that it had suspended the Cohens' HELOC from future draws effective immediately.  The letter stated that the suspension was due to the fact that "home values in many areas of the country are declining" and that the "value of [the Cohens'] home has significantly declined."  The letter did not state what the new declined value was, how Citibank determined the new value, what the initial home value at the HELOC origination was, what value was needed for full reinstatement of the HELOC, or any other material information.

24.     The Cohens immediately telephoned Citibank's customer service and requested explanation.  They were told that Citibank's AVM had determined their current home value to be $1,018,000, which represented a substantial decline in value from the original appraisal of

7

$1,650,000 at the time the HELOC was obtained from Citibank.  When the Cohens vigorously disputed this value, Citibank's representative responded that in order for Citibank to even consider reinstatement, the Cohens must order and pay for an on-site appraisal of their home by an appraisal company of Citibank's own choosing.

25.     Gary Cohen then reluctantly called LSI, the appraisal company of Citibank's choosing, to schedule an appraisal for the purposes of challenging the valuation of Citibank's AVM.  The LSI representative stated to Mr. Cohen that the appraisal fee depended upon what Mr. Cohen believed his home was worth.  Given Mr. Cohen's own estimate that the property was worth over $1 million, the LSI representative informed him that the appraisal fee would be $750.  On information and belief, the standard rate for appraisals was $175 to $350 at the time LSI appraised the Cohen's house.

26.     On August 19, 2009, an LSI appraiser from Santa Ana, California, an area nearly 50 miles away from the subject area, performed a cursory appraisal of the Cohens' home.  His appraisal report showed the property to be valued at $1,300,000 which is approximately $280,000 greater than the value rendered by Citibank's AVM.

27.     The Cohens still believed the LSI appraisal to be unreasonably lower than the market value.  In September 2009, they ordered an appraisal from an independent company, Citywide Valuation Services, Inc. ("CVS").  The CVS appraisal stated that the current market value of the property as of September 21, 2009 was $1,700,000.

28.     The Cohens immediately forwarded the CVS appraisal to LSI and Citibank and demanded reinstatement of their HELOC based on the new market value of the property.  But the Citibank representative assigned to the Cohens' case refused to accept the CVS appraisal and refused to even speak to the CVS appraiser.

29.     Despite the significant disparity between Citibank's AVM and the valuation by Citibank's chosen appraiser, and despite the difference of $680,000 between the AVM and the valuation by the independent appraiser, Citibank has refused to reinstate the Cohens' HELOC.

8

The severe discrepancies in valuation, and Citibank's subsequent refusal to reinstate the Cohen's HELOC, further evidences that Citibank had no sound factual basis to suspend the HELOC in the first place.

30.     Citibank took the above actions despite Regulation Z's provision that allows lenders to suspend HELOCs when the unencumbered equity in the collateral property of the borrower has decreased by 50%.  12 C.F.R. § 226.5(b)(f)(3).  By the time Citibank suspended their HELOC, the Cohens had paid down their first mortgage by nearly $50,000, thereby increasing the available, unencumbered equity by this amount.  The fair market value report prepared by the independent appraiser further confirmed that the property value had actually increased by $50,000 (from $1,650,000 at the time of the HELOC origination to $1,700,000 at the time of the appraisal).  There was no sound factual basis for concluding there had been a "significant decline" in home value warranting the HELOC suspension or Citibank's subsequent refusal to reinstate the line.

31.     Citibank's suspension of the Cohens' HELOC denied them access to credit and dramatically increased the ratio of credit the Cohens used to the amount of credit they had available to them.  In turn, on information and belief, Citibank's acts drove up the Cohens' Credit Utilization Rate, a major component of their credit rating, thereby damaging their credit rating and increasing the cost of credit available to them.  Additionally, the Cohens had to pay $750 to the Citibank appraiser and $175 to the independent appraiser just to prove that Citibank's AVM grossly undervalued their home.

**Allegations as to Winkler's Individual Claims**

32.     In April 2007, Winkler obtained a first mortgage for approximately $600,000 from Union Bank and a $250,000 HELOC from Citibank, both secured by his home.  Winkler's HELOC was obtained for family, personal, and household purposes, such as home renovations.  At the time of the origination of his HELOC, Winkler's home was worth over $1,000,000.

9

33.     In April 2008, Winkler learned that Citibank unilaterally reduced his HELOC from $250,000 to $10,000.  By that time, Winkler's first mortgage was fully paid off and the home was still worth at least $1,000,000.  Winkler believes that Citibank's decision to reduce his HELOC was solely based on a geographic area survey covering home values in the area where Winkler's home is located, not on an actual assessment of Winkler's home value or available equity.  Had Citibank assessed Winkler's home, it would have realized that at least $750,000 in unencumbered equity secured the $250,000 HELOC and that there had not been a significant decline in value.  Indeed, Winkler owned his home free and clear, and the equity securing Winkler's HELOC increased by more than $600,000 since he paid off the first loan.

34.     Upon learning of the reduction of his HELOC, Winkler promptly contacted Citibank and requested reinstatement of his HELOC both over the phone and in writing.  Citibank refused to reinstate his HELOC.

35.     By reducing Winkler's HELOC by 96%, Citibank denied Winkler access to $240,000, thereby preventing him from enjoying the benefits of his contractual relationship with Citibank.  Upon information and belief, Citibank stopped short of completely freezing Winkler's HELOC so that it could falsely justify charging fees and penalties associated with the HELOC.  Instead, Citibank left him with a paltry $10,000 available credit secured by more than $750,000 in unencumbered equity.

36.     After Citibank reduced and refused to reinstate his HELOC, Winkler was left with two alternatives:  he could (1) keep the significantly reduced HELOC, or (2) close the HELOC and obtain a replacement at a significantly higher interest rate.  Winkler chose the latter alternative.  In connection with closing the HELOC, Citibank charged Winkler a $191.00 early termination fee.  Winkler asked Citibank to waive the fee, but Citibank refused to do so.  Because Winkler did not want to incur additional fees, costs, or other burdens associated with maintaining the significantly reduced HELOC, Winkler was forced to close his HELOC and pay the early termination fee.

Third Amended / Consolidated Class Action Complaint and Jury Demand
Case No. 09-cv-0350 MMC

37.     At bottom, Winkler entered into a contractual relationship with Citibank for, among other things, a $250,000 HELOC.  Citibank essentially froze Winkler's HELOC when it reduced the available credit by 96%.  The reduction was unwarranted since Winkler owed nothing on his home, which was worth at least $1,000,000 at the time of the reduction.  Despite the reduction, Citibank required Winkler to maintain the HELOC, along with its associated burdens, or alternatively, to pay $191.00 early termination fee to close the HELOC.

## Class Certification Allegations

38.     Plaintiffs seek certification of a class and three subclasses under Federal Rule 23(b)(2).

39.     **Definition of the Class and Subclasses:** Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs bring this Complaint against Citibank on behalf of a class (the "Class") of all persons nationwide who:

> have or had a HELOC from Citibank that was reduced or suspended due to a purported significant decline in the value of the property securing the HELOC.

i.     The first subclass ("Injunctive Relief Subclass") consists of all Class members who currently have HELOCs with Citibank and whose HELOCs have been reduced or suspended by Citibank purportedly due to a significant decline in the value of the property securing the HELOC.

ii.     The second subclass ("Annual Fee Subclass") consists of all Class members who paid an annual fee to maintain their HELOC account with Citibank.

iii.     The third subclass ("Excessive Appraisal Fee Subclass") consists of all Class members who paid an excessive fee to LSI, Inc., or any other appraisal company chosen by Citibank, for the appraisal of their homes as part of Citibank's HELOC suspension/reduction appeals process.

Excluded from the Class and Subclasses are 1) any Judge or Magistrate presiding over this action and members of their families; 2) Citibank, Citibank's subsidiaries, parent

Third Amended / Consolidated Class Action Complaint and Jury Demand
Case No. 09-cv-0350 MMC

companies, successors, predecessors, and any entity in which Citibank or its parent companies have a controlling interest and their current or former officers and directors; and 3) persons who properly execute and file a timely request for exclusion from the class; and 4) the legal representatives, successors or assigns of any such excluded persons.  Plaintiff anticipates the need to potentially amend the class definition pending discovery.

40.     **Numerosity:** The exact number of the members of the Class and Subclasses is unknown and is not available to Plaintiffs, but it is clear that individual joinder is impracticable. Citibank sent its generic credit line freeze letters (or substantially similar letters) to thousands of HELOC borrowers, and a substantial percentage of the recipients of these letters fall into the definition of one or more of the Subclasses.  Class Members can easily be identified through Citibank's records.

41.     **Commonality:** Common questions of fact and law exist as to all members of the Class and Subclasses and predominate over the questions affecting only individual members. These common questions include:

(a)     What were Citibank's criteria for reducing the credit limits on its HELOCs;

(b)     What were Citibank's methods for valuing the homes securing the HELOCs which credit limits it reduced;

(c)     Whether Citibank's reduction of, and/or failure to reinstate, the credit limits on the HELOCs violated Regulation Z and/or TILA;

(d)     Whether Citibank's reduction of, and/or failure to reinstate, the credit limits breached the terms of the HELOC agreements;

(e)     Whether Citibank's reduction of, and/or failure to reinstate, the credit limits on the HELOCs was unfair and/or illegal and constituted a violation of California's UCL;

(f)     Whether an appraisal fee charged by the appraisal company of Citibank's choosing was unreasonably excessive and if yes, whether such an excessive fee meant to deter or did deter the appeals of the HELOC suspensions and reductions;

(g)     Whether Citibank's reduction of, and/or failure to reinstate, the credit limits on the HELOCs diminished the benefit of the bargain its customers derived from paying annual fees to maintain their HELOC accounts;

12

Third Amended / Consolidated Class Action Complaint and Jury Demand
Case No. 09-cv-0350 MMC

(h)     Whether Citibank's reduction of, and/or failure to reinstate, the credit limits on the HELOCs while assessing and collecting annual account fees was unfair and/or illegal and constituted a violation of California's UCL; and

(i)     Whether Plaintiffs and the Class are entitled to relief, and the nature of such relief.

42.     **Typicality:** Plaintiffs' claims are typical of the claims of other members of the Class and each separate Subclass, as Plaintiffs and other members sustained damages arising out of the wrongful conduct of Citibank, based upon the same transactions that were made uniformly to Plaintiffs and other members of the Class and Subclasses.  The California laws under which Plaintiffs' claims arise do not conflict with the laws of any other state in any material way.

43.     **Adequate Representation:** Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class and each separate Subclass, and have retained counsel who are competent and experienced in complex class actions.  Plaintiffs have no interest antagonistic to those of the Class or any of the separate Subclasses, and Citibank has no defenses unique to Plaintiffs.

44.     **Policies Generally Applicable to the Class:** This class action is also appropriate for certification because Citibank has acted or refused to act on grounds generally applicable to the Class and each separate Subclass, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class or Subclasses as a whole.  The policies of Citibank challenged herein apply and affect members of the Class and respective Subclasses uniformly, and Plaintiffs' challenge of these policies hinges on Citibank's conduct, not on facts or law applicable uniquely to Plaintiffs.  The Class and the Subclasses are suitable for certification under Rule 23(b)(2) because the damages sought are incidental to the declaratory and injunctive relief requested in this Complaint.

45.     **Predominance and Superiority:** This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, as joinder of all members is impracticable.  The damages suffered by the individual members of the Class and Subclasses will likely be relatively small,

13

especially given the burden and expense of individual prosecution of the complex litigation necessitated by Citibank's actions.  It would be virtually impossible for the individual members of the Class to obtain effective relief from the misconduct of Citibank.  Even if members of the Class themselves could sustain such individual litigation, it would still not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint.  By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court.  Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

**Count I: Violation of TILA and Regulation Z**
**(Actual and Statutory Damages on behalf of all Plaintiffs and the Class)**

46.     The above allegations are incorporated by reference.

47.     The Truth-in-Lending Act ("TILA") and its implementing regulation (Regulation Z) restrict Citibank from changing any of the terms of a mortgage or HELOC, including the credit limit.  15 U.S.C. § 1647(c)(1); 12 C.F.R. § 226.5b(f)(3).  The exception relevant here permits Citibank to reduce the credit limits on its HELOCs "during any period in which . . . [t]he value of the consumer's principal dwelling which secures any outstanding balance is significantly less than the original appraisal value of the dwelling."  15 U.S.C. § 1647(c)(2)(B); 12 C.F.R. § 226.5b(f)(3)(vi)(A).

48.     The Federal Reserve Board Official Staff Commentary to Regulation Z ("the Official Staff Commentary") defines "significant decline" for purposes of § 226.5b(f)(3)(vi)(A) as a decline in home value so that "the initial difference between the credit limit and the available equity (based on the property's appraised value . . . ) is reduced by fifty percent."  The Official Staff Commentary further states that Regulation Z "does not require a creditor to obtain an appraisal before suspending credit privileges [but] a significant decline must occur before suspension can occur."  On August 26, 2008, the Office of Thrift Supervision issued official guidance that warned it would violate Regulation Z to "*reduce the credit limits of all HELOC*

14

*accounts in a geographic area in which real estate values are generally declining without*

*assessing the value of the collateral that secures each affected HELOC account.*"

49.    Before reducing the limits of its customers' HELOCs, Citibank had an obligation

to have a sound factual basis for concluding that the value of the homes had actually declined

significantly.  *See* 15 U.S.C. § 1647(c)(2)(B); 12 C.F.R. § 226.5b(f)(3)(vi)(A); FDIC June 26,

2008 Financial Institution Letter (FIL-58-2008), *Home Equity Lines of Credit, Consumer*

*Protection and Risk Management Consideration When Changing Credit Limits and Suggested*

*Best Practices*, 2.  Instead, on information and belief, Citibank knowingly and intentionally used

certain valuation methods that drastically devalued the Class members' properties in order to

justify the blanket suspensions of their HELOCs.  In the Cohens' case, Citibank understated the

value of their property by approximately $280,000 when compared to Citibank's own appraisal,

and by nearly $700,000 if compared to the independent market value appraisal.

50.    Additionally, because a "significant decline" requires a consideration of the

property's available (unencumbered) equity, Citibank had an obligation to calculate and

consider the available equity in each property in order to determine whether the available equity

had suffered a significant decline within the meaning of Regulation Z.  *See* Official Staff

Commentary to 12 C.F.R. 226.5b(f)(3)(vi), Section 6.  Such a calculation necessarily required

Citibank to determine the existence of any other mortgages or encumbrances on the property

and, if so, whether the balance of any other such mortgages had actually decreased since the

initial creation of the HELOC.  Citibank failed to make this required inquiry, as evidenced by

the fact that it reduced Winker's HELOC to $10,000 despite the fact that Winker had paid off

his first mortgage and owned his million dollar home free and clear at the time.

51.    Citibank violated TILA and Regulation Z by suspending and reducing the Class

members' HELOCs without first determining the level of available equity in their property,

which has not significantly declined within the meaning of Regulation Z, due to a significantly

higher home value than initially determined by Citibank's AVMs, and due to the Class members

15

paying down the balances on their first mortgages.  Upon information and belief, Citibank intentionally ignored or disregarded this information before it chose to suspend the Class members' HELOCs and when deciding whether to reinstate suspended or reduced HELOCs.

52.     Indeed, the appraisal Levin obtained in connection with his replacement HELOC indicates that his home value had declined only marginally – not enough to justify a reduction of his HELOC.  Likewise, the independent appraisal obtained by the Cohens showed that their home value has actually gone up as compared to the value at the HELOC origination.  Finally, Winkler's home value did not decline at all, and by paying off his $600,000 primary mortgage he substantially increased the equity in his home.  Citibank's suspension or reduction of Plaintiffs HELOCs, and subsequent failure to reinstate them raises three implications:

    (a)     Citibank's AVMs are inherently flawed because they undervalue individual properties, and cannot be used to justify reductions of the HELOCs;

    (b)     Citibank failed to conduct an individual inquiry, or consider current mortgage balances in determining whether a specific home had suffered a significant decline in value; and

    (c)     Citibank ignored subsequent higher valuations obtained through the AVMs or actual appraisals, which confirmed that homeowners' home values were no longer suffering from a substantial decline, or, indeed, that they had never suffered a substantial decline.

53.     On information and belief, Citibank 1) used inaccurate self-serving AVMs to reduce the credit limits on the Class members' HELOCs, failed to continue to monitor the value of the Class members' homes, and insisted that the Class members obtain formal appraisals to reinstate their HELOCs and/or 2) used inherently faulty AVMs that undervalued the Class members' home to justify the reduction of the credit limits on the Class member's HELOCs.

54.     Finally, the Official Staff Commentary to Regulation Z, 226.5b(f)(3)(i), provides that a bank may not impose "'triggering events' or responses that the regulation expressly addresses in a manner different from that provided in the regulation."  Namely, "a contract cannot contain a provision allowing the creditor to freeze a line due to an insignificant decline in property value since the regulation allows that response only for a significant decline." *Id.*

Third Amended / Consolidated Class Action Complaint and Jury Demand
Case No. 09-cv-0350 MMC

55.    In direct violation of this provision, Citibank unlawfully suspended the Class members' HELOCs in response to insignificant declines in home values or where the value of the underlying property had not declined at all (in the Cohens' case, the home value has increased by $50,000 from the time of the HELOC origination).  Alternatively, the value of the homes securing the HELOCs for Plaintiffs and other Class members was no longer in a significant decline from the original valuation, and Citibank failed to reinstate their credit limits.

56.    Citibank's reduction of and/or refusal to reinstate the credit limit for Plaintiffs' and other Class members' HELOCs violated and continues to violate TILA and Regulation Z.

57.    Citibank's violations of TILA and Regulation Z damaged Plaintiffs and the other Class members.  These damages include the denial of the full use of the bargained-for benefit of the HELOCs, early termination fees, appraisal fees, replacement HELOC closing costs, the increased price of credit, adverse effects on credit scores, the lost benefit of the bargain on annual account fees, and "not sufficient funds" fees.

58.    Plaintiffs, on their own behalf and behalf of the other Class members, seek actual damages under 15 U.S.C. § 1640(a)(1), statutory damages under 15 U.S.C. § 1640(a)(2)(B), and costs of the action, together with reasonable attorneys' fees under 15 U.S.C. § 1640(a)(3).

**Count II: Breach of Contract**
**(on behalf of all Plaintiffs and the Class)**

59.    The above allegations are incorporated by reference.

60.    Plaintiffs and the other Class members obtained HELOCs from Citibank.  The terms of these HELOC agreements constitute a contract between the Class members and Citibank.

61.    The HELOC agreements contain a term which purports to provide Citibank the discretion to reduce the credit limit "during any period in which . . .  the value of the [home securing the HELOC] declines significantly below the [home's] appraised value for purposes of the Account."  Citibank drafted the terms of the HELOC agreements, and any ambiguity in the phrase "declines significantly" must be strictly construed against Citibank.

17

62.     Plaintiffs and the other Class members performed under their HELOC agreements with Citibank and made all payments due to Citibank under the HELOC agreements.

63.     The credit limit under the Class members' HELOC agreements was a material term of the contract between the Class members and Citibank.  Citibank materially breached the terms of the HELOC agreements by reducing the credit limit for Plaintiffs' and other Class members' HELOCs because their home value did not decline significantly.  Alternatively, Citibank materially breached the terms of the HELOC agreements by failing to reinstate the credit limits for Plaintiffs' and other Class members' HELOCs after the value of the homes securing the HELOCs was no longer in a significant decline and/or when Citibank became aware or should have become aware that there was not a then-present significant decline in value.

64.     To the extent that any of the Class members' HELOCs contain any term purporting to allow Citibank to unilaterally reduce the credit limit of TILA Class members without complying with TILA and Regulation Z, such terms are void and violate public policy.

65.     Citibank's breach of contract damaged Plaintiffs and the other Class members. These damages include the denial of the full use of the bargained-for benefit of the HELOCs, early termination fees, appraisal fees, replacement HELOC closing costs, the increased price of credit, adverse effects on credit scores, the lost benefit of the bargain on annual account fees, and "not sufficient funds" fees.

66.     Plaintiffs, on their own behalf and behalf of the other Class members, seek damages for Citibank's breach of contract, as well as interest, attorneys' fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

**Count III:  Breach of Implied Covenant of Good Faith and Fair Dealing**
**(On behalf of the Cohens and Excessive Appraisal Fee Subclass)**

67.     The above allegations are incorporated by reference.

Third Amended / Consolidated Class Action Complaint and Jury Demand
Case No. 09-cv-0350 MMC

68.     The Cohens and the other Excessive Appraisal Fee ("EAF") Subclass members obtained HELOCs from Citibank.  The terms of these HELOC agreements constitute a contract between the Excessive Fee Subclass members and Citibank.

69.     Implied in the terms of each of these HELOC Agreements was a covenant of good faith and fair dealing.  This implied covenant prevents Citibank from engaging in conduct, and exercising its discretion, in a manner that frustrates the EAF Subclass members' rights to the benefits of the contracts or that would injure the right of the EAF Subclass members to receive the benefits of their HELOC agreements.

70.     The credit limit, and the process of appealing the suspensions and reductions in the credit limit by Citibank, were material terms of the EAF Subclass members' HELOC agreements.  Citibank breached the implied covenant of good faith and fair dealing by wrongfully exercising its discretion to require that all appeals be initiated by ordering an appraisal from a single appraisal company, Lender Services, Inc. ("LSI"), which, in turn, charged EAF Subclass members an excessive fee for the appraisal of their properties and quoted the fee depending on the homeowners' own estimate of their respective home values.  Such an excessive fee was substantially higher than the industry standard appraisal fee and was not refundable by Citibank and/or LSI.  Upon information and belief, this non-refundable excessive fee set by LSI, the sole appraisal company approved by Citibank, deterred many HELOC borrowers from appealing Citibank's suspensions and reductions of their HELOCs.

71.     Upon information and belief, Citibank's arrangement with LSI was designed to discourage HELOC borrowers from seeking reinstatement of their suspended or reduced HELOCs.  Citibank wrongfully and in bad faith exercised its discretion under the HELOC agreements in a manner that constituted a breach of the implied covenant of good faith and fair dealing, and its decisions and actions were designed to frustrate the EAF Subclass members' right to receive the full benefits of their HELOC agreements.

Third Amended / Consolidated Class Action Complaint and Jury Demand
Case No. 09-cv-0350 MMC

72.     Citibank's breach of the implied covenant of good faith and fair dealing caused the Cohens and other EAF Subclass members to incur damages.  These damages occurred in the form of EAF Subclass members being denied the full use of their HELOCs, excessive appraisal fees, the increased price of credit, adverse effects on credit scores, loss of interest, and other damages.

73.     The Cohens, on their own behalf and on behalf of the other EAF Subclass members, seek damages for Citibank's breach of the implied covenant of good faith and fair dealing, plus reinstatement of the HELOCs that were suspended or reduced in breach of the implied covenants, interest, attorneys' fees, and costs in an amount to be determined at trial.

### Count IV: Violation of California's UCL, Cal. Bus. & Prof. Code § 17200
### (on behalf of all Plaintiffs and the Class)

74.     The above allegations are incorporated by reference.

75.     Citibank's reduction of and/or failure to reinstate the original credit limits for Plaintiffs and other Class members' HELOCs violated TILA and Regulation Z.  Citibank sent a form letter to each of the Class members that stated the suspension or reduction of the credit limits was due to the significant decline in the value of the homes that secured the HELOCs.

76.     Citibank's form letters were deceptive and untrue because they were based on AVMs that recklessly or intentionally undervalued the homes securing the Class members' HELOCs.  On information and belief, Citibank either intentionally or recklessly used AVMs that did not have adequate safeguards to ensure their integrity or accuracy to falsely justify reducing Plaintiffs' and other Class members' HELOC limits.  Moreover, Citibank's misuse and/or mishandling of these AVMs violated TILA and Regulation Z inasmuch as these particular AVMs were not sufficient, reliable, or adequate grounds to justify Citibank's reduction of the HELOC limits.

77.     In light of Citibank's actions, its reduction of and/or failure to reinstate the Class members' HELOC limits was unfair because it caused a substantial injury to consumers and

20

Third Amended / Consolidated Class Action Complaint and Jury Demand
Case No. 09-cv-0350 MMC

competition that was not outweighed by any countervailing benefits to consumers or to competition and was not an injury the consumers themselves could reasonably have avoided. Moreover, Citibank's reduction of and/or failure to reinstate the Class members' HELOC limits offends public policy and/or violates the policy or spirit behind TILA, Regulation Z, Title XI of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, and the UCL, is oppressive and unscrupulous, and threatens or harms competition in the post-bust HELOC market.

78. These unlawful, deceptive, and unfair acts and practices are unfair competition in violation of the UCL. Citibank's violations of the UCL caused Plaintiffs and the other Class members injury in fact, through lost money and property.

79. Citibank's violations of the UCL damaged Plaintiffs and the other Class members, as Citibank obtained money and/or property that rightfully belonged to Plaintiffs and the Class members, including the lost benefit of the bargain on annual account fees, and lost use of the funds available for credit.

80. Plaintiffs, on their own behalf and behalf of the other Class members, seek restitution of any money or property obtained by Citibank from Plaintiffs and the Class members through such unfair competition under the UCL (Cal. Bus. & Prof. Code § 17203), as well as interest, attorneys' fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5. Plaintiffs further seek injunctive relief in the form of reinstatement of all HELOCs improperly suspended or reduced by Citibank in violation of TILA and Regulation Z.

### Count V: Violation of California's UCL, Cal. Bus. & Prof. Code § 17200 (on behalf of Levin and Annual Fee Subclass)

81. The above allegations are incorporated by reference.

82. Levin and the other Annual Fee Subclass members obtained HELOCs from Citibank under the terms of the HELOC agreements. According to these HELOC agreements, Levin and the other Annual Fee Subclass members paid Citibank an annual fee to maintain their HELOC accounts. When Citibank reduced their credit limits, it proportionately diminished the benefit of the bargain associated with that fee.

21

83.     On information and belief, Citibank has used AVMs to justify its reduction of the credit limits for Levin and other Annual Fee Subclass members' HELOCs.  On information and belief, Citibank violated TILA and Regulation Z and breached the implied covenant of good faith and fair dealing in their HELOC agreements by either intentionally or recklessly using AVMs that they knew or should have known lacked adequate safeguards to ensure their integrity or accuracy to justify reducing Levin's and other Annual Fee Subclass members' HELOC limits.  Citibank's use of AVMs deprived Levin and other Annual Fee Subclass members of the benefit of the bargain associated with Citibank's annual fee.

84.     The imposition and failure to refund the annual fee was unfair because Citibank's reduction of Levin's and other Annual Fee Subclass members' HELOC limits and use of AVMs deprived them of the benefit of the bargain associated with Citibank's annual fee.  This caused a substantial injury to consumers and competition that was not outweighed by any countervailing benefits to consumers or to competition and was not an injury the consumers themselves could reasonably have avoided.  Moreover, Citibank's imposition and failure to refund the annual fee was premised on a violation of TILA and Regulation Z and offends public policy and/or violates the policy or spirit behind TILA, Regulation Z, Title XI of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, and the UCL, is oppressive and unscrupulous, and threatens or harms competition in the post-mortgage bust market for HELOCs.

85.     These unfair acts and practices constitute unfair competition in violation of the UCL.

86.     Citibank's violations of the UCL damaged Levin and the other Annual Fee Subclass members.  Citibank's violations of the UCL caused Levin and the other Annual Fee Subclass members injury in fact, through lost money and property, including the lost benefit of the bargain associated with Citibank's annual account fees.

87.     Levin, on his own behalf and behalf of the other Annual Fee Subclass members, seek restitution of any money or property gained by Citibank from Levin and the other Annual Fee Subclass members through such unfair competition under the UCL (Cal. Bus. & Prof. Code § 17203), as well as interest, attorneys' fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5. Levin further seeks injunctive relief in the form of reinstatement of all HELOCs improperly suspended or reduced by Citibank in violation of TILA and Regulation Z.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court enter judgment and orders in their favor and against Citibank as follows:

(a)     Certifying the action as a class action and designating Plaintiffs and their counsel as representatives of the Class and Subclasses;

(b)     Awarding statutory damages, actual damages, attorneys' fees, and costs under 15 U.S.C. § 1640(a)(2)(B) for the Class on Count I;

(c)     Awarding actual damages for the Class on Count II, including damages for denial of the full use of the bargained-for benefit of the HELOCs, damages for adverse effects on credit scores, early termination fees, appraisal fees, replacement HELOC closing costs, the increased price of credit, the lost benefit of the bargain on annual account fees, and "not sufficient funds" fees;

(d)     Awarding actual damages for the EAF Subclass under Count III, including damages for denial of the full use of the bargained-for benefit of the HELOCs, damages for adverse effects on credit scores, early termination fees, appraisal fees, replacement HELOC closing costs, the increased price of credit, and "not sufficient funds" fees;

(e)     Restitution on Count IV for all money or property obtained by Citibank from Plaintiffs and the other Class members through Citibank's unfair competition, including annual account fees and lost use of the funds available for credit, as well as reinstatement of all unlawfully suspended or reduced HELOC accounts;

(f)     Restitution for the Annual Fee Subclass under Count V for all money or property obtained by Citibank from Levin and the other Annual Fee Subclass members through Citibank's unfair competition, including Citibank's annual account fees, as well as reinstatement of all unlawfully suspended or reduced HELOC accounts;

(g)     Awarding reasonable attorneys' fees for Plaintiffs and their counsel;

23

1       (h)     Awarding pre- and post-judgment interest; and

2       (i)     Granting such other and further relief as the Court may deem just and
3             proper.

4 **JURY TRIAL DEMAND**

5     Plaintiffs hereby demand a trial by jury of all issues so triable.

6 Dated: September 20, 2010     DAVID LEVIN, MARK WINKLER, and GARY AND
7                    MARIE COHEN, on their own behalf and on behalf of all
                   others similarly situated

8             By:    /s/ Sean P. Reis

9             Sean Reis (SBN 184044)
10            EDELSON MCGUIRE LLP
           30021 Tomas Street, Suite 300
11            Rancho Santa Margarita, CA 92688
           Tel: (714) 352-5200
12            Fax: (714) 352-5201
           sreis@edelson.com
13
           Jay Edelson (admitted *pro hac vice*)
14            Michael McMorrow (admitted *pro hac vice*)
           Evan M. Meyers (admitted *pro hac vice*)
15            EDLESON MCGUIRE, LLC
           350 North LaSalle Street, Suite 1300
16            Chicago, IL 60654
           Tel: (312) 589-6370
17            Fax: (312) 589-6378
           jedelson@edelson.com
18            mmcmorrow@edelson.com
           emeyers@edelson.com
19
           James R. Patterson (SBN 211102)
20            Alisa A. Martin (SBN 224037)
           HARRISON PATTERSON & O'CONNOR LLP
21            402 West Broadway, 29th Floor
           San Diego, CA 92101
22            Tel: (619) 756-6990
           Fax: (619) 756-6991
23            jpatterson@hpclaw.com
           amartin@hpclaw.com
24

25

26

27

28

24

Third Amended / Consolidated Class Action Complaint and Jury Demand
Case No. 09-cv-0350 MMC

David C. Parisi (SBN162248)
Suzanne L. Havens Beckman (SBN 188814)
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, CA 91403
Tel:  (818) 990-1299
Fax:  (818) 501-7852
dparisi@parisihavens.com
shavensbeckman@parisihavens.com

Gene J. Stonebarger (SBN 209461)
STONEBARGER LAW, APC
75 Iron Point Circle, Suite 145
Folsom, CA 95630
Tel:  (916) 235-7140
Fax: (916) 235-7141
gstonebarger@stonebargerlaw.com

*Counsel for Plaintiffs and the Putative Class*

Third Amended / Consolidated Class Action Complaint and Jury Demand
Case No. 09-cv-0350 MMC

**CERTIFICATE OF SERVICE**

I, Sean P. Reis, hereby certify that on September 20, 2010, I electronically filed the foregoing *Plaintiffs' Third Amended / Consolidated Class Action Complaint and Jury Demand* with the Clerk of the Court using the CM/ECF system. Notice of this filing is sent to the following parties by operation of the Court's electronic filing system:

Lucia Nale
Debra Bogo-Ernst
Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606

Christopher P Murphy
Lisa Walgenbach Cornehl
Mayer Brown LLP
350 South Grand Avenue, 25th Floor
Los Angeles, CA 90071-1503

/s/ Sean Reis

Third Amended / Consolidated Class Action Complaint and Jury Demand
Case No. 09-cv-0350 MMC