Sean P. Reis (SBN 184044)
EDELSON MCGUIRE, LLP
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Telephone: (949) 459-2124
Facsimile: (949) 459-2123
Email: sreis@edelson.com

Jay Edelson (Admitted *Pro Hac Vice*)
Steven L. Woodrow (Admitted *Pro Hac Vice*)
Evan Meyers (Admitted *Pro Hac Vice*)
EDELSON MCGUIRE LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone: (312) 589-6370
Facsimile: (312) 589-6378
Email: jedelson@edelson.com
Email: swoodrow@edelson.com
Email: emeyers@edelson.com

*Counsel for Plaintiffs and the Settlement Class*

[additional counsel appear on signature page]

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

IN RE CITIBANK HELOC REDUCTION LITIGATION

No: 09-CV-0350-MMC

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**

Location: Courtroom 7, 19th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Date: September 21, 2012
Time: 9:00 am

The Honorable Maxine M. Chesney

## NOTICE OF MOTION

NOTICE IS HEREBY GIVEN that on September 21, 2012, at 9:00 am, or at such other time as may be set by the Court, Plaintiffs will move the Court, pursuant to Federal Rule of Civil Procedure 23(e), to grant preliminary approval of the class action settlement reached by the Parties, in Courtroom 7, 19th Floor, 450 Golden Gate Avenue, San Francisco, California 94102, before the Honorable Maxine M. Chesney.

Plaintiffs seek preliminary approval of the Class Action Settlement Agreement attached to this Motion as Exhibit 1, certification of the proposed Class, appointment of David Levin, Loren S. Siegel, Gary Cohen, Marie Cohen, Mark Winkler, and Jennie Lapointe as Class Representatives, and appointment of Plaintiffs' counsel as Class Counsel. The Motion is based on this Notice of Motion, the Memorandum of Points and Authorities, oral argument of counsel, all documents in the record, and any other matter that may be submitted or raised at the hearing.

Dated: August 31, 2012

Respectfully Submitted,

DAVID LEVIN, LOREN S. SIEGEL, GARY COHEN, MARIE COHEN, MARK WINKLER, and JENNIE LAPOINTE individually and on behalf of a Class of similarly situated individuals,

By: /s/ Steven L. Woodrow
Steven L. Woodrow

Sean P. Reis (SBN 184044)
EDELSON MCGUIRE, LLP
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
949-459-2124 (phone)
949-459-2123 (fax)
Email: sreis@edelson.com

Jay Edelson (Admitted *Pro Hac Vice*)
Steven L. Woodrow (Admitted *Pro Hac Vice*)
Evan Meyers (Admitted *Pro Hac Vice*)
EDELSON MCGUIRE,\ LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone: (312) 589-6370
Facsimile: (312) 589-6378
Email: jedelson@edelson.com
Email: swoodrow@edelson.com
Email: emeyers@edelson.com

James Patterson
Patterson Law Group
402 W. Broadway Street, 29th Floor
San Diego, California 92101
Telephone: 619-398-4760
Facsimile: 619-756-6991 (fax)
jim@pattersonlawgroup.com

*Counsel for Plaintiffs and the Settlement Class*

## TABLE OF CONTENTS


**I. NATURE OF THE LITIGATION** ..... 4

**A. Investigation into Mass HELOC Suspensions** ..... 4

**B. The Underlying Class Actions** ..... 4

**C. Preliminary Settlement Negotiations and Mediation** ..... 6

**D. Citibank's Position** ..... 7

**II. TERMS OF THE SETTLEMENT AGREEMENT** ..... 7

**A. Settlement Class** ..... 7

1. *Class Definition* ..... 7

2. *Class List* ..... 7

**B. Settlement Benefits** ..... 8

1. *Notice of Right to Seek Reinstatement* ..... 8

2. *Changes in HELOC Suspension, Reduction, and Reinstatement Policies* ..... 8

3. *Enhanced Suspension Notices* ..... 8

4. *Appraisals* ..... 9

5. *Cash Payments for Former Customers* ..... 9

**C. Other Relief** ..... 9

1. *Payment of Notice and Administrative Fees* ..... 10

2. *Compensation to the Class Representatives* ..... 10

3. *Payment of Attorneys' Fees and Expenses* ..... 10

**D. Release** ..... 10

**III. THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED** ..... 10

**A. The Settlement Class is Comprised of Thousands of Members Such that Joinder of Individual Plaintiffs is Impractical** ..... 11

**B. The Requirement of Commonality is Satisfied Because the Settlement Class Members' Claims Arise Out of the Same Conduct by Citibank—It Blocked and Reduced Each of Their HELOCs Based on False Assertions That Their Homes Had Significantly Declined in Value—Implicating Identical Statutory Violations and Breach of Contract Claims** ..... 11

C. **The Named Plaintiffs' Claims are Typical of, if Not Identical to, the Settlement Class Members' Claims Because All Claims Arise From Citibank's Use of Improper Suspension Policies and False Claims That the Class Members' Homes had Significantly Declined in Value** ..... 13

D. **Proposed Class Counsel and the Named Plaintiffs Have and Will Continue to Fairly and Adequately Represent the Interests of the Settlement Class** ..... 13

E. **The Proposed Settlement Class Meets the Requirements of Rule 23(b)(2) and b(3)** ..... 15

1. *Certification is appropriate under Rule 23(b)(2) because Citibank acted on grounds generally applicable to the Settlement Class Members* ..... 15

2. *Under Rule 23(b)(3) Common Questions of Law and Fact Predominate* ..... 15

3. *This Class Action, and Especially this Class Action Settlement, is the Superior Method of Adjudication of the Alleged Claims* ..... 16

**IV. THE COURT SHOULD APPOINT PLAINTIFFS' COUNSEL AS CLASS COUNSEL** ..... 16

**V. THE PROPOSED SETTLEMENT FALLS WITHIN THE RANGE OF FINAL APPROVAL AND THUS WARRANTS PRELIMINARY APPROVAL** ..... 19

A. **The Settlement provides impressive benefits to current and former Citibank HELOC customers** ..... 20

B. **The instant Settlement is comparable to other industry leading settlements** ..... 22

**VI. THE PROPOSED PLAN OF CLASS NOTICE COMPORTS WITH DUE PROCESS** ..... 24

A. **Internet Publication** ..... 25

B. **U.S. Mail Notice** ..... 25

C. **CAFA Notice** ..... 25

**VII. CONCLUSION** ..... 26

# TABLE OF AUTHORITIES

**United States Supreme Court Cases**

*Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997) .................................................. 10, 11, 15, 16

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ................................................................ 24

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ........................................................ 12, 15

**United States Circuit Court of Appeals Cases**

*Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001) ................................................................ 13

*Blake v. Arnett*, 633 F.2d 906 (9th Cir. 1981) ....................................................................... 11

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ....................................... 12, 13-14, 16, 19

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992) .................................................. 13

*In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995) ............................................... 19

*In re Syncor ERISA Litig.,* 516 F.3d 1095 (9th Cir. 2008) ..................................................... 19, 20

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ................................ 19

*Parra v. Bashas', Inc.*, 536 F.3d 975 (9th Cir. 2008) .............................................................. 12

*Pierce v. Conty of Orange*, 526 F.3d 1190 (9th Cir. 2008) ..................................................... 15

*Wolin v. Jaguar Land Rover North Am. LLC*, 617 F.3d 1168 (9th Cir. 2010) .......................... 13, 16

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001) ........................................ 15

**United States District Cases**

*Barefield v. Chevron U.S.A., Inc.*,
C 86-2427 THE, 1987 WL 65054 (N.D. Cal. Sept. 9, 1987) ................................................ 13

*Celano v. Marriot Int'l, Inc.*, 242 F.R.D. 544 (N.D. Cal. 2007) ............................................... 11

*In re Indep. Energy Holdings PLC*,
No. 00-CV-6689, 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) ......................................... 20

*In re JPMorgan Chase Bank, N.A., Home Equity Line of Credit Litig.*,
No. 10-cv-3647, MDL 2167 (N.D. Ill. 2010) ................................................................ 14, 17

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007) ................................... 19

*Plascencia v. Lending 1st Mortg.*, 259 F.R.D. 437 (N.D. Cal. 2009) ......................................... 16

*Schulken v. Washington Mutual Bank*, No. 09-cv-2708 (N.D. Cal. 2009) ...................... 14, 17, 22, 23

*Sullivan v. Kelly Services, Inc.*, 268 F.R.D. 356 (N.D. Cal. 2010) ............................................ 11

**Statutes, Rules and Regulations**

15 U.S.C. § 1601 *et seq.* ........ 2
28 U.S.C § 1715 ........ 25
Cal. Bus. & Prof. Code § 17200 *et seq.* ........ 2
Fed. R. Civ. P. 23 ........ *passim*

**Other**

4 Conte & Newberg, Newberg on Class Actions (4th ed. 2002) ........ 13, 19, 24
Manual for Complex Litigation (3d ed. 1995) ........ 19
Manual for Complex Litigation (4th ed. 2004) ........ 10, 19

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL**

The proposed Class Action Settlement Agreement ("Settlement Agreement") before this Court seeks to resolve claims on behalf of a putative nationwide class of home equity line of credit ("HELOC") borrowers who have challenged Citibank, N.A.'s ("Citibank" or "Defendant") HELOC reduction, suspension, and reinstatement policies.

As this Court is aware, the lawsuits underlying this action were part of a larger wave of class action complaints filed against the nation's largest HELOC lenders in the wake of the 2008 financial crisis and taxpayer bailout. These cases alleged that the banks—in a rush to slash and freeze HELOCs *en masse*—overcorrected and ended up suspending many borrowers' HELOCs without a legal basis for doing so.

At this point, most of those cases have settled[1] leading to industry-changing reforms to the financial sector's HELOC suspension, notice, and reinstatement practices. Importantly, the Settlement Agreement reached here is consistent with, and in ways superior to, the terms of those other deals. Like those other settlements, the Settlement Agreement provides notice to borrowers of their right to challenge Citibank's suspension of their accounts, calls for improvements to the bank's suspension notices, provides monetary relief to qualifying former customers, and will lead to borrowers receiving restored access to their bargained-for HELOC accounts. And as is the case with the other settlements, the Settlement Agreement recognizes improvements Citibank has made to its policies since the filing of these lawsuits and ensures that Citibank won't change its policies in any way less favorable to consumers. Accordingly, the Settlement Agreement not only represents the culmination of several years of contentious litigation and hard-fought settlement negotiations—like other industry-leading HELOC class action settlements it represents a victory for the Settlement Class and provides significant benefits and improvements in the way Citibank manages its

---

[1] *See Hamilton v. Wells Fargo Bank, N.A.*, No. 09-cv-4152-CW (N.D. Cal.) (Wilken, J., final approval to nationwide class settlement granted May 14, 2012); *Schulken v. Washington Mutual Bank*, No. 09-cv-2708 (N.D. Cal.) (Koh, J., preliminary approval to nationwide class action settlement granted July 25, 2012, final fairness hearing set for November 8, 2012); *In re JPMorgan Chase Bank, N.A., Home Equity Line of Credit Litig.*, No. 10-cv-3647, MDL 2167 (N.D. Ill.) (Pallmeyer, J., hearing on preliminary approval set for November 7, 2012).

customers' HELOCs.

Plaintiffs[2], on behalf of themselves and a proposed class of other aggrieved Citibank HELOC customers, allege that Citibank suspended or reduced their HELOCs in violation of the Truth-in-Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, its implementing regulation, Regulation Z, California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* (the "UCL"), as well as the terms of its HELOC contracts with its borrowers. Specifically, Plaintiffs claim that Citibank used computerized automated valuation models ("AVMs") improperly so as to trigger its ability to suspend its customers' accounts based upon supposed significant declines in the value of their homes. Plaintiffs additionally allege that Citibank sent improper notices, withheld important information from homeowners, and took other steps to frustrate their ability to appeal or challenge Citibank's suspension or reduction decisions.

The Parties engaged in extensive briefing with respect to several motions, including multiple motions to dismiss that were granted in part and denied in part. The Parties further exchanged informal and formal discovery that included the answers of three sets of detailed interrogatories and the production of several hundred pages of pertinent documents.

The Parties thereafter engaged in a settlement process to determine whether a resolution short of a hearing on class certification and the merits would be possible. The settlement process began with preliminary discussions and face-to-face meetings where the Parties, through their attorneys, exchanged information about the makeup of the proposed Settlement Class together with ideas regarding a potential settlement framework.

---

[2] Plaintiff Mark Winkler in *Winkler v. Citibank Inc.*, No. 09-cv-1999-BTM-CAB (S.D. Cal.) filed a motion to change venue to this Court (*Winkler* Dkt. 7), which the *Winkler* court granted on January 28, 2010. (*Winkler* Dkt. 12.) On May 18, 2010, this Court granted Plaintiff David Levin's motion to consolidate, add named Plaintiffs Gary and Marie Cohen, and for appointment of interim class co-lead counsel. (Dkt. 96.) On May 24, 2010, Plaintiffs Levin, Winkler, and the Cohens filed a consolidated amended complaint under the caption *In re Citibank HELOC Reduction Litigation*. (Dkt. 97.) Contemporaneously with this Motion, Plaintiffs filed a motion for leave to file a Fourth Amended Consolidated Class Action Complaint amending the Class definition consistent with the Settlement Agreement and adding the spouses of the named Plaintiffs, Ms. Loren S. Siegel and Ms. Jennie Lapointe, as additional named Plaintiffs.

The Parties' discussions benefitted significantly from a formal mediation process overseen by the Honorable Edward Infante (Ret.)[3]. After several hours of arm's length negotiations with Judge Infante, the Parties were able to reach agreement as to a general framework regarding settlement structure and the relief that would ultimately be made available to the Settlement Class. With the basic contours set, the Parties spent the next several months negotiating specific terms and memorializing them in a formal memorandum of understanding, which was conditioned upon negotiating further terms and the execution of a formal settlement agreement. During the months that followed, the Parties continued to negotiate remaining details, including the scope of the release, the language of the class notices, and other provisions to be included in the full Settlement Agreement. Additionally, once an agreement was reached in principle on the relief to be made available to the Settlement Class Members, the Parties engaged in negotiations regarding class member incentive awards and reasonable attorneys' fees. Unable to come to an agreement, the Parties ultimately participated in a telephone conference with Judge Infante who considered each side's position and made a recommendation regarding fees and incentive awards, which both Parties ultimately accepted. The result of this effort is a particularly strong and comprehensive nationwide Class Action Settlement Agreement worthy of preliminary approval. (*See* "Settlement Agreement," a copy of which is attached hereto as Exhibit 1.)

As explained below, the Settlement Agreement is an exceptional result for the Settlement Class Members and falls well within the range of final approval and is consistent with other HELOC settlements. Plaintiffs therefore move the Court to preliminarily approve the instant settlement, certify the proposed Class, appoint the named Plaintiffs as Class Representatives and appoint Jay Edelson, Steven L. Woodrow, and Evan M. Meyers of Edelson McGuire LLC and Jim Patterson of Patterson Law Group, P.C. as Class Counsel. For the convenience of the Court,

---

[3] Judge Infante has particular expertise in mediating HELOC class action settlements, having served as the mediator in the HELOC litigation involving Wells Fargo, *Hamilton v. Wells Fargo Bank, N.A.*, No. 09-cv-4152-CW (N.D. Cal.). (*See* Declaration of Attorney Steven Woodrow attached hereto as Exhibit 2 ("Woodrow Decl.") ¶ 7.) Again, that settlement, which is comparable in most respects to the instant Settlement Agreement, received final approval from Judge Wilken on May 14, 2012. (*Id.*)

proposed dates and deadlines leading to a final approval hearing are provided in the proposed order separately submitted.

## I. NATURE OF THE LITIGATION

### A. Investigation Into Mass HELOC Suspensions

In the wake of the unprecedented financial crisis and collapse of the housing market in late 2008, proposed Class Counsel began receiving an influx of complaints from HELOC customers asserting that their lenders had unilaterally suspended their HELOC accounts without justification. (Woodrow Decl. ¶ 2.) These complaints and inquiries prompted a wide-ranging investigation into the entire banking industry's HELOC suspension and reduction practices to determine which banking practices were in compliance with TILA, Regulation Z, and the borrowers' HELOC contracts. (*Id.* ¶¶ 2-3.) To date, proposed Class Counsel's investigation has included the gathering of information and documents from hundreds of aggrieved homeowners whose HELOCs have either been suspended or reduced by banks, including Citibank, as well as a review of hundreds of pages of formal, informal, and confirmatory discovery produced through the various settlement processes. (*Id.*) Proposed Class Counsel's investigation has also included collaborations with federal, as well as California, Florida, and Illinois lawmakers, along with other public officials, in an effort to share information and bring to light the legal issues and impact of unjustified HELOC suspensions and reductions. (*Id.* ¶ 4.)

As a result of this investigation, proposed Class Counsel were retained by the named Plaintiffs in this case as well as by other homeowners aggrieved by such national lenders as JPMorgan Chase Bank, N.A., Wells Fargo, N.A., National City Bank, GMAC Mortgage LLC, and OneWest Bank, F.S.B. (*Id.* ¶ 5.)

### B. The Underlying Class Actions

On January 26, 2009, David Levin brought a putative class action against Citibank in this Court. (Dkt. 1.) Mr. Levin's class action complaint alleged that Citibank unlawfully and improperly suspended and reduced its customers' HELOCs nationwide based on pre-textual claims that the customers' home values had significantly declined. (*Id.*) Specifically, Levin alleged that Citibank used computer models, known as AVMs, to falsely claim that its borrowers' home had significantly

declined in value so as to justify its decision to suspend their HELOCs—violating TILA, Regulation Z, and the UCL, and breaching its HELOC customer agreements in the process. (*Id.*) The Complaint sought certification of a class, money damages, a declaration that Citibank had violated the law, and injunctive relief. (*Id.*)

The Parties fully briefed two Motions to Dismiss along with a Motion to Strike certain allegations in Plaintiff's Complaint. (Dkts. 30-31, 41, 46-47, 49-50, 60, 71, 74.) Both Parties also produced and reviewed voluminous documents and information during the discovery process. (Woodrow Decl. ¶ 3.)

On September 11, 2009, Mark Winkler brought a similar putative class action against Citibank in the United States District Court for the Southern District of California, Case No. 09-cv-1999-BTM. (*Winkler* Dkt. 1.) Mr. Winkler alleged on behalf of a nationwide class of Citibank customers that the bank suspended his HELOC based on a false claim that his home value had significantly declined so as to falsely trigger Citibank's ability under TILA to suspend his HELOC. (*Id.*) Like Levin, Plaintiff Winkler alleged that Citibank violated TILA, Regulation Z, the UCL, and breached its contracts with the Class members. (*Id.*) Citibank filed a motion to dismiss, which was stayed when the Parties filed a joint motion to transfer that case to this Court. (*Winkler* Dkts. 8-12.)

On April 14, 2010, Plaintiff Levin filed a Motion to Consolidate Related Cases, Grant Leave to Add Named Plaintiffs, and Appoint Interim Co-Lead Class Counsel. (Dkt. 88.) The Motion sought to consolidate the *Winkler* and *Levin* cases, and add Gary and Marie Cohen—homeowners who were also injured by Citibank HELOC suspension practices—as two additional named plaintiffs. (*Id.*) On May 18, 2010, the Court granted the Motion to Consolidate and Motion for Leave to file an amended complaint adding the Cohens. (Dkt. 96.)

On May 24, 2010, Plaintiffs filed a Second Amended Consolidated Complaint. (Dkt. 97.) Citibank moved to dismiss and, on August 30, 2010, the Court granted in part and denied in part that Motion. (Dkt. 114.) Plaintiffs filed their Third Amended Consolidated Complaint on September 20, 2010 (Dkt. 117) and Citibank filed its Answer on October 14, 2010. (Dkt. 121.)

Contemporaneously with the filing of this Motion, Plaintiffs have filed a Motion for Leave to File a Fourth Amended Complaint amending the Class definition consistent with the terms of the

Settlement Agreement and adding Plaintiff Levin's wife and co-borrower Loren S. Siegel, and Plaintiff Winkler's wife and co-borrower Jennie Lapointe, as additional named Plaintiffs.

**C. Preliminary Settlement Negotiations and Mediation**

The Parties participated in initial settlement discussions to discuss both the legal landscape with respect to HELOC cases against other banks as well as their respective views on the instant cases in particular. (Woodrow Decl. ¶ 6.) After the cases had been consolidated, the Parties engaged in formal mediation before the Honorable Edward Infante in November 2010, who has particular experience with HELOC suspension and reduction litigation, as he presided over the mediation of the class actions against Wells Fargo related to its HELOC suspension practices. (*Id.* ¶ 7); *see infra* n.3. After several rounds of arm's length negotiations, the Parties reached an agreement with respect to the general contours of the Settlement's structure and the general relief to be made available to the Settlement Class Members. (*Id.* ¶ 8.) The Parties followed the mediation with further discussion over the next several months, ultimately leading to the finalization of a formal memorandum of understanding. Thereafter, the Parties continued to work out several of the Settlement's finer details, including the scope of the release, the particular language to be used in the class notices and Notice of Right to Request Reinstatement.

It was only after the Parties reached an agreement upon the relief for the Settlement Class that they began negotiating incentive awards for the named Plaintiffs and attorneys' fees for proposed Class Counsel. (*Id.* ¶ 9.) The Parties engaged in several rounds of telephonic and in-person meetings to see if they could resolve these issues. (*Id.*) On November 2, 2011, the Parties participated in an additional telephonic mediation session with Judge Infante. After considering each Party's position, the relief made available to the Settlement Class, and the amount of time put into the case, Judge Infante made a mediator's proposal with respect to the fees and incentive awards. (*Id.*) Both Parties accepted the mediator's proposal. (*Id.*)

Thereafter, the Parties spent several additional months memorializing the terms of their settlement in a formal Settlement Agreement, which is presently before the Court. (*See* Settlement Agreement.)

### D. Citibank's Position

At all times, Citibank has denied and continues to deny any wrongdoing whatsoever, or that it committed, or has attempted to commit, any wrongful acts or violations of law or duty, including, but not limited to, those alleged in the Complaint. (Settlement Agreement, Recital E.) Citibank contends that it has acted properly in all regards in connection with the suspensions and reductions of its customers' HELOCs and that it has strong, meritorious defenses to the claims alleged in the Complaint and was prepared to vigorously defend this litigation. (*Id.*) Nonetheless, Citibank has agreed that it is desirable and beneficial that the litigation be fully and finally settled and terminated upon the terms and conditions set forth in the Settlement Agreement. (*Id.*)

## II. TERMS OF THE SETTLEMENT AGREEMENT

The key terms of the Settlement Agreement are briefly summarized as follows:

### A. Settlement Class

1. *Class Definition*. For the purposes of settlement only, the Parties have agreed to the certification of the following Settlement Class (or "Class"): All persons in the United States from January 1, 2008 to January 31, 2012 whose Citibank HELOC Accounts were suspended or reduced based on a claim by Citibank of Collateral Deterioration[4] regarding the value of the property securing the HELOC. The persons comprising the proposed Settlement Class are set forth on the Class List (as defined below). Excluded from the proposed Class are any judge presiding over this case and the judge's immediate family members. (Settlement Agreement, § 1.13.)

2. *Class List*. This term refers to a list of those borrowers with Citibank HELOC Accounts, as identified by Citibank's computer records, whose HELOCs were suspended or reduced based on Citibank's claim of a Collateral Deterioration during the period January 1, 2008 to January 31, 2012. (Settlement Agreement § 1.15.) The Parties stipulate and agree that the Class List shall be kept and maintained as confidential and may not be used for any purpose other than effectuating this Agreement. (*Id.*)

---

[4] Capitalized terms retain the meaning as defined in the Settlement Agreement.

**B. Settlement Benefits**

Citibank shall provide the following relief to the Settlement Class Members:

1. *Notice of Right to Seek Reinstatement*. A key feature of the Settlement Agreement is the requirement that Citibank provide a notice to all Settlement Class Members advising them of their right to request reinstatement of their suspended or restricted HELOC accounts under Citibank's HELOC policies. The Notice will state that current Citibank customers may appeal Citibank's decision to suspend or reduce their HELOCs if they believe that (1) the value of their home did not significantly decrease, or (2) they have significantly paid down their first mortgage since the HELOC was originated. (*See* Notice of Right to Request Reinstatement which is attached as Exhibit D to the Settlement Agreement.)

2. *Changes in HELOC Suspension, Reduction, and Reinstatement Policies*. Citibank will refrain from changing its HELOC suspension and reduction policies (for suspensions and reductions based on Collateral Deterioration) in any manner that would be materially less beneficial to its borrowers for the 18-month period beginning on the Effective Date of this Settlement. (Settlement Agreement, §3.1(b).) With regard to all prospective relief provided by the Settlement Agreement, Citibank will be permitted to modify its policies and practices as necessary to comply with amendments or clarifications of applicable law. (*Id.*)

3. *Enhanced Suspension Notices*. Beginning 30 days after the Effective Date of this Settlement Agreement and continuing for a period of 18 months, Citibank will enhance its suspension or reduction notices based on Collateral Deterioration, provided it is feasible and not unduly burdensome and/or cost prohibitive, by including: (1) the present value of a property calculated by Citibank and used to determine the line reduction, and (2) the appraised value required to be eligible to seek reinstatement. (Settlement Agreement, § 3.1(c).) Under circumstances where Citibank determines that it is not feasible or that it is unduly burdensome and/or cost prohibitive to include such information in the Notices, the Notices shall state that customers may request such information by calling or writing to Citibank at the phone number and address provided in the notice. (*Id.*) Citibank will also commit for that time period to include disclosures in its suspension and reduction notices advising customers that they may seek

reinstatement if the customers believe that (i) the value of their home has not significantly declined by seeking a valuation from Citibank's approved property appraisal vendor; and/or (ii) they have significantly paid down their first mortgage balance by providing a copy of their most recent first mortgage statement showing their current first mortgage balance. (*Id.*) Borrowers are not guaranteed that Citibank will reinstate their HELOC simply because they request reinstatement, purchase an appraisal, and/or submit information related to the first mortgage balance. The borrower still must meet all other applicable criteria to qualify for reinstatement. (*Id.*)

4. *Appraisals*. Citibank agrees to work with LSI, its approved appraisal vendor for reinstatement reviews, to generally confirm that appraisal fees charged to Citibank customers are reasonable based on industry standards. (Settlement Agreement, § 3.1(d).) Citibank will not, however, be required to independently monitor or negotiate the fees charged by LSI or other third-party vendors, or ensure that LSI or other third-party vendors charge the lowest appraisal fee available. (*Id.*)

5. *Cash Payments to Former Customers*. Members of the proposed Settlement Class who closed their HELOCs following the suspension or reduction and who incurred an early closure release fee from Citibank will be entitled to make a claim for a $120 cash payment by following the procedures provided in the proposed class notice and Claim Form. (Settlement Agreement, § 3.2.) Payments will be issued to a Settlement Class Member via check, which must be cashed within 90 days. The Claims Administrator will be required to send a 30-day notice to Class Members who fail to cash their checks within 60 days from the date of issuance. (*Id.*) Class Members will also have a 30-day grace period beyond the 90-day period to cash checks. Any monies remaining for checks that are not cashed within 120 days from the date of issuance shall revert back to Citibank. (*Id.*)

**C. Other Relief**

In addition to the settlement benefits discussed above, Citibank has agreed to provide the following relief:

1. *Payment of Notice and Administrative Fees*. Citibank is to pay all settlement administration expenses. (Settlement Agreement, § 1.45.)

2. *Compensation to the Class Representatives*. In addition to any award under the Settlement, and in recognition of their efforts on behalf of the proposed Class, Citibank has agreed to pay, subject to approval of the Court, an incentive award of $36,000 divided in six (6) equal parts ($6,000 each) to Class Representatives David Levin, Loren S. Siegel, Gary Cohen, Marie Cohen, Mark Winkler, and Jennie Lapointe. (Settlement Agreement, § 8.4.)

3. *Payment of Attorneys' Fees and Expenses*. Under the Settlement Agreement, Citibank has agreed as reasonable and to not oppose proposed Class Counsel's request, subject to Court approval, for up to $1,214,000 for attorneys' fees and reimbursement of expenses. (*Id.*, § 8.3.) Proposed Class Counsel will provide appropriate support for any request for attorneys' fees and costs prior to final approval.

**D. Release**

In exchange for the relief provided above, and upon the entry of a final order approving this Settlement, Citibank and each of its related affiliates and entities will be released from any claims, whether known or unknown, arising out of or relating to Citibank's HELOC treatment policies, systems, standards and procedures, including, without limitations, its HELOC account restrictions, credit limit reductions, and reinstatement standards and processes, that were or could have been alleged in the Complaint of the named Plaintiffs. (*See* Settlement Agreement, §§ 1.40-1.42; § 4 for the full release.)

## III. THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED

Prior to granting preliminary approval of a settlement, the Court should determine that the proposed Class is proper for settlement purposes, and thus appropriate for certification. Manual for Complex Litigation § 21.632 (4th ed. 2004); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Certification of a class is proper when the plaintiffs demonstrate that the proposed class and proposed class representatives meet the following prerequisites of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a)(1-4).

In addition to meeting the requirements of Rule 23(a), plaintiffs seeking class certification

must also meet at least one of the three provisions of Rule 23(b). Fed. R. Civ. P. 23(b); *Blake v. Arnett*, 663 F.2d 906, 912 (9th Cir. 1981). Where, as here, plaintiffs seek certification under Rule 23(b)(3), they must demonstrate that common questions of law or fact predominate over individual issues and that maintaining the suit as a class action is superior to other methods of adjudication. Fed. R. Civ. P. 23(b)(3); *Amchem*, 521 U.S. at 615-16; *Sullivan v. Kelly Servs., Inc.*, 268 F.R.D. 356, 364-65 (N.D. Cal. 2010). A court should accept the allegations of the plaintiffs' complaint as true, but may consider matters beyond the pleadings to determine if the claims are suitable for resolution on a class-wide basis. *Celano v. Marriot Int'l, Inc.*, 242 F.R.D. 544, 548 (N.D. Cal. 2007). In this case, Plaintiffs meet each of the prerequisites for the certification of the Class identified in the Settlement Agreement.

**A. The Settlement Class is Comprised of Thousands of Members Such that Joinder of Individual Plaintiffs is Impractical.**

The first prerequisite of class certification is numerosity, which requires "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). To satisfy this requirement there is no "specific" number required, nor are the plaintiffs required to state the "exact" number of potential class members. *Celano*, 242 F.R.D. at 548. Generally, the numerosity requirement is satisfied when the class comprises 40 or more members. *See id.* at 549.

Here, the proposed Class is comprised of over one hundred thousand Citibank HELOC customers nationwide—a number that more than satisfies the numerosity requirement. (Woodrow Decl. ¶ 12.)[5] Accordingly, the proposed Class is sufficiently numerous.

**B. The Requirement of Commonality is Satisfied Because the Settlement Class Members' Claims Arise Out of the Same Conduct by Citibank—It Blocked and Reduced Each of Their HELOCs Based on False Assertions That Their Homes Had Significantly Declined in Value—Implicating Identical Statutory Violations and Breach of Contract Claims.**

The second threshold to certification requires that "there are questions of law or fact

---

[5] The information provided to proposed Class Counsel regarding the precise number of Settlement Class Members is presently subject to the protective order entered by this Court. (Dkt. 116.) Proposed Class Counsel are of course prepared to share the number with the Court at the fairness hearing.

common to the class." Fed. R. Civ. P. 23(a)(2). Commonality may be demonstrated when the claims of all class members "depend upon a common contention" and "even a single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551, 2556 (2011); *see also Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir. 1998) ("The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."). The common contention must be of such a nature that it is capable of class-wide resolution and so that the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes,* 131 S. Ct. at 2551. It is generally accepted that "[w]here the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists." *Parra v. Bashas', Inc.*, 536 F.3d 975, 978-79 (9th Cir. 2008).

In the instant case, the Members of the Settlement Class share common claims arising out of the same conduct, having had their HELOCs suspended or reduced by Citibank allegedly in the absence of a significant decline in their home values. These similar factual allegations resulted in the Members of the Settlement Class having common claims for violations of TILA/Regulation Z and California state law, along with a breach of contract claim. Likewise, common questions for all Settlement Class Members ask whether Citibank, through its alleged misuse of AVMs and other improper policies, actually determined that its borrowers' home values had significantly declined prior to suspending their HELOCs.

Under the Supreme Court's holding in *Dukes,* the key concern is whether the issues can be answered in a single proceeding. 131 S. Ct. at 2551. Citibank applied uniform policies with respect to its HELOC suspension programs, and all Members of the proposed Settlement Class were subjected to the same standards when Citibank considered and subsequently reduced or suspended their HELOCs based on supposed collateral deterioration. Critically, whether these standards ran afoul of TILA, Regulation Z, California state law and the customers' HELOC agreements (which, like TILA, limit the instances where a creditor can suspend or reduce a HELOC) can be answered in a single proceeding for all of the class members. Thus, the element of commonality is satisfied.

### C. The Named Plaintiffs' Claims are Typical of, if Not Identical to, the Settlement Class Members' Claims Because All Claims Arise From Citibank's Use of Improper Suspension Policies and False Claims That the Class Members' Homes had Significantly Declined in Value.

Rule 23 next requires that the representative plaintiffs' claims are typical of those of the putative class they seek to represent. Fed. R. Civ. P. 23(a)(3). The typicality requirement ensures that "the interest of the named representative aligns with the interests of the class." *Wolin v. Jaguar Land Rover N. Am. LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). Typicality does not require that the representatives' claims be substantially identical, but only that they are "reasonably coextensive with [the claims] of absent class members." *Hanlon*, 150 F.3d at 1020. The test is whether other class members have the same or similar injury, whether the action is based on conduct that is not unique to the named plaintiffs, and whether other class members have been injured by the same conduct. *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation omitted); 4 Conte & Newberg, Newberg on Class Actions, § 3:13, at 327 (4th ed. 2002). In most cases, "a finding of commonality will ordinarily support a finding of typicality." *Barefield v. Chevron U.S.A., Inc.*, No. C 86-2427 TEH, 1987 WL 65054, at *5 (N.D. Cal. Sept. 9, 1987); *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001).

Here, all of the Named Plaintiffs and the Settlement Class Members have suffered the same injury—their HELOCs were suspended or reduced by Citibank based upon supposed decline in their home values, using uniformly applied policies that did not comply with TILA, Regulation Z, and their HELOC contracts. As such, the named Plaintiffs' claims for relief under TILA and California state law and for breach of contract are typical of—if not wholly identical to—the Settlement Class Members' claims and Rule 23(a)(3)'s requirement for typicality is met.

### D. Proposed Class Counsel and the Named Plaintiffs Have and Will Continue to Fairly and Adequately Represent the Interests of the Settlement Class.

The final Rule 23(a) prerequisite requires that the proposed class representatives have and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To determine if representation is in fact adequate, a court must ask "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150

F.3d at 1020.

The Named Plaintiffs have no conflicts with the other Class members. Their interests are entirely representative of and consistent with the interests of all Members of the proposed Class—all have allegedly experienced the suspension of their HELOCs based upon a supposed significant decline in their home values. Plaintiffs' active participation in this litigation has ranged from attending multiple in-person and telephonic meetings with Plaintiffs' counsel, to diligently answering written discovery and producing voluminous documents, reviewing and commenting on drafts of briefs, and doing factual research to support their claims. All Plaintiffs have demonstrated that they have and will continue to protect the interests of the proposed Settlement Class. (Woodrow Decl. ¶ 13.)

Further, proposed Class Counsel have regularly engaged in major complex litigation, and have extensive experience in consumer class action lawsuits, especially those related to the banking industry in general and the HELOC litigation in particular, that are similar in size, scope and complexity to the present case. (*Id.* ¶ 5).

Most importantly, proposed Class Counsel are among the leading attorneys in the nation with respect to the circumstances that permit financial institutions to suspend or reduce HELOCs under TILA, Regulation Z and the banks' HELOC contracts. (*Id.* ¶¶ 5, 16.) Counsel seeking to represent the Settlement Class in this case were appointed as class counsel in the HELOC class action settlement with Wells Fargo, *see Hamilton*, 09-cv-4152-CW, Dkt. 109 (N.D. Cal.), and in a HELOC settlement against JPMorgan Chase Bank, N.A., *see Schulken v. Washington Mut. Bank*, No. 09-cv-2708-LHK, 2012 WL 28099 at * 12, 15 (N.D. Cal. Jan. 5, 2012). Moreover, Jay Edelson was appointed interim co-lead class counsel in the Chase HELOC multidistrict litigation involving Chase's HELOC suspensions based on purported declines in borrower home values. *See In re JPMorgan Chase Bank, N.A. Home Equity Line of Credit Litig.*, No. 10-cv-3647, MDL 2167 (N.D. Ill., July 16, 2010) (Dkt. 37). Additionally, Edelson McGuire lawyers have prosecuted similar cases against other industry actors, including Washington Mutual Bank, National City Bank, OneWest Bank, and GMAC Mortgage (Woodrow Decl. ¶ 5) and the firm's lawyers both took the lead in responding to the Federal Reserve Board of Governors' request for public comment on proposed

changes to Regulation Z's HELOC suspension rules and have worked with lawmakers on both sides of the aisle to bring the issue of unjustified HELOC suspensions to light. (*Id.* ¶ 4.)

Accordingly, the named Plaintiffs and proposed Class Counsel will adequately represent the proposed Class Members.

**E. The Proposed Settlement Class Meets the Requirements of Rule 23(b)(2) and (b)(3).**

Once the prerequisites of Rule 23(a) have been met, plaintiffs must also demonstrate one of the three requirements of Rule 23(b) in order to certify a proposed class. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). Rule 23(b)(2) provides that a class can be maintained for injunctive relief where the Defendant has acted or refused to act on grounds generally applicable to the class as a whole. Rule 23(b)(3) provides that a class action can be maintained where (1) the questions of law and fact common to members of the class predominate over any questions affecting only individuals, and (2) the class action mechanism is superior to the other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3); *Pierce v. Cnty of Orange*, 526 F.3d 1190, 1197 n.5 (9th Cir. 2008).

1. *Certification is appropriate under Rule 23(b)(2) because Citibank acted on grounds generally applicable to the Settlement Class Members.*

As explained above, Citibank applied its HELOC suspension, reduction, and reinstatement policies uniformly among its customers. None of the Settlement Class Members received special or individualized treatment; rather, they were each subjected to Citibank's standardized procedures. Plaintiffs have challenged these policies. As a result, determining the legality of these policies and procedures under TILA, Regulation Z, and the terms of the Class Members' uniform HELOC contracts can be adjudicated with respect to the entire class. Because this may be accomplished in a single proceeding for each of the class members, certification is appropriate under rule 23(b)(2). *Dukes*, 131 S.Ct. at 2557.

2. *Under Rule 23(b)(3) Common Questions of Law and Fact Predominate*

The focus of the predominance requirement is whether the proposed class is sufficiently cohesive to warrant adjudication by representation. *Amchem*, 521 U.S. at 623. Predominance exists

"[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." *Hanlon,* 150 F.3d at 1022. Common legal and factual issues have been found to predominate by this Court where the class members' claims arose under TILA and where the claims challenged the bank's lending practices. *See Plascencia v. Lending 1st Mortg.*, 259 F.R.D. 437, 446 (N.D. Cal. 2009).

In this case, the core issues of law that predominate are whether Citibank's HELOC suspension and reduction policies and/or procedures violate TILA, Regulation Z, and the UCL, and whether these practices breach Citibank's own HELOC contracts with the Settlement Class members. The central factual issue that predominates in this litigation is whether Citibank suspended HELOCs in the absence of a significant decline in its borrowers' home values. Citibank's policies and procedures with respect to HELOCs are universal, both in design and implementation, as to all Settlement Class Members. As such, the answers to the common questions that resulted from Defendant's alleged conduct are the primary focus and central issue of this class action and thus predominate over any individual issues that may exist.

3. *This Class Action, and Especially this Class Action Settlement, is the Superior Method of Adjudication of the Alleged Claims*

The certification of this suit as a class action is superior to any other method available to fairly, adequately and efficiently resolve the claims of the Settlement Class Members. The purpose of the superiority requirement is one of judicial economy and assurance that a class action is the "most efficient and effective means of resolving the controversy." *Wolin*, 617 F.3d at 1175-76. Absent a class action, and considering the fact that the Class includes several hundred thousand people, most Members of the proposed Class would find the cost of litigating their claims to be prohibitive and, moreover, such an influx of individual actions would be judicially inefficient. Also, because the action will now settle, the Court need not give as much consideration to issues of manageability as it would need to if the matter were proceeding to trial. *See Amchem*, 521 U.S. at 620 (citation omitted) ("[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial"). Accordingly, common questions predominate and a class

action is the superior method of adjudicating this controversy.

## IV. THE COURT SHOULD APPOINT PLAINTIFFS' COUNSEL AS CLASS COUNSEL

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the Court must consider counsel's: (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i-iv).

Again, Proposed Class Counsel are among the leading attorneys in the nation who have successfully prosecuted cases against nearly every major bank for the improper suspensions and reductions of HELOCs and were appointed as class counsel in adversarial and settlement proceedings. *See Schulken*, 2012 WL 28099, at *12, 15 (appointing Plaintiffs' counsel as lead class counsel in an adversarial class certification proceeding in a similar HELOC suspension case); *Hamilton*, 09-cv-4152-CW (N.D. Cal.) (Dkt. 109) (appointing Plaintiffs' counsel as class counsel in a similar HELOC suspension case against Wells Fargo); *In re JPMorgan Chase Bank, N.A. Home Equity Line of Credit Litig.*, No. 10-cv-3647 (Dkt. 37) (appointing Proposed Class Counsel as interim class counsel in a consolidated multi-district proceeding against Chase based on Chase's alleged unlawful suspensions of HELOCs).

Further, Proposed Class Counsel have diligently investigated this matter, dedicating substantial resources to the investigation of the claims at issue in the action. (Woodrow Decl. ¶¶ 2-4, 16.) Before the underlying lawsuits of Mr. Levin and Mr. Winkler were ever filed, Plaintiffs' counsel investigated the banking industry's practices in reducing and suspending HELOCs under the TILA and Regulation Z requirements. (*Id.* ¶ 2.) Proposed Class Counsel have also interviewed hundreds of homeowners whose HELOCs were restricted based on a purported decline in their home value, including by Citibank. (*Id.*) Further, proposed Class Counsel have testified at a town hall hearing in Orlando, Florida, hosted by the Florida Senate President Mike Haridopolos, that was entirely devoted to the HELOC suspensions by the major banks in the State of Florida. (*Id.* ¶ 4.) Finally, proposed Class Counsel, after extensive research and analysis, submitted a comprehensive

response to the Federal Reserve Board's request for public comment to the proposed changes to Regulation Z—the precise regulation at issue in this case. (*Id.*)

During the litigation, Plaintiffs' counsel vigorously pursued the interests of the Members of Class by briefing multiple motions, including two motions to dismiss and one motion to strike, issuing interrogatories and requests for documents, responding to Citibank's voluminous discovery, reviewing and analyzing hundreds of pages of documents produced by Citibank, attending one in-person mediation and conducting numerous formal and informal dialogs with opposing counsel. (*Id.* ¶ 14.) Accordingly, Plaintiffs' counsel's diligent and comprehensive investigation into the factual and legal issues of this case is undisputed.

In addition to having a demonstrable handle on the procedural hurdles associated with the prosecution and settlement of consumer class actions, Plaintiffs' counsel have demonstrated an understanding of the relevant substantive legal issues. Counsel's research has shown that it is the first law firm to ever bring a case against a national bank claiming violations of TILA and Regulation Z based on HELOC suspensions and reductions and is the only law firm to submit a substantive response to the Federal Reserve Board's request for public comment regarding the proposed changes to the relevant HELOC regulations. (¶¶ 4, 16.)

Finally, proposed Class Counsel have devoted significant resources and will continue to devote further resources to this class action through the preliminary approval and final approval stages, and beyond through the approximately 12-month period during which Defendant will administer the injunctive relief agreed upon by the Parties. (*Id.* ¶ 17.) Plaintiffs' counsel are committed to ensuring that Plaintiffs and eligible members of the Class receive meaningful notice of the settlement and their respective relief. (*Id.*) Accordingly, the Court should appoint Jay Edelson, Steven L. Woodrow and Evan M. Meyers of Edelson McGuire, LLC and Jim Patterson of Patterson Law Group, P.C. to serve as Class Counsel for the proposed Settlement Class pursuant to Rule 23(g).

## V. THE PROPOSED SETTLEMENT FALLS WITHIN THE RANGE OF FINAL APPROVAL AND THUS WARRANTS PRELIMINARY APPROVAL

After certifying the proposed Class for the purposes of settlement, the Court should grant preliminarily approval. The procedure for review of a proposed class action settlement is a well-established two-step process. Fed. R. Civ. P. 23(e); *see also* Newberg, §11.25 at 3839. The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is "within the range of possible approval." Newberg, §11.25, at 3839 (*quoting* Manual for Complex Litigation §30.41 (3d ed. 1995)); *In re Syncor ERISA Litig*., 516 F.3d 1095, 1110 (9th Cir. 2008); *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). This hearing is not a fairness hearing; its purpose, rather, is to ascertain whether there is any reason to notify the putative class members of the proposed settlement and to proceed with a fairness hearing. *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079. Notice of a settlement should be sent where "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Id.*

The Manual for Complex Litigation characterizes the preliminary approval stage as an "initial evaluation" of the fairness of the proposed settlement made by a court on the basis of written submissions and informal presentation from the settling parties. Manual for Complex Litigation 21.632 (4th ed. 2004). If the Court finds a settlement proposal "within the range of possible approval," it then proceeds to the second step in the review process—the final approval hearing. Newberg, §11.25, at 3839.

A strong judicial policy exists that favors the voluntary conciliation and settlement of complex class action litigation. *In re Syncor,* 516 F.3d at 1101 (citing *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982)). While the district court has discretion regarding the approval of a proposed settlement, it should give "proper deference to the private consensual decision of the parties." *Hanlon*, 150 F.3d at 1027. In fact, when a settlement is negotiated at arm's length by experienced counsel, there is a presumption that it is fair and reasonable. *In re Pac. Enterprises Sec. Litig*., 47 F.3d 373, 378 (9th Cir. 1995). A settlement negotiated with the

assistance of an experienced private mediator is further proof that that the settlement was reached fairly and provides adequate relief. *In re Indep. Energy Holdings PLC*, No. 00-cv-6689, 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003). Ultimately, the Court's role is to ensure that the settlement is fundamentally fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2); *In re Syncor*, 516 F.3d at 1100. As explained below, the proposed Settlement falls well within "the range of possible approval."

**A. The Settlement provides impressive benefits to current and former Citibank HELOC customers.**

First, the Settlement enjoys a presumption of fairness insofar as it was negotiated at arm's length before a nationally respected mediator and former magistrate judge of this district. It was only after these rounds of arm's length negotiations—including several formal mediation sessions with Judge Infante of JAMS and months worth of back-and-forth telephone and in-person discussions—that the Parties were able to reach the instant Settlement. (Settlement Agreement, Recital D.) Accordingly, the Settlement is presumptively fair.

Even without the presumption, the Settlement is demonstrably fair, reasonable and adequate. The results for the Class are exceptional. As with other industry settlements, Citibank is required to apprise Class Members of the right to request reinstatement. (*Id.*, § 3.1(a).) Proposed Class Counsel anticipate that, based on Counsel's communication with the Class Members regarding the right to challenge the suspension or reduction of their HELOCs, a significant percentage of suspended borrowers will apply for and achieve reinstatement. (Woodrow Decl. ¶ 10.) This is further supported by information learned during the mediation process, which suggested that a significant percentage of customers who actively seek reinstatement are successful at having their accounts reinstated—indicating that Citibank's appeals process is legitimate (as opposed to being illusory). (*Id.*) Also, that the appeal success rate has increased as more detailed information regarding their HELOC accounts has been made available to customers indicates that the anticipated success rates during the Settlement period should likewise be meaningful—especially in light of the enhanced information that the Settlement requires be provided to aggrieved HELOC customers. (*Id.*)

It is also important to bear in mind that the Plaintiffs learned through the mediation and

discovery that Citibank had made certain meaningful changes to its HELOC suspension, reduction, and reinstatement practices following the lawsuit but prior to the Parties' mediation that were more favorable to borrowers. (*Id.* ¶ 11.) For example, early on in its suspension program, Citibank used a HELOC suspension notice that indicated borrowers could appeal the suspension if they believed that their home had regained some of its lost value. (*Id.*) No indication was given that borrowers who disputed that their home values had declined significantly in the first place could appeal immediately (as opposed to waiting for their homes to regain lost value). (*Id.*) Since the lawsuit was filed, Citibank refined its suspension notices to indicate that borrowers who don't believe their home values have declined at all can appeal Citibank's decision immediately. (*Id.*) The result was a significant spike in the number of HELOC customers who successfully appealed Citibank's decision. (*Id.* ¶¶ 10-11.) Likewise, at some point following the initiation of these lawsuits, Citibank began considering first mortgage pay-downs when calculating the available equity in a customers' house. (*Id.*¶ 11.) This consideration—which arguably goes beyond what Regulation Z requires of lenders—enabled greater numbers of customers to successfully appeal the suspension or reduction of their accounts. (*Id.*) There are many other examples of such changes. They are important because Citibank has agreed, through the Settlement, to refrain from changing any of its current policies in any manner that would be less favorable to borrowers. (Settlement Agreement, § 3.1 (b).) This means that the Settlement ensures these consumer-friendly policies remain in effect during the Settlement period.

Likewise, Class Members will further benefit from the enhanced suspension notices, which will enable borrowers to understand why their account has been suspended or reduced, so that they can determine whether to challenge the suspension or reduction. (*Id.*, § 3.1 (c).) This is key: one of the major issues facing HELOC customers at the time these lawsuits were filed was the pervasive banking practice of keeping such information hidden from borrowers requesting reinstatement. (Woodrow Decl. ¶ 3.) After all, how can a homeowner effectively challenge the bank's claim that his home value has significantly declined without knowing the value of the home according to the bank or the value needed for reinstatement? As a result of the Settlement Agreement, borrowers will no longer be kept in the dark. The Settlement requires that Citibank either provide such

information in its notices or provide a toll-free number that customers can call to receive the information. (Settlement Agreement, § 3.1(c).) As with the other relief, this too should lead to a greater percentage of successful appeals.

Class Members who seek reinstatement will further benefit from Citibank's commitment to work with LSI to generally confirm that the appraisal fees charged by LSI are in line with industry standards. (*Id.* § 3.1(d).) This is important as the Cohens specifically alleged they were overcharged several hundreds of dollars for their appraisal (thereby providing a disincentive for customers to appeal). (Dkt. 117, Third Amended Complaint, ¶ 25.) By lowering this hurdle, the Settlement should further encourage successful challenges to Citibank's suspension and reduction decisions.

Furthermore, upon the filing of a claim form, Class Members who closed their Citibank HELOCs following the suspension and who, therefore, will benefit from the injunctive relief if they return to Citibank, are also eligible to receive a cash payment of $120 if they incurred an early closure release fee when they terminated their accounts. (Settlement Agreement, § 3.2.) The $120 represents a fair, negotiated portion of the typical termination fees incurred.

Although Plaintiffs and their counsel are confident in the strength of their legal claims and that they would ultimately prevail at trial, they also recognize that litigation is inherently risky. (Woodrow Decl. ¶ 15.) When the strengths of Plaintiffs' claims are weighed against the legal and factual obstacles combined with the complexity of class action practice against experienced defense counsel, it is readily apparent that the proposed Settlement is clearly in the best interest of Members of the proposed Class as it provides substantial injunctive and monetary relief immediately. (*Id.*)

**B. The instant Settlement is comparable to other industry leading settlements.**

The Settlement is consistent with three other HELOC settlements known to Class Counsel. (*Id.* ¶ 14.) *See Hamilton*, 09-cv-4152-CW (N.D. Cal.) (Dkt. 70-1) (*Hamilton* Settlement Agreement is attached hereto as Exhibit 3); *Schulken*, No. 09-cv-2708 (N.D. Cal.) (settlement preliminarily approved July 25, 2012) (Dkt. 210); *Greenwald v. AmTrust Fin. Corp.*, No. 09-cv-681596 (Ohio Ct. of Common Pleas, Cuyahoga County, settlement finally approved Dec. 18, 2009) (the *Greenwald* Settlement Agreement and the Final Approval Order are attached hereto as Exhibit 5).

In *Hamilton*, the plaintiffs alleged, *inter alia*, on behalf of themselves and a nationwide class

of homeowners that Wells Fargo suspended or reduced HELOCs in violation of TILA, Regulation Z, and state law, falsely claiming a significant decline in home values. *See Hamilton*, No. 09-cv-4152-CW (N.D. Cal.) (Dkt. 78). The instant Settlement shares many similarities with the settlement approved in that case. The Wells Fargo settlement, which was finally approved by Judge Wilken on May 14, 2012, provided for Wells Fargo to send class members a notice of right to request reinstatement, proactively reinstate HELOCs, and refrain from using AVM valuations that are more than 90 days old when deciding to restrict a HELOC. (*See Hamilton* Settlement Agreement.) For a 12-month period following final approval, Wells Fargo also agreed not to materially change its policies and procedures in a manner that disadvantages borrowers and to provide borrowers whose HELOCs were restricted with a letter containing information to assist with the reinstatement process. (*Id.* § 3.) Finally, the settlement provides for a $150 cash payment to former Wells Fargo borrowers who incurred "deferred origination fees." (*Id.*)

In *Schulken*, the plaintiffs alleged that Chase improperly suspended their HELOC based on a supposed failure to provide paystubs and other financial documentation upon request. *Schulken*, No. 09-cv-2708 (N.D. Cal.) (Dkt. 170). The Settlement Agreement, which was preliminary approved by the Honorable Judge Lucy H. Koh on July 25, 2012 (*Schulken* Dkt. 210), provides for $25 payments to be made to subclass members who alleged they received a defective HELOC suspension notice and $75 cash payments to the Class Members who submit a claim form swearing they incurred damages as a result of their HELOC suspension. (*Schulken* Dkt. 203-1, Settlement Agreement, § 3.)

Finally, in *Greenwald*, the plaintiff alleged on behalf of himself and all residents of Ohio that AmTrust Bank suspended HELOCs based on purported declines in home values without regard to the actual market value of the homes. (*See Greenwald* Complaint, a true and accurate copy of which is attached hereto as Exhibit 4.) The plaintiff also alleged that AmTrust charged the class members annual fees while their HELOCs were suspended. (*Id.*) The parties entered into a settlement agreement that provided class members with a cash award in the amount of 35% of the

annual fee paid while their HELOCs were restricted. (*See Greenwald* Settlement Agreement, ¶ 2.)[6] The bank also undertook to issue credit for an unpaid annual fee to select borrowers. (*Id.*) This is the only relief the *Greenwald* class members were entitled to under the settlement agreement. (*See id.*)

The instant Settlement falls in line with the terms preliminarily approved in the *Wells Fargo* case and provides relief far more comprehensive than that approved in the *Greenwald* settlement. The instant settlement requires Citibank to refrain from materially changing its policies for 18 months (a period 6-months longer than the *Wells Fargo* settlement), implement enhanced HELOC suspension notices, work with its vendor to limit appraisal costs, and send a notice of right to seek reinstatement as in the *Wells Fargo* settlement. Finally, the instant Settlement allows for sizable cash payments to former borrowers of Citibank who closed and paid off their suspended HELOC accounts. Accordingly, this Settlement easily falls "within the range of possible approval," is fair, reasonable and adequate, and should be preliminarily approved.

## VI. THE PROPOSED PLAN OF CLASS NOTICE COMPORTS WITH DUE PROCESS.

To satisfy the requirements of both Rule 23 and Due Process, Rule 23(c)(2)(B) provides that, "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Rule 23(e)(1) similarly says, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." Fed. R. Civ. P. 23(e)(1). Notice is "adequate if it may be understood by the average class member." Newberg, § 11:53 at 167. The notice must describe the nature of the action, the definition of the class to be certified, the class claims and defenses at issue, as well as explain that settlement class members may enter an appearance through counsel if so desired,

---

[6] The *Greenwald* settlement agreement gives an example that if the annual fee amounted to $50, the class members would recover $17.50. If the annual fee was $25, the class members would receive $8.75. If the particular class members were not charged an annual fee, they would recover nothing. (*See Greenwald* Settlement Agreement n.1.)

request to be excluded from the settlement class, and that the effect of a class judgment shall be binding on all class members. *See* Fed. R. Civ. P. 23 (c)(2)(B).

In this case, the Settlement Agreement contemplates a comprehensive notice plan designed to reach as many potential class members as possible. (Settlement Agreement, § 5.)

**A. Internet Publication**

First, within 14 days of entry of the Order granting preliminary approval of the Settlement Agreement, traditional "long form" notice will be provided on the settlement website at a domain name to be agreed upon by the parties. (*See* Ex. E to the Settlement Agreement.) The long-form notice describes the terms of the Settlement, gives notice to the Class Members of their right to seek reinstatement of the suspended or reduced HELOCs, as well as provides a mechanism for the Class Members who are former borrowers to download their claims online.

**B. U.S. Mail Notice**

On or before the Notice Date, Citibank will send or cause Notice to be sent to all Class Members via U.S. Mail to the last known address in Citibank's records. (Settlement Agreement, § 5.2(b).) The direct notice mailing will include the Notice of Right to Request Reinstatement, a plain language document notifying the Class Members of their right to request reinstatement of their suspended and reduced HELOCs. The Notice will also include a claim form for those Class Members who are former customers and are entitled to seek cash payment. (*See* Ex. B to the Settlement Agreement.)

**C. CAFA Notice**

The Settlement Agreement further requires Citibank to comply with the requirements of the Class Action Fairness Act, 28 U.S.C. § 1715 ("CAFA"), by serving notice of the proposed Settlement along with all other required documentation to the appropriate state and federal government officials. (Settlement Agreement, § 5.2(c).)

The format and language of each form of notice has been drafted so that it is in plain language, is easy to read, and will be readily understood by the Members of the proposed Class. (See Exs. B and E to the Settlement Agreement.) Accordingly, the proposed notice plan comports with Rule 23 and the requirements of Due Process and should be approved by this Court.

## VII. CONCLUSION

For the foregoing reasons, Plaintiffs David Levin, Mark Winkler, Gary Cohen and Marie Cohen respectfully request that the Court certify the proposed Settlement Class, appoint David Levin, Loren Siegel, Mark Winkler, Jennie Lapointe, Gary Cohen and Marie Cohen as the Class Representatives, appoint Jay Edelson, Steven L. Woodrow and Evan M. Meyers of Edelson McGuire LLC and Jim Patterson of Patterson Law Group, P.C. as Class Counsel, grant preliminary approval of the proposed Settlement Agreement, approve the form and manner of notice described above, and grant such further relief the Court deems reasonable and just.

Dated: August 31, 2012

Respectfully Submitted,

DAVID LEVIN, LOREN S. SIEGEL, GARY COHEN, MARIE COHEN, MARK WINKLER, and JENNIE LAPOINTE individually and on behalf of a Class of similarly situated individuals,

By: /s/ Steven L. Woodrow
Steven L. Woodrow

Sean P. Reis (SBN 184044)
EDELSON MCGUIRE, LLP
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Telephone: (714) 352-5200
Facsimile: (714) 352-5201
Email: sreis@edelson.com

Jay Edelson (Admitted *Pro Hac Vice*)
Steven L. Woodrow (Admitted *Pro Hac Vice*)
Evan Meyers (Admitted *Pro Hac Vice*)
EDELSON MCGUIRE LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone: (312) 589-6370
Facsimile: (312) 589-6378
Email: jedelson@edelson.com
Email: swoodrow@edelson.com
Email: emeyers@edelson.com

James Patterson
Patterson Law Group
402 W. Broadway Street, 29th Floor
San Diego, California 92101
Telephone: 619-398-4760
Facsimile: 619-756-6991 (fax)
jim@pattersonlawgroup.com

*Counsel for Plaintiffs and the Settlement Class*

**CERTIFICATE OF SERVICE**

I, Sean P. Reis, hereby certify that on August 31, 2012 I caused true and accurate copies of ***Plaintiffs' Motion for Preliminary Approval of Class Action Settlement Agreement*** to be filed electronically with the Clerk of the Court using the CM/ECF system, which will send notification of filing to counsel of record for each party.

Dated: August 31, 2012

EDELSON MCGUIRE, LLP

By: /s/ Sean P. Reis
Sean P. Reis