# Exhibit 1

1  Sean P. Reis (SBN 184044)
   EDELSON MCGUIRE, LLP
2  30021 Tomas Street, Suite 300
   Rancho Santa Margarita, California 92688
3  Telephone: (714) 352-5200
   Facsimile: (714) 352-5201
4  Email: sreis@edelson.com

5  Jay Edelson (Admitted *Pro Hac Vice*)
   Steven L. Woodrow (Admitted *Pro Hac Vice*)
6  Evan Meyers (Admitted *Pro Hac Vice*)
   EDELSON MCGUIRE, LLC
7  350 North LaSalle Street, Suite 1300
   Chicago, Illinois 60654
8  Telephone: (312) 589-6370
   Facsimile: (312) 589-6378
9  Email: jedelson@edelson.com
   Email: swoodrow@edelson.com
10 Email: emeyers@edelson.com

11 *Counsel for Plaintiffs*
   [additional counsel appear on signature page]
12

13                **UNITED STATES DISTRICT COURT**
          **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

14 IN RE CITIBANK HELOC REDUCTION          No.  09-CV-0350-MMC
   LITIGATION
15                                         **CLASS ACTION**

16                                         **SETTLEMENT AGREEMENT**

17                                         The Honorable Maxine M. Chesney

18

19

20         This Class Action Settlement Agreement ("Agreement") is entered into by and

21 among David Levin, Loren S. Siegel, Gary Cohen, Marie Cohen, Mark Winkler and Jennie

22 Lapointe, on behalf of a class defined herein (collectively the "Plaintiffs") and Citibank, N.A., on

23 behalf of itself ("Citibank" or "Defendant"), by and through their respective counsel of record.

24 This Agreement is intended by Plaintiffs and Citibank (collectively "the Parties") to fully, finally

25 and forever compromise, resolve, discharge and settle the Released Claims, upon and subject to

26 the terms and conditions hereof, and subject to the approval of the Court.

27

28

---

Settlement Agreement                                      Case No. 09-cv-0350

**RECITALS**

A.      On January 26, 2009, Plaintiff Levin filed a putative class action complaint against Citibank in the Northern District of California, Case No. 3:09-cv-00350-MMC, which was assigned to the Honorable Maxine M. Chesney.  Plaintiff Levin sought relief on behalf of a putative nationwide class of home equity line of credit ("HELOC") customers, asserting claims for purported breaches of contract and violations of the Truth-in-Lending Act, 15 U.S.C. § 1647 *et. seq.*, its implementing regulation, Regulation Z, 12 C.F.R. § 226.5b, and California state laws based on Citibank's suspension or reduction of customers' HELOC loans.

B.      On September 11, 2009, Mark Winkler brought a similar putative class action against Citibank in the United States District Court for the Southern District of California, Case No. 09-cv-1999-BTM, which was assigned to the Honorable Barry T. Moskowitz.  Plaintiff Winkler sought relief on behalf of a nationwide putative class of HELOC customers, asserting claims for purported breaches of contract and violations of the Truth-in-Lending Act, 15 U.S.C. § 1647 *et. seq.*, its implementing regulation, Regulation Z, 12 C.F.R. § 226.5b, and certain state laws based on Citibank's suspension or reduction of customers' HELOC loans.

C.      On April 14, 2010, Plaintiff Levin filed a Motion to Consolidate Related Cases, Grant Leave to Add Named Plaintiffs, and Appoint Interim Class Co-Lead Counsel (Dkt. 88) which the Court granted on May 18, 2010.  (Dkt. 96).  The Motion sought to consolidate the *Winkler* and *Levin* matters, transfer the *Winkler* matter to this Court, and to add Gary and Marie Cohen as additional named plaintiffs.  On May 18, 2010, the Court granted Plaintiffs' Motion. (Dkt. 97.)

D.      On May 24, 2010, Plaintiffs filed a Second Amended Consolidated Complaint. (Dkt. 97.)  On August 30, 2010, the Court granted in part and denied in part Citibank's Motion to Dismiss Plaintiffs' Second Amended Complaint.  (Dkt. 114.)  Plaintiffs filed their Third Amended Complaint on September 20, 2010 (Dkt. 117) and Citibank filed its Answer on October 14, 2010. (Dkt. 121.)

D.      The Parties have vigorously litigated the issues involved in the cases.  The Parties have briefed several motions, including motions to dismiss that were granted in part and denied in

- 2 -

part, and exchanged informal and formal discovery.  The Parties additionally engaged in preliminary settlement discussions and face-to-face meetings that culminated in a formal mediation before the Honorable Edward Infante (Ret.) on November 9, 2010.  The settlement negotiations centered around Citibank's alleged practices with respect to suspending or reducing a customer's HELOC based on Citibank's claim of Collateral Deterioration of the customer's home.  Through mediation and arms-length negotiations, the Parties reached agreement as to the material terms of a proposed class-wide settlement.  Following agreement as to the basic parameters of a classwide settlement, the parties continued to negotiate over attorneys' fees and class member incentive awards and participated in a further mediation session, via telephone, with Judge Infante on November 2, 2011, which resulted in an agreement as to fees and incentive awards.  The Parties thereafter have reduced their settlement to this Agreement.

E.       Citibank has denied and continues to deny that it committed, threatened or attempted to commit any of the alleged wrongful acts or violations that are alleged in Plaintiffs' pleadings, or that it has engaged in any other wrongdoing.  Citibank contends that there was Collateral Deterioration of the properties securing the HELOCs of customers whose accounts were suspended or reduced; that it complied with the terms of the HELOC agreements; that it complied with the Truth-in-Lending Act; that customers who comprise the putative class have incurred no damages and are not entitled to any relief from Citibank.  Citibank further contends that it has meritorious defenses to Plaintiffs' claims, and that it is prepared to vigorously defend the case on various procedural and substantive grounds.  Nonetheless, taking into account the uncertainty, risks, and distractions inherent in any litigation, Citibank desires to settle this matter.

F.       Plaintiffs believe that the claims asserted in the Actions have merit.  But Plaintiffs and Class Counsel also recognize and acknowledge the risk, uncertainty, expense and delay associated with continued prosecution of the Actions against Citibank through trial and any subsequent appeals.  Plaintiffs have also taken into consideration that Citibank has already implemented various modifications to its policies and procedures for suspending or restricting HELOC Accounts, and that Citibank has reinstated a number of the HELOC Accounts that were previously suspended or reduced, which is a benefit to many Class members.  Therefore, Plaintiffs

- 3 -

and Class Counsel believe that this Agreement is in the best interests of the Class, and that the Released Claims should be fully and finally compromised, settled, and resolved with prejudice pursuant to this Agreement.

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among the Parties, by and through their respective undersigned counsel that, subject to approval of the Court after a hearing or hearings as provided for in this Agreement, in consideration of the benefits flowing to the Parties as set forth herein, that the Actions and the Released Claims shall be finally and fully compromised, settled and released, and the Actions shall be dismissed with prejudice, upon and subject to the terms and conditions of this Agreement.

**1.      DEFINITIONS.**

As used in this Agreement, the following terms have the meanings specified below:

**1.1      "Actions" or "Litigation"** means the complaint filed by David Levin on or about January 26, 2009 against Citibank in the Northern District of California, Case No. 3:09-cv-00350-MMC ("*Levin* matter") , the complaint filed by Mark Winkler on or about September 11, 2009 in the United States District Court for the Southern District of California, Case No. 09-cv-1999-BTM and subsequently transferred to the Northern District of California as Case No. 3:10-cv-00572-MMC and consolidated with the *Levin* matter ("*Winkler* matter"), and all subsequent amendments to the *Levin* and/or *Winkler* matters.

**1.2      "Amended Complaint"** means the Fourth Amended Consolidated Class Action Complaint to be filed solely for the purpose of effectuating this Settlement Agreement.

**1.3      "Approved Claim"** means a Claim Form submitted by a Class Member that is (a) timely and submitted in accordance with the directions on the Claim Form and the provisions of the Agreement; and (b) verified by the Class Member. A claim shall be deemed to have been timely submitted only if it is mailed to the return address specified therein and postmarked or submitted online via the Settlement Website no later than midnight, Pacific Time, on the Claims Deadline.

**1.4      "Award"** means or refers to the amount of the settlement award of one hundred twenty dollars ($120.00)  per Eligible Loan (as defined in Paragraph 1.22 herein), and

- 4 -

which is available to Settlement Class Members with an Eligible Loan on a claims-made basis and based on the eligibility criteria set forth in Paragraph 3.2 below.

**1.5** **"Charged Off"** means a loan in default for which no payment has been made on the account in one hundred eighty (180) or more days.

**1.6** **"Citibank's Counsel"** means Lucia Nale and Debra Bogo-Ernst of Mayer Brown LLP.

**1.7** **"Claimant"** means a Settlement Class Member who timely submits a valid Claim Form.

**1.8** **"Claim Dispute Deadline"** means the deadline thirty (30) days after mailing the Claims Report for Class Counsel to dispute any Claims denied by Defendant as invalid or otherwise ineligible for an Award.

**1.9** **"Claims Administrator"** means Epic Systems, who Citibank will retain to oversee the provision of Notice to the Class Members as set forth in this Agreement, the processing of Requests for Exclusion from and Objections to this Agreement, the processing of Claim Forms submitted by Class Members as set forth in this Agreement and the resulting distribution of Settlement Benefits afforded to approved Claimants.

**1.10** **"Claims Deadline"** means the deadline for mailing the Claim Form, which must be postmarked or submitted online by midnight, Pacific Time, on January 31, 2013.

**1.11** **"Claims Report"** refers to the report that Defendant will email to Class Counsel within forty-five (45) days after the later of the Claims Deadline or the Effective Date, which provides notice of those Claims denied by Defendant as invalid or otherwise ineligible for an Award under the terms of this Agreement together with copies of each claim so denied.

**1.12** **"Claim Form"** means the document as set forth in Paragraph 3.2 and substantially in the form attached hereto as Exhibit C, as approved by the Court. The Claim Form shall be available in paper format and in downloadable form on the settlement website. The Claim Form will require Class Members to provide basic information, including the property address associated with the customer's Citibank HELOC account. The Claim Form will provide certain Class Members who were former Citibank HELOC customers the option to provide certain

5

1 Class Members who were former Citibank HELOC customers the option to provide certain

2 information in order to receive a Settlement Benefit.  The loan that is the subject of the Claim

3 Form must be an Eligible Loan, and the Claim Form will be mailed only to Eligible Loans.  The

4 Claim Form accompanying and comprising part of the Class Notice shall include a section

5 requesting that Class Members provide any updated address information and shall likewise request

6 that they provide notice of any subsequent change in their address, which notice shall be sent, by a

7 time certain, to a P.O. Box to be provided by Citibank.

8    **1.13**    **"Class Definition"** means, for the purposes of settlement only, the Parties

9 agree to the certification the following "Settlement Class" or "Class":  All persons in the United

10 States from January 1, 2008 to January 31, 2012 whose Citibank HELOC Accounts were

11 suspended or reduced based on a claim by Citibank of Collateral Deterioration regarding the value

12 of the property securing the HELOC.  The persons comprising the proposed Settlement Class are

13 set forth on the Class List (as defined below).  Excluded from the proposed Class are any judge

14 presiding over this case and the judge's immediate family members.

15    **1.14**    **"Class Counsel"** means Jay Edelson, Steven Woodrow and Evan Meyers of

16 Edelson McGuire LLC and Jim Patterson of Patterson Law Group.

17    **1.15**    **"Class List"** refers to a list of those borrowers with Citibank HELOC

18 Accounts, as identified by Citibank's computer records, whose HELOCs were suspended or

19 reduced based on Citibank's claim of a Collateral Deterioration during the period January 1, 2008

20 to January 31, 2012.  Defendant shall keep custody of the Class List and the Parties stipulate and

21 agree that the Class List shall be kept and maintained as confidential and may not be used for any

22 purpose other than effectuating this Agreement.  Citibank's counsel shall maintain a copy of the

23 Class List and, upon written request and reasonable notice by Class Counsel, Citibank's counsel

24 shall make the Class List available for Class Counsel's review.

25    **1.16**    **"Class Representatives"** means the named Plaintiffs in the Litigation as set

26 forth in the Amended Complaint, David Levin, Loren S. Siegel, Gary Cohen, Marie Cohen, Mark

27 Winkler, and Jennie Lapointe, whom the Court approves as being Class Representatives for the

28 Settlement Class.

- 6 -

1.17     **"Collateral Deterioration"** means a significant decline in the value of the property or dwelling securing the HELOC.

1.18     **"Complaint"** means the Third Amended Consolidated Class Action Complaint filed on or about September 20, 2010.

1.19     **"Court"** means the United States District Court for the Northern District of California.

1.20     **"Early Closure Release Fee"** means the fee charged to those Citibank customers whose accounts were closed following the suspension or reduction of their Citibank HELOC.

1.21     **"Effective Date"** means the date that is ten (10) days after the last to occur of each and all of the following conditions and events:  (i) This Agreement has been signed by each proposed Class Representative, proposed Class Counsel, Citibank and Citibank's counsel; (ii) Orders have been entered by the Court conditionally certifying the Settlement Class, granting preliminary approval of the settlement and approving the Notice; (iii) The Court-approved Notice has been duly provided as ordered by the Court; (iv) The Court has entered a final Order approving the settlement and this Agreement without material change; (v) The Court has entered a final Order with respect to any Fee Award to Class Counsel and that Order is Final and non-appealable; (vi) The Court has entered a final Order with respect to the Incentive Award to each or any Class Representatives and each and any such Order is Final and non-appealable; and (vii) The Court has entered a final Judgment dismissing the Action with prejudice and that final Judgment has become Final.

1.22     **"Eligible Loan"** means proposed Settlement Class members who closed their Citibank HELOC Accounts following a suspension or reduction of their HELOC Accounts based on Collateral Deterioration and, in connection with that account suspension or reduction, subsequently incurred and paid an early closure release fee to Citibank, as such members are identified on the Class List.  The proposed Settlement Class Members with Eligible Loan shall be eligible, on a "claims made" basis, to receive an Award, in accordance with the terms and criteria set forth in Paragraph 3.2 below.

- 7 -

1.23   **"Fairness Hearing"** means the final approval hearing before the Court where the Parties will request Judgment be entered by the Court approving the Agreement as fair, reasonable and adequate, and ruling on the requests for Fee Award, and the incentive awards to the proposed Class Representatives.

1.24   **"Fee Award"** means the amount of attorneys' fees and reimbursement of costs awarded by the Court to Class Counsel.

1.25   **"Final"** means the later of the following events:  (i) thirty-five (35) days after the final Judgment is entered if no document is timely filed seeking appeal, review, rehearing, reconsideration or any other action regarding that Judgment; or (ii) if any such document is filed, then fourteen (14) days after the date upon which all appellate and/or other proceedings resulting from the document have been finally terminated in such a manner as to permit no further judicial action in this litigation.

1.26   **"HELOC Account"** means a home equity line of credit provided by Citibank and secured by a mortgage on the borrower's primary residence, which was suspended or reduced by Citibank.

1.27   **"HELOC Suspension Policies"** refers to the current policies under which Citibank exercises its right to reduce or suspend customers' HELOCs based on a decline in the value of the underlying property.

1.28   **"Incentive Award"** means the monetary award to each of the Class Representatives as approved by the Court, to compensate them for their efforts and time in connection with pursuing this action on behalf of the Class.

1.29   **"Judgment"** means the order granting final approval to this Settlement Agreement to be entered by the Court at the Fairness Hearing or such other time approving this Agreement substantially in the form of Exhibit G hereto, without modifications that are unacceptable to either party, as fair, adequate and reasonable in accordance with applicable jurisprudence, confirming the certification of the Class, and issuing such other findings and determinations as the Court or the Parties deem necessary and appropriate to effectuate the terms of this Agreement.

- 8 -

1.30     **"Notice" or "Notice Plan"** means the documents disseminated to the persons in the Settlement Class describing this Agreement that shall be provided in the manner described in Paragraph 5 below, and includes a "long form" notice form to be posted on a website administered by the Claims Administrator, as well as summary notice forms sent by U.S. Mail in the manner described in Paragraph 5.  The Parties' proposed forms of which are attached hereto as Exhibits B  and E, and are incorporated herein by reference.  The Notice states that only Eligible Loans will be mailed Claim Forms.

1.31     **"Notice Date"** means no later than forty-five (45) days after the Court grants Preliminary Approval and as soon as reasonably practicable thereafter.

1.32     **"Notice of Intention to Appear and Object"** is the written communication that must be filed with the Court prior to the last day of the Opt-out/Objection Deadline by a member of the Class in order to object to the approval of any portion of this Agreement.  A copy of such Notice of Intention to Appear and Object must also be sent to the Claims Administrator, Class Counsel, and Citibank's Counsel at the time of filing.

1.33     **"Opt-Out/Objection Deadline"** means the date to be set by the Court in this Action for a member of the Class to mail a Request For Exclusion or a Notice of Intention to Appear and Object to the Settlement Administrator and counsel for the parties.  The deadline for filing a Request For Exclusion or a Notice of Intention to Appear and Object shall be no later midnight, Pacific Time, on the date specified in the Class Notice and the Preliminary Approval Order (in the form attached hereto as Exhibit A and to be entered by the Court without material modification), and shall be no later than forty-five (45) days after the Class Notice is mailed and no fewer than two weeks following the filing and posting to the Settlement Website of Class Counsel's petition for any Fee Award.

1.34     **"Payment Deadline"** means the deadline for making Award payments which is one-hundred (100) days after the Effective Date.

1.35     **"Preliminary Approval"** means the Court's certification of the Class solely for settlement purposes, entry of the attached proposed order granting preliminary approval of this Agreement (Ex. A hereto) without material modification (except to the extent agreed to between

- 9 -

the parties), as well as approval of the form and methods of dissemination of the Notice, the Notice Plan, and the Claim Form.

     **1.36**     **"Parties"** means collectively the Plaintiffs and Citibank.

     **1.37**     **"Party"** means any or each of the Plaintiffs or Citibank in the Action.

     **1.38**     **"Person"** means an individual, corporation, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and their spouses, heirs, predecessors, successors, representatives, or assigns.

     **1.39**     **"Plaintiff" or "Plaintiffs"** means David Levin, Loren S. Siegel, Gary Cohen, Marie Cohen, Mark Winkler and Jennie Lapointe.

     **1.40**     **"Released Claims"** mean any and all rights, duties, obligations, claims, actions, causes of action or liabilities, whether arising under local, state or federal law, whether by Constitution, statute, contract, common law or equity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, and including, but not limited to, breach of contract, breach of implied covenant of good faith and fair dealing, violation of California's UCL, Cal. Bus. & Prof. Code § 17200, violation of state or federal consumer protection statutes and violation of the Truth in Lending Act and Regulation Z promulgated thereunder at any time from the beginning of time up to and including the Effective Date of the Settlement Agreement, that relate to or arise out of any of the following in any way: (i) any and all acts, omissions, facts, transactions, occurrences, claims, demands, actions, causes of actions, rights, offsets, liens or liabilities alleged, asserted, or referred to in any pleading or brief filed in the above-referenced lawsuit as a claim asserted on behalf of a putative class; and (ii) Citibank's HELOC suspension, reduction, and/or reinstatement policies, systems, standards and procedures for suspensions, reductions, and/or reinstatements based in whole or in part on Collateral Deterioration.  The release shall also apply to any and all claims of the releasing parties that would be barred by the doctrines of *res judicata* and collateral estoppel had the issues in the case been litigated by each proposed Settlement Class member to a final judgment on the merits, and to any and all past, present, and future claims, administrative or

otherwise, actions, causes of action, rights or liabilities, known or unknown, based on, or arising out of, or in any way relating or pertaining to the facts, events or transactions and/or fees at issue in the lawsuit, including unknown claims.  Citibank will also receive a full and complete general release from each Class Representative for any and all claims related in any way to their HELOC account with Citibank, as set forth in Paragraph 4.3.

**1.41** **"Releasing Parties"** means the Plaintiffs, each on their own behalf and on behalf of each Settlement Class Member who has not opted out, and on behalf of their respective present or past heirs, executors, estates, authorized users, guarantors, administrators, representatives, predecessors, successors, assigns, parents, subsidiaries, associates, affiliates, employers, employees, agents, consultants, insurers, directors, managing directors, officers, partners, principals, members, attorneys, accountants, financial and other advisors, investment bankers, underwriters, lenders, any authorized users of their accounts, and each of their affiliates' present or past heirs, executors, estates, administrators, predecessors, successors, assigns, parents, subsidiaries, associates, affiliates, employers, employees, agents, attorneys, consultants, insurers, directors, managing directors, officers, partners, principals, members, accountants, financial and other advisors, investment bankers, underwriters, lenders and any other representatives of any of these Persons and entities.

**1.42** **"Released Parties"** means Citibank, N.A., Citigroup Inc., and CitiMortgage, Inc. and any and all of their present or past heirs, executors, estates, administrators, predecessors, successors, assigns, parents, divisions, subsidiaries, associates, affiliates, representatives, employees, agents, consultants, insurers, directors, committees, managing directors, officers, partners, principals, members, accountants, financial and other advisors, investment bankers, underwriters, shareholders, lenders, auditors, investment advisors, legal representatives, successors in interest, assigns and Persons, firms, trusts, trustees, corporations, officers, directors, other individuals or entities in which Citibank, N.A., Citigroup Inc., and CitiMortgage, Inc. have a controlling interest or which is related to or affiliated with any of them or any other representatives of any of these Persons and entities including each of their affiliates' present or past heirs, executors, estates, administrators, predecessors, successors, assigns, parents, subsidiaries,

- 11 -

associates, affiliates, employers, employees, agents, consultants, insurers, directors, managing

directors, officers, partners, principals, members, attorneys, accountants, financial and other

advisors, investment bankers, underwriters, shareholders, lenders, auditors, investment advisors,

legal representatives, successors in interest, assigns and Persons, firms, trusts, corporations,

officers, and directors.

1.43    **"Request For Exclusion"** is a written communication by or on behalf of a

Person in the Class stating that he or she wishes to opt out/be excluded from the Class.

1.44    **"Settlement Agreement" or "Agreement"** means this Agreement.

1.45    **"Settlement Administration Expenses"** means the expenses incurred by the

Claims Administrator in disseminating and providing Notice to and handling claims by the Class,

which is to be paid solely by Citibank in addition to amounts to be paid or credited to Class

Members under this Agreement.

1.46    **"Settlement Benefit"** means the benefits a Settlement Class Member may

receive pursuant to this Agreement.

1.47    **"Settlement Class Member"** means a Person who falls within the definition

of the Class as set forth above and who has not submitted a valid Request For Exclusion.

1.48    **"Settlement Website"** means and refers to the Internet Publication notice

described in Paragraph 5.2(a) below, available at www.[url].com which will host the traditional

"Long Form" notice as well as key documents regarding the Settlement including the Settlement

Agreement, Motion for Preliminary Approval, the Order Granting Preliminary Approval, Class

Counsel's Petition for Reasonable Attorneys' Fees.  Former customers who qualify for cash

benefits may submit claim forms via the Settlement Website.

1.49    **"Suspension" or "Account Reduction"** means Citibank's suspension of a

particular HELOC account or accounts from further draws or reduction of the available credit

limit.

1.50    **"Restriction" "Treatment" "Reduction" and "Suspension,"** and their

reasonable variants, shall have the same meaning when referred to HELOC Accounts.

- 12 -

1.51      **"Unknown Claims"** means claims that could have been raised in these Actions, and that the Plaintiffs or any or all other Persons and entities whose claims are being released, or any of them, do not know or suspect to exist, which, if known by him, her or it, might have affected his, her or its decision to accept this agreement to release the Released Parties or the Released Claims or might affect his, her or its decision to agree, object or not to object to the Settlement.  Upon the Effective Date, and solely with respect to the Released Claims, Plaintiffs and all other Persons and entities whose claims are being released shall be deemed to have, and shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of § 1542 of the California Civil Code, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Upon the Effective Date, Plaintiffs and all other Persons and entities whose claims are being released, also shall be deemed to have, and shall have, waived any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, or the law of any jurisdiction outside of the United States, which is similar, comparable or equivalent to § 1542 of the California Civil Code.  Plaintiffs acknowledge that they may discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of the Released Claims and that the law applicable to such claims may change, but that it is their intention to finally and forever to settle and release the Released Claims, notwithstanding any Unknown Claims they may have, as that term is defined in this Paragraph.

**2.      REQUIRED EVENTS AND COOPERATION BY THE PARTIES**

2.1      *Preliminary Approval*:  Promptly, but no later than thirty (30) days, following the full execution of this Agreement, the Parties shall request that the Court in the Action enter a Preliminary Approval Order, in the form attached as Exhibit A hereto, specifically including provisions that:

(a)      Preliminarily approve the Settlement reflected herein;

(b)      Conditionally certify the Settlement Class (for settlement purposes only)

- 13 -

and appoint the Plaintiffs as Class Representatives and appoint Class Counsel as counsel for the Settlement Class;

(c)     Approve the form of notice to be provided to the Settlement Class in the form attached hereto as Exhibits B and E, and find that the form and manner of notice set forth in this Agreement constitutes the best notice practicable under the circumstances, is due and sufficient notice to the Settlement Class, and fully satisfies the requirements of due process and of Rule 23 of the Federal Rules of Civil Procedure;

(d)     Direct that Notice be provided to the Settlement Class, in accordance with the terms of the Settlement, as set forth in Paragraph 5 below;

(e)     Establish a procedure, as set forth in this Agreement, for the Class to object to the Settlement or exclude themselves from the Settlement Class and set the Opt-Out/Objection Deadline;

(f)     Pending final determination of whether the Settlement should be approved, bar the Class, directly, on a representative basis or in any other capacity, from commencing or prosecuting against any of the Released Parties any action or proceeding in any court, arbitration forum or tribunal asserting any of the Released Claims;

(g)     Pending final determination of whether the Settlement should be approved, stay all proceedings in the Action except those related to the effectuation of the Settlement; and

(h)     Schedule the Fairness Hearing for final approval of the Settlement (which final approval hearing shall take place after the Opt-Out/Objection Deadline and no later than one hundred and thirty-five (135) days from Citibank's Notice under the Class Action Fairness Act, as described in Paragraph 5.2(c) herein).

**2.2**     *Final Approval:*  Following issuance of the Preliminary Approval Order, the provision of Class Notice as set forth herein and the Opt-Out/Objection Deadline, Class Counsel shall promptly request from the Court entry of a "Final Approval Order" granting final approval and entering Judgment in the forms attached hereto as Exhibits F and G, the contents and  terms of which are incorporated herein by reference.  This Agreement is expressly contingent upon the entry of said order, in the form attached as Exhibit F hereto, specifically including provisions that

- 14 -

by its terms shall:

        (a)     Enter the Judgment contemplated by this Agreement finding that, among other things, each Plaintiff and each Settlement Class Member has forever released and discharged each Released Party from liability for any and all Released Claims and permanently enjoin the Plaintiffs and all Settlement Class Members from asserting, commencing, prosecuting or continuing any of the Released Claims against Citibank or any of the Released Parties;

        (b)     Approve the Settlement and find that this Agreement is fair, reasonable and adequate and in the best interests of the Settlement Class;

        (c)     Direct the Parties and their counsel to implement and consummate the Agreement according to its terms and provisions;

        (d)     Find that the notice and the notice methodology implemented pursuant to the Agreement constituted the best notice practicable under the circumstances and was reasonable, due, adequate and sufficient notice to all persons entitled to receive notice, and met all applicable requirements of the Federal Rules of Civil Procedure, Due Process, and the rules of the Court;

        (e)     Find that Class Counsel and the Class Representatives adequately represented the Class for purposes of entering into and implementing the Agreement;

        (f)     Approve the agreed upon Fee Award to Class Counsel and Incentive Awards to the Class Representatives;

        (g)     Dismiss the Action with prejudice, subject to the Court's retaining jurisdiction over the enforcement of the terms of this Agreement; and

        (h)     Without affecting the finality of the Judgment for purposes of appeal, the Court shall retain jurisdiction as to all matters relating to administration, consummation, enforcement and interpretation of the Agreement and the Judgment and for any other necessary purpose.

        (i)     Entry of the Final Approval Order shall not be conditioned or delayed by the Court's failure to approve the Fee Award to Class Counsel or Incentive Awards to the Class Representatives.

        **2.3**    *Filing of Complaint*:  The Parties agree that at the time of Preliminary Approval,

1  Plaintiffs shall seek leave of Court to file a Fourth Amended Consolidated Class Action Complaint

2  substantially in the form attached hereto as Ex. H, solely to effectuate the terms of this Settlement

3  Agreement.

4      **2.4**      *Cooperation*:  The Parties shall, in good faith, cooperate, assist and undertake

5  all reasonable actions and steps in order to accomplish these required events on the schedule set by

6  the Court.

7      **2.5**      *Certification of Class*:  For settlement purposes only, and notwithstanding and

8  without prejudice to Citibank's positions and arguments in the Litigation, Citibank and the Class

9  Representatives stipulate to the certification of the Class.  This Agreement is expressly contingent

10 upon the Court certifying the Class, or some other class or classes agreeable to both Parties for the

11 purposes of settlement only.  Should the Effective Date not occur, the order certifying the Class

12 will be null and void, the Parties and the case shall be restored to the status quo ante, and the

13 Parties may not cite or otherwise use this Agreement for any purpose related to class certification

14 in this Litigation or any other action.

15 **3.      SETTLEMENT BENEFITS**

16     **3.1**      *Relief Available to Settlement Class Members*.

17          a.      Notice of Right to Request Reinstatement.  Citibank agrees to send a Notice

18 of Right to Request Reinstatement, in a form substantially similar to the one attached hereto as

19 Exhibit D, to all current proposed Settlement Class members explaining the procedure for

20 appealing HELOC suspension or reduction decisions made by Citibank based on Collateral

21 Deterioration.  This Notice of Right to Request Reinstatement would be a part of—or inserted

22 with—the Notice defined in Paragraph 1.30 above.

23          b.      Changes in Policies.  Citibank will commit for eighteen (18) months

24 following the Effective Date to not change its HELOC suspension and reduction policies for the

25 suspensions and reductions of HELOC Accounts based on claims of Collateral Deterioration in

26 any material manner that would be less beneficial to its borrowers except that, for any prospective

27 relief agreed to in Paragraphs 3.1(a)-(d) of this Agreement, Citibank will maintain the full ability

28 to modify its policies and practices based on amendments or clarifications of applicable law as

1 enacted or interpreted by the courts, Congress, or federal regulators or as necessary for Citibank to

2 comply with any such amendment, interpretation or clarification.

3         c.    Enhanced Suspension Notices.  Citibank further agrees that, so long as it is

4 feasible and/or not cost-prohibitive or unduly burdensome, as reasonably determined by Citibank,

5 for HELOC suspensions and reductions based on Collateral Deterioration and for the eighteen-

6 month (18) period commencing thirty (30) days after the Effective Date of the Settlement, to

7 include in its HELOC suspension and reduction notices for suspensions and reductions based on

8 Collateral Deterioration: (1) the present value of the property as calculated by Citibank in

9 connection with such line action; and (2) the appraised value required to be eligible to seek

10 account reinstatement.  In the event that Citibank determines that it is not feasible, or that it is

11 cost-prohibitive or unduly burdensome, to include such information in its suspension and

12 reduction notices, the notices shall state that the customers may request such information by

13 writing to Citibank at the address provided for in the suspension and/or reduction notice.  Citibank

14 will also commit for that time period to having its suspension and reduction notices based on

15 Collateral Deterioration advise customers that they may seek reinstatement if the customers

16 believe: (i) the value of their home has not significantly declined by seeking a valuation from

17 Citibank's approved property appraisal vendor for review appraisals for HELOCs; and/or (ii) they

18 have significantly paid down their first mortgage balance by providing a copy of their most recent

19 first mortgage statement showing their current first mortgage balance.  A customer's request for

20 reinstatement, including purchasing an appraisal and/or submitting information related to the first

21 mortgage balance, does not guarantee that Citibank will reinstate the line of credit.  The borrower

22 would still need to meet any and all other applicable criteria to qualify for reinstatement.

23         d.    Appraisals.  Citibank will work with LSI, its approved property appraisal

24 vendor for review appraisals with respect to the HELOC appeals process, or any other property

25 appraisal vendor it chooses to retain, to generally confirm that appraisal fees charged by LSI or

26 such other vendor to Citibank customers are reasonable based on industry-standard factors.

27 Nothing herein shall be construed as creating an obligation on Citibank to independently monitor

28 or negotiate the appraisal fees charged by LSI or any other third-party vendors to any particular

- 17 -

1   customer, nor create any obligation on Citibank to ensure that the amount of the appraisal fees

2   assessed by any such vendor is the lowest fee available by comparison to other appraisal service

3   providers.

4       **3.2**   *Award Payments.*

5       Settlement Class Members with Eligible Loans will be entitled, on a claims made basis, to

6   receive an $120 Award, provided they follow the procedures set forth in the Notice and the Claim

7   Form for such payment and qualify for such an Award payment in accordance with the criteria set

8   forth in this Agreement.  The terms of the Notice and the content and terms of the Claim Form are

9   to be in the form of Exhibits B, E, and C hereto.  Each cash payment issued to a Settlement Class

10  Member with an Eligible Loan will be issued via check and will state on the face of the check that

11  the check will expire and become null and void, and the Settlement Class Member shall have

12  forfeited his or her claim and right to payment, unless cashed within ninety (90) days of the date of

13  issuance.  There will be a thirty (30) day grace period for Settlement Class Members to cash any

14  checks following expiration of the original  ninety (90) day time period to do so.  To the extent

15  that a check issued to a Settlement Class Member is not cashed within 120 days of the date of

16  issuance, such funds thereafter shall revert to Citibank.

17      (a)    Citibank will make Awards available to Settlement Class Members with

18  Eligible Loans on the following claims-made basis.  To be eligible to obtain an Award, Settlement

19  Class Members: (i) must have an Eligible Loan; (ii) must not opt-out of the settlement, (iii) must

20  not be deemed ineligible under any other provision of this Agreement; (iv) must fully complete

21  and timely submit an Approved Claim by the Claims Deadline (as defined above in Paragraphs 1.3

22  and 1.10) to the address specified in the Claim Form attached hereto as Exhibit C and incorporated

23  herein by reference, and (v) must meet such other criteria as set forth in the Claim Form and/or

24  this Agreement for submission of a claim.

25      (b)    Even if a Claim Form is otherwise an Approved Claim, any Claim Form

26  that is materially false or that is not fully completed as provided herein shall be deemed invalid

27  and shall not be eligible for compensation under this Agreement.  In addition, a claim shall be

28  deemed invalid if not signed by at least one living borrower on the loan.  Moreover, if any living

- 18 -

1  borrower on the loan submits a Request for Exclusion, even if another living borrower on the same

2  loan submits a claim, the claim is deemed invalid and ineligible for an Award.  In the event that all

3  borrowers to a given loan are deceased, then such account shall not be eligible for an Award and

4  any claim submitted on such an account shall be deemed invalid.

5  (c)  Any Claim Form that is not submitted by the Claims Deadline or that is sent

6  to the wrong location shall be deemed invalid and shall not be eligible for an Award.

7  (d)  No claims may be submitted as a group, aggregate or class of persons, or by

8  an outside firm or entity.  Any such claim shall be deemed invalid and ineligible for an Award.

9  (e)  Charged Off Eligible Loans.  Awards to Settlement Class Members who

10  have, or who once had but no longer have, an existing Eligible Loan for which past due amounts

11  have been previously Charged Off, or were otherwise not paid will be governed as follows: (i) If

12  the Charged Off amount exceeds the Award amount contemplated by this Agreement, the

13  Settlement Class Member is not eligible to receive an Award; and (ii) If the Charged Off amount

14  is less than the Award amount, Citibank may, at its discretion, pay the Settlement Class Member

15  by check or by a credit of the Settlement Class Member's Award against amounts due or

16  previously charged off.

17  (f)  One Claim Per Eligible Loan.  Only one valid claim will be honored per

18  Eligible Loan.  No interest shall accrue at any time on the Awards made available through the

19  Settlement.

20  (g)  Form Of Awards.  Awards to Settlement Class Members will be made by

21  check, will be mailed, and only one check per account will be issued.  There will be no re-mailing

22  of returned Awards.  Checks shall be mailed to the borrower(s) submitting the Claim to the

23  address of record for such borrowers on Citibank's account records, or to such updated address as

24  the borrower(s) may provide in accordance with the provisions of the Class Notice and Claim

25  Form.  Checks shall be made payable to the borrower submitting the Claim.

26  (h)  Claim Form Requirements.  The Claim Form must be signed and fully

27  completed (including providing all information requested in the Claim Form) by at least one

28  Settlement Class Member on each Eligible Loan.  However, if any living borrower on the loan

- 19 -

1  submits a Request for Exclusion, even if another living borrower on the same loan submits a

2  claim, the claim is deemed invalid and ineligible for an Award.  The loan that is the subject of the

3  Claim Form must be an Eligible Loan.  The Claim Form accompanying and comprising part of the

4  Class Notice shall include a section requesting that Class Members provide any updated address

5  information and shall likewise request that they provide notice of any subsequent change in their

6  address, which notice shall be sent, by a time certain, to a P.O. Box to be provided by Citibank.

7         (i)    <u>Verification of Claims</u>.  Citibank, at its discretion shall have the right (but

8  not the obligation) to verify the Claim Forms.  Within forty-five (45) days after the later of the

9  Claims Deadline or the Effective Date, Citibank will provide to Class Counsel the Claims Report,

10  identifying those claims denied as invalid under the terms of this Settlement Agreement together

11  with the Claim Forms so denied.  All Proof of Claims not so denied in the Claims Report shall be

12  deemed admitted.  With regard to denied claims, Class Counsel must dispute any denied claims by

13  the Claim Dispute Deadline.  Claims that are not timely disputed will remain denied and be

14  deemed invalid.  The Parties will attempt in good faith to resolve any disputed denied claims and,

15  should they fail to resolve any dispute, either Party may submit the dispute to the Court for

16  summary and non-appealable resolution within forty-five (45) days of receiving the Claims

17  Report; otherwise, the claims will remain denied and be deemed invalid.  All Claims timely

18  submitted to the Court for resolution and determined to be valid by the Court shall, provided the

19  Effective Date occurs, be deemed eligible for an Award.

20         (j)    <u>Award Payment Deadline</u>.  Award payments shall be made to Settlement

21  Class Members eligible for an Award under the Settlement (other than those Settlement Class

22  Members for which there is a disagreement regarding validity of their Claim and for which

23  judicial resolution of the dispute has been sought) by the Payment Deadline.  Awards on disputed

24  claims determined to be valid by the Court shall, provided the Effective Date has occurred, be

25  made thirty (30) days after the later of the date on which Citibank receives notice of the Court's

26  resolution of the disputed claim or the Payment Deadline.

27         (k)    <u>Third Party Claims.</u>  In the event a third party, such as a bankruptcy trustee,

28  has a claim against any settlement Award made to a Settlement Class Member or a Plaintiff, it is

1  the responsibility of the Settlement Class Member or the Plaintiff to transmit the funds to such

2  third party and Citibank shall have no obligations or liability relative thereto.

3  **4.    THE RELEASE**

4        **4.1**        The obligations incurred pursuant to this Agreement shall be a full and final

5  disposition of the Actions and any and all Released Claims as against all Released Parties.

6        **4.2**        As of the Effective Date of this Agreement, each of the Releasing Parties

7  acknowledge full satisfaction of, and fully, finally and forever settles with, releases and discharges

8  the Released Parties of and from all Released Claims. Subject to Court approval of this

9  Agreement, all Settlement Class Members who do not opt out shall be bound by this Agreement

10 and all of their claims shall be dismissed with prejudice and released even if they never received

11 personal notice of the Action or its settlement or submitted a Claim Form. The releases contained

12 in this Paragraph 4 shall apply to and bind all members of the Settlement Class who do not opt-

13 out, including but not limited to those Settlement Class Members whose Class Notices are

14 returned undeliverable, those who do not negotiate Awards, if any, sent to them, and/or those for

15 whom no current address is provided to Defendant.

16       **4.3**        For purposes of the Settlement and with reference specifically to the proposed

17 Class Representatives, "Released Claims" further specifically extends to and includes any and all

18 claims, actions, causes of action or liabilities, whether arising under local, state, or federal law,

19 whether by Constitution, statute, contract, common law or equity, whether known or unknown,

20 suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent,

21 liquidated or unliquidated, that relate to or arise out of in any way, to the loans at issue in the

22 Action, including but not limited to the origination, servicing, payoff, and/or release of the loans at

23 issue or any other action or payment in any way related thereto or in any way arising therefrom.

24       **4.4**        The proposed Class Representatives and each Settlement Class Member

25 understand and acknowledge the significance of these waivers of California Civil Code Section

26 1542, Section 20-7-11 of the South Dakota Codified Laws and/or of any other applicable law

27 relating to limitations on releases.  In connection with such waivers and relinquishment, the

28 proposed Class Representatives and each Settlement Class Member acknowledge that they are

- 21 -

aware that they may hereafter discover facts in addition to, or different from, those facts which they now know or believe to be true with respect to the subject matter of the settlement, but that it is their intention to release fully, finally and forever all Released Claims, and in furtherance of such intention, the release of the Released Claims will be and remain in effect notwithstanding the discovery or existence of any such additional or different facts.

4.5     Except to the extent released by the Settlement Agreement, nothing contained within this Paragraph 4 or the referenced definitions therein shall otherwise amend or modify the rights or obligations of any party as set forth in the HELOC agreements currently or formerly existing between the parties.

4.6     Upon the Effective Date, the proposed Class Representatives, and every Settlement Class Member, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished and discharged all Released Claims against the Released Parties.

5.     NOTICE

5.1     Following  entry of the Order granting Preliminary Approval of this Agreement, Citibank shall give Notice or cause Notice to be given to the proposed Settlement Class Members, as such members are identified on the Class List.  The Notice shall be effectuated pursuant to the Notice plan described below.

5.2     The Notice plan shall include:

(a)     Internet Publication:  Within fourteen days of entry of the Order granting Preliminary Approval of the Agreement, the Claims Administrator shall establish and maintain a settlement website with links on the home page to only the Complaint, the Settlement Agreement, and the Preliminary Approval Order at a domain name to be mutually agreed upon by the Parties. On the Notice Date, a link to the traditional "long form" notice shall be added to the settlement website substantially in the form attached as Exhibit E.  Notice by Internet publication, which link shall be added on the Notice Date, shall include the ability of Settlement Class Members who fit the criteria set forth in Paragraph 3.2 above to download and submit Claim Forms via the settlement website.  Plaintiffs' anticipated Motion for Approval of Attorney Fees and Incentive

- 22 -

Awards shall also be posted on the website no later than 14 days prior to the Opt-out/Objection deadline set by the Court. No other documents shall be included on the website without the Court's approval.  The website shall not include the names, logos, legends or any other information of or attributable to Citibank.  The website shall remain in place until 120 days after the Effective Date.

(b)      Direct Notice:  On or before the Notice Date, Citibank shall cause Notice, substantially in the form of Exhibit B hereto, to be sent to the Class via U.S. Mail to the last known mailing address of record on Citibank's account records, which addresses are to be updated by the national change of address resources offered by the United States Postal Service.  The Direct Notice mailing will include the Notice of Right to Request Reinstatement discussed in Paragraph 3.1(a) above as well as Claim Forms for Settlement Class Members who fit the criteria set forth in Paragraph 3.2 above.  At Citibank's discretion, the Direct Notice to current customers may be provided through a billing statement insert, stand alone direct mail notice, or a combination of the two.  Citibank shall mail direct notice to former customers. Citibank shall have no obligation to re-mail any returned mail or attempt to obtain forwarding addresses for any returned mail.

(c)      Notice under Class Action Fairness Act.  To the extent applicable, Citibank shall cause notice of the Agreement, together with all required documents, to be sent to the appropriate federal and/or state governmental authorities in accordance with the Class Action Fairness Act.

**5.3**      No later than fourteen (14) days before the Final Fairness Hearing, Citibank and/or the Claims Administrator will provide affidavits to Class Counsel verifying that Citibank caused Notice to be sent to the Settlement Class Members in accordance with this Agreement, as approved by the Court.

## 6.      OPT-OUTS AND OBJECTIONS

**6.1**      Any Settlement Class Member may request to be excluded from the Class at any time before the Opt-Out/Objection Deadline, by complying with the procedures for doing so as set forth in the Court-approved Notice.  In order to exercise the right to opt-out and be excluded

from the Class, the Class member seeking to do so must complete and return a Request For Exclusion by the Opt-Out/Objection Deadline to the Claims Administrator. Requests for Exclusion filed or post-marked or otherwise delivered after the Opt-Out/Objection Deadline will be considered invalid and of no effect, and the Class member who untimely submits a Request for Exclusion will remain a Settlement Class Member and will be bound by any Orders entered by the Court (including a Judgment approving the Agreement and implementing the Release contemplated thereby). All Settlement Class Members (except for customers who submit a valid request for exclusion) will be bound by this Agreement and the Judgment, including the Release herein contained. Any Class member who timely and properly submits a Request for Exclusion shall not: (i) be bound by any orders or Judgment entered in this Litigation nor by the Release herein contained; (ii) be entitled to any Settlement Benefit under this Agreement; (iii) gain any rights by virtue of this Agreement; and (iv) be entitled to object to any aspect of this Agreement, or this Litigation. Each Person requesting exclusion from the Class must personally sign his or her own individual Request For Exclusion. No Person may opt-out from the Settlement Class any other person or be opted-out by any other person, and no Person shall be deemed opted-out of the Settlement Class through any purported "mass" or "class" opt-outs.

**6.2**         Any Settlement Class Member who intends to object to this Agreement must file with the Court by the Opt-Out/Objection Deadline, either *pro se* or through counsel hired at the Settlement Class Member's own expense, a Notice of Intent to Appear and Object that includes his/her personal signature, his or her full name and address, and all arguments, citations, and evidence supporting the objection, states that he or she is a Settlement Class Member, and provides a statement whether the objector intends to appear at the Fairness Hearing, either with or without counsel. A copy of such appearance and Notice of Intention to Appear and Object must also be sent to the Claims Administrator, Class Counsel, and Citibank's Counsel at the time of filing. Objections must be filed and postmarked by the Opt-Out/Objection Deadline. No Settlement Class Member shall be heard and no papers, briefs or pleadings submitted by such Settlement Class Member shall be received and considered by the Court unless the Court receives the Settlement Class Member's properly completed and signed statement of objection and Notice

- 24 -

of Intent to Appear and Object by the Opt-Out/Objection Deadline.  Any Settlement Class Member who fails to timely or properly submit his or her Notice of Intent to Appear and Object shall be deemed to have waived his or her objections and be forever barred from making any such objections in these Actions, any appeal or in any other action or proceeding.

**6.3**     In the event that the number of class members submitting a valid request for exclusion exceeds two hundred (200), Citibank shall have the option of terminating this Settlement Agreement, but shall not be obligated to do so.  Any decision by Citibank to terminate the settlement based upon this provision shall be communicated to Class Counsel, in writing, within twenty (20) days following the Opt-Out/Objection Deadline.  In the event that Citibank exercises this right, the settlement shall become null and void for all purposes, the Parties and the case shall be returned to the status quo ante, and neither this Settlement Agreement nor the Parties' willingness to enter into the settlement shall be used or referred to for any purpose.

**7.     TERMINATION OF AGREEMENT**

**7.1**     Plaintiffs, on behalf of the Class, or Citibank, shall have the right to terminate this Agreement by providing written notice of their election to do so ("Termination Notice") to all other Parties hereto within thirty (30) days of:  (i) the Court's decision to decline to enter an Order granting Preliminary Approval in any material respect; (ii) the Court's decision to refuse to approve this Agreement; (iii) the Court's decision to decline to enter the Judgment in any respect; or (iv) the date upon which the Judgment is modified or reversed in any material respect by the 9th Circuit Court of Appeals or the United States Supreme Court.

**8.     CLASS COUNSEL'S ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES; INCENTIVE AWARD.**

**8.1**     Citibank has agreed to pay Class Counsel, subject to Court approval, an amount up to $1,214,000.00 in attorneys' fees and reimbursement of costs.  Citibank will not object to or otherwise challenge Class Counsel's application for reasonable attorneys' fees and for reimbursement of costs and other expenses if limited to the above amount.  Class Counsel has, in turn, agreed not to seek more than above amount from the Court.

- 25 -

**8.2**        Class Counsel must submit a petition for a Fee Award, consistent with the terms of this Agreement, fourteen (14) days prior to the Request for Opt Out/Objection Deadline.

**8.3**        Citibank shall pay (by wire) to Class Counsel the Fee Award approved by the Court not exceeding the total amount of $1,214,000.00 within thirty (30) days after the later of the Effective Date of this Agreement or after any order on the Fee Award is final and non-appealable.

**8.4**        In addition to any award under the Agreement, and in recognition of their efforts on behalf of the Class, David Levin, Loren S. Siegel, Gary Cohen, Marie Cohen, Mark Winkler and Jennie Lapointe shall, subject to Court approval, receive an Incentive Award of the sum of $36,000.00 collectively to be divided in six (6) equal parts ($6,000 each) to the Class Representatives David Levin, Loren S. Siegel, Gary Cohen, Marie Cohen, Mark Winkler, and Jennie Lapointe as appropriate compensation for their time and effort serving as the class representatives in this Litigation.  Citibank will not object to or otherwise challenge any request to the Court for such amount.  Class Counsel has, in turn, agreed not to seek more than above amount from the Court on behalf of the Class Representatives.  Class Counsel must submit any motion to approve the Incentive Award(s) no later than fourteen (14) days prior to the date set for the Opt Out/Objection Deadline.  Citibank shall pay such amounts by check within thirty (30) days of the Effective Date, to be paid to each Class Representative, in care of Class Counsel.

**9.**        **CONDITIONS OF SETTLEMENT, EFFECT OF DISAPPROVAL, CANCELLATION OR TERMINATION.**

**9.1**        If the Court does not approve this Agreement, or the Agreement is terminated or fails to become effective in accordance with its terms, this Agreement shall be terminated, unless Plaintiff, Citibank, Class Counsel, and Citibank's Counsel have full knowledge of such defect(s) and with such knowledge mutually agree in writing to proceed with the Agreement.  If any of the Parties are in material breach of the terms of this Agreement, any of the opposing Parties, provided that they are in substantial compliance with the terms of this Agreement, may terminate this Agreement on notice to all of the Parties.

**9.2**        If this Agreement is terminated or fails to become Final for any of the reasons set forth above, the Parties shall be restored to their respective positions in their respective Actions

- 26 -

as of the date of signing this Agreement.  In such event, the Judgment granted by the Court in accordance with the terms of this Agreement shall be treated as vacated, *nunc pro tunc*.

    **9.3**      Notwithstanding anything herein, the Court's failure to approve, in whole or in part, the request for a Fee Award to Class Counsel set forth in Paragraph 8.1 or the request for Incentive Awards to the Class Representatives set forth in Paragraph 8.4 above shall not prevent the Agreement from becoming effective, nor shall it be grounds for termination.  In the event the Court declines or reduces any request for a Fee Award or an Incentive Award, this Agreement shall otherwise remain valid and enforceable.

**10.**    **STAY**

    **10.1**      All proceedings in the Actions will be stayed following preliminary approval of the settlement, except as may be necessary to implement the settlement or comply with the terms of the settlement.  Pending determination of whether the settlement should be granted final approval, the Parties agree not to pursue in the Action any claims or defenses otherwise available to them in the Action, and no Settlement Class Member, either directly, on a representative basis or in any other capacity, will commence or prosecute against any of the Released Persons any action or proceeding asserting any of the Released Claims.  The parties' proposed form of Preliminary Approval Order contains an injunction provision enjoining the commencement or prosecution of Released Claims by Settlement Class Members or persons purporting to act on their behalf pending final approval of the settlement.  The settlement is conditioned upon the entry of such an injunction.

**11.**    **NO PUBLICITY BEYOND NOTICE PROCEDURES**

    **11.1**      Except as required by law or as agreed upon in writing by the Parties, Class Counsel and/or Plaintiffs will not issue press releases or make other public statements regarding the settlement unless Defendant agrees to such press releases or public statements in advance. Class Counsel, the Plaintiffs and/or Settlement Class Members will make no statements of any kind to any third party regarding the settlement prior to applying for preliminary approval.  This Paragraph 11 will not prohibit Class Counsel from communicating with any person in the Settlement Class regarding the Action or the settlement; provided, however, that Class Counsel

- 27 -

must comply with all confidentiality agreements in communicating with such persons and any Protective Order in the Action, and will not disclose information that is not a part of the public record.

**12.     CONFIDENTIALITY**

**12.1**     Any and all drafts of this Agreement will remain confidential and will not be disclosed or duplicated.

**12.2**     The Parties agree that all information obtained from or provided by Defendant in connection with the parties' settlement discussions and/or this Agreement is confidential, shall not be disclosed to third parties, and shall be used only for purposes of effectuating this Agreement and proposed settlement and no other purpose.  Provided the Effective Date has occurred, all written information or documents, confidential or otherwise, provided by or obtained from Defendant in connection with this Action shall be returned by Plaintiffs to Defendant or destroyed within thirty-five (35) days after Defendant's performance of all obligations under the Settlement and the Plaintiffs shall retain no copies thereof.

**12.3**     In the event that the settlement is not approved as presented, Defendant withdraws from settlement or the Effective Date does not occur, neither this Agreement nor any drafts of this Agreement shall be used for any purpose and shall remain confidential.

**13.     DISMISSAL WITH PREJUDICE**

**13.1**     Upon Final Approval, this Action shall be dismissed with prejudice as to the Plaintiffs and the Settlement Class.

**14.     MISCELLANEOUS PROVISIONS**

**14.1**     The Parties: (a) acknowledge that it is their intent to consummate this Agreement; and (b) agree, subject to their legal obligations, to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Agreement and to exercise their reasonable best efforts to accomplish the foregoing terms and conditions of this Agreement.

**14.2**     The Parties intend this Agreement to be a final and complete resolution of all disputes between them with respect to the Released Claims by Plaintiffs and the Settlement Class

- 28 -

1  Members, and each or any of them, on the one hand, against the Released Parties, and each or any

2  of them, on the other hand.

3          **14.3**          Whether or not the Effective Date occurs or this Agreement is terminated,

4  neither this Agreement, nor any act performed or document executed pursuant to or in furtherance

5  thereof:

6                    (a)   Is, may be deemed, or shall be used, offered or received against the Released

7  Parties, or each or any of them, as an admission, concession or evidence of, the validity of any

8  Released Claims, the truth of any fact alleged by the Plaintiffs, the deficiency of any defense that

9  has been or could have been asserted in the Litigation, or of any alleged wrongdoing, liability,

10 negligence, or fault of the Released Parties, or any of them;

11                   (b)   Is, may be deemed, or shall be used, offered or received against Citibank, as

12 an admission, concession or evidence of, any fault, misrepresentation or omission with respect to

13 any statement or written document approved or made by the Released Parties;

14                   (c)   Is, may be deemed, or shall be used, offered or received against Plaintiffs or

15 the Class, or each or any of them, as an admission, concession or evidence of, the infirmity or

16 strength of any claims raised in this case, the truth or falsity of any fact alleged by Citibank, or the

17 availability or lack of availability of meritorious defenses to the claims raised in the Litigation;

18                   (d)   Is, may be deemed, or shall be used, offered or received against the Released

19 Parties, or each or any of them, as an admission or concession with respect to any liability,

20 negligence, fault or wrongdoing as against any Parties, in any civil, criminal or administrative

21 proceeding in any court, administrative agency or other tribunal.  However, the Agreement, and

22 any acts performed and/or documents executed in furtherance of or pursuant to this Agreement

23 may be used in any proceedings as may be necessary to effectuate the provisions of this

24 Agreement.  If this Agreement is approved by the Court, any Party or any of the Released Parties

25 may file this Agreement and/or the Judgment in any action that may be brought against such Party

26 or Parties in order to support a defense or counterclaim based on principles of *res judicata*,

27 collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of

28 claim preclusion or issue preclusion or similar defense or counterclaim in these Actions;

- 29 -

        (e)   Is, may be deemed, or shall be construed against Plaintiffs and the Settlement Class, or each or any of them, or against the Released Parties, or each or any of them, as an admission or concession that the consideration to be given hereunder represents an amount equal to, less than or greater than that amount that could have or would have been recovered after trial; and

        (f)   Is, may be deemed, or shall be construed as or received in evidence as an admission or concession against Plaintiffs and the Class, or each and any of them, or against the Released Parties, or each or any of them, that any of Plaintiffs' claims are with or without merit or that damages recoverable in the Actions would have exceeded or would have been less than any particular amount.

**14.4**   The headings used herein are used for the purpose of convenience only and are not meant to have legal effect.

**14.5**   The waiver by one Party of any breach of this Agreement by any other Party shall not be deemed as a waiver of any other prior or subsequent breaches of this Agreement.

**14.6**   All terms and conditions of the loan documents for all Settlement Class Members with respect to all existing accounts with Citibank will remain valid, binding and enforceable following the conclusion of any settlement.  Citibank reserves all of its rights with respect to Settlement Class Members in connection with all claims it may have with regard to its HELOC loan.

**14.7**   The Plaintiffs and Class Counsel represent and warrant that they are not aware of any claims or potential claims by anyone against any of the Released Parties relating to the Released Claims, other than the Released Claims.  It is the intention of all Parties and attorneys signing this Agreement that any Released Claims shall be forever released and discharged.

**14.8**   All of the Exhibits to this Agreement are material and integral parts thereof and are fully incorporated herein by this reference.

**14.9**   This Agreement and its Exhibits set forth the entire agreement and understanding of the Parties with respect to the matters set forth herein, and supersede all prior negotiations, agreements, arrangements and undertakings with respect to the matters set forth

- 30 -

herein.  No representations, warranties or inducements have been made to any Party concerning this Agreement or its Exhibits other than the representations, warranties and covenants contained and memorialized in such documents.  This Agreement may be amended or modified only by a written instrument signed by or on behalf of all the Parties or their respective successors-in-interest.

14.10    Except as otherwise provided herein, each Party shall bear its own costs.

14.11    Each counsel or other Person executing this Agreement, any of its Exhibits, or any related settlement documents on behalf of any party hereto hereby warrants and represents that such Person has the full authority to do so, that they have the authority to take appropriate action required or permitted to be taken pursuant to the Agreement to effectuate its terms, and that none of their claims or rights under this Settlement Agreement have been assigned to any other person.

14.12    This Agreement may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument provided that counsel for the Parties to this Agreement all exchange original signed counterparts.  A complete set of original executed counterparts shall be filed with the Court upon request.

14.13    This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties hereto and the Released Parties.

14.14    The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of this Agreement, and all Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing this Agreement.

14.15    This Agreement and the Exhibits hereto shall be considered to have been negotiated, executed, delivered, and wholly performed in the State of California, and the rights and obligations of the Parties to this Agreement shall be construed and enforced in accordance with and governed by, the internal, substantive laws of the State of California without giving effect to that State's choice of law principles.

14.16    This Agreement and the Exhibits thereto are deemed to have been prepared by counsel for all Parties, as a result of negotiations among the Parties with the assistance of a neutral

- 31 -

mediator.  Whereas all Parties have contributed substantially and materially to the preparation of this Agreement, it shall not be construed more strictly against one Party than another.

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed individually or by their duly authorized attorneys.

Dated: July ___, 2012        By:_____

Jay Edelson
Edelson McGuire LLC
350 North LaSalle, Suite 1300
Chicago, IL 60654

Counsel for Plaintiffs and the Putative Class

Dated: July___, 2012         By:_____

James Patterson
Patterson Law Group
402 West Broadway, 29th Fl.
San Diego, CA 92101

Counsel for Plaintiffs and the Putative Classes

Dated:  July 20, 2012        By:_____

David Levin

Dated: July 20, 2012         By:_____

Loren S. Siegel

Dated: July___, 2012         By:_____

Gary Cohen

Dated: July___, 2012         By:_____

Marie Cohen

Dated: July___, 2012         By:_____

Mark Winkler

- 32 -

1   mediator.  Whereas all Parties have contributed substantially and materially to the preparation of
2   this Agreement, it shall not be construed more strictly against one Party than another.
3       IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed
4   individually or by their duly authorized attorneys.

5

6   Dated: July ___, 2012          By:_____

7                                  Jay Edelson
                                   Edelson McGuire LLC
8                                  350 North LaSalle, Suite 1300
                                   Chicago, IL 60654
9
                                   Counsel for Plaintiffs and the Putative Class
10
11  Dated: July___, 2012           By:_____

12                                 James Patterson
                                   Patterson Law Group
                                   402 West Broadway, 29th Fl.
13                                 San Diego, CA 92101
14                                 Counsel for Plaintiffs and the Putative Classes

15
16  Dated:  July___, 2012          By:_____

17                                 David Levin

18  Dated: July___, 2012           By:_____
19                                 Loren S. Siegel

20

21  Dated: July___, 2012           By:_____
22                                 Gary Cohen

23

24  Dated: July___, 2012           By:_____
25                                 Marie Cohen

26

27  Dated: July___, 2012           By:_____
28                                 Mark Winkler

- 32 -

1  mediator.  Whereas all Parties have contributed substantially and materially to the preparation of

2  this Agreement, it shall not be construed more strictly against one Party than another.

3         IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed

4  individually or by their duly authorized attorneys.

5

6  Dated: July ___, 2012          By:_____

7                                    Jay Edelson

8                                    Edelson McGuire LLC
                                  350 North LaSalle, Suite 1300
                                  Chicago, IL 60654

9

10                                   Counsel for Plaintiffs and the Putative Class

  Dated: July 23, 2012          By:_____

11

12                                   James Patterson
                                  Patterson Law Group

13                                   402 West Broadway, 29th Fl.
                                  San Diego, CA 92101

14                                   Counsel for Plaintiffs and the Putative Classes

15

16 Dated:  July___, 2012          By:_____

17                                   David Levin

18 Dated: July___, 2012           By:_____

19                                   Loren S. Siegel

20

21 Dated: July___, 2012           By:_____

22                                   Gary Cohen

23

24 Dated: July___, 2012           By:_____

25                                   Marie Cohen

26

27 Dated: July 23, 2012          By: Mark Winkler _____

28                                   Mark Winkler

- 32 -

1

2  Dated: July 23, 2012                    By: _____
                                                      Jennie Lapointe
3

4

5
   Dated: July___, 2012                    By: _____
6
                                                 Lucia Nale
7                                                Mayer Brown LLP
                                                 71 South Wacker Drive
8                                                Chicago, Illinois 60606-4637

9                                                Counsel for Citibank, N.A.

10
    Dated: July___, 2012                   By: _____
11
                                                 On behalf of Citibank, N.A.
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 33 -

Settlement Agreement                                         Case No. 09-cv-0350

1

2   Dated: July___, 2012          By:_____

3                                      Jennie Lapointe

4

5                                      [signature]

6   Dated: July___, 2012          By:_____

7                                      Lucia Nale
                                       Mayer Brown LLP
8                                      71 South Wacker Drive
                                       Chicago, Illinois 60606-4637

9                                      Counsel for Citibank, N.A.

10

11  Dated: July___, 2012          By:_____

12                                     On behalf of Citibank, N.A.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 33 -

1

2   Dated: July___, 2012          By:_____

3                                           Jennie Lapointe

4

5

6   Dated: July___, 2012          By:_____

7                                         Lucia Nale
                                          Mayer Brown LLP
8                                         71 South Wacker Drive
                                          Chicago, Illinois 60606-4637
9
                                          Counsel for Citibank, N.A.
10

11  Dated: July___, 2012          By: _____
         August 16, 2012
12                                        On behalf of Citibank, N.A.

13                                        SANCHITA DASGUPTA

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                  - 33 -

    Settlement Agreement                              Case No. 09-cv-0350

# Exhibit A

1  Sean P. Reis (SBN 184044)
   EDELSON MCGUIRE, LLP
2  30021 Tomas Street, Suite 300
   Rancho Santa Margarita, California 92688
3  Telephone: (714) 352-5200
   Facsimile: (714) 352-5201
4  Email: sreis@edelson.com

5  Jay Edelson (Admitted *Pro Hac Vice*)
   Steven L. Woodrow (Admitted *Pro Hac Vice*)
6  Evan Meyers (Admitted *Pro Hac Vice*)
   EDELSON MCGUIRE, LLC
7  350 North LaSalle Street, Suite 1300
   Chicago, Illinois 60654
8  Telephone: (312) 589-6370
   Facsimile: (312) 589-6378
9  Email: jedelson@edelson.com
   Email: swoodrow@edelson.com
10 Email: emeyers@edelson.com

11 *Counsel for Plaintiffs*
   [additional counsel appear on signature page]
12

13 **UNITED STATES DISTRICT COURT**
   **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

14 | IN RE CITIBANK HELOC REDUCTION | No.  09-CV-0350-MMC |
15 | LITIGATION | **CLASS ACTION** |
16 | | **PRELIMINARY APPROVAL ORDER** |
17 | | The Honorable Maxine M. Chesney |
18 | | |

19       This matter coming before the Court upon the Motion of the proposed "Class

20 Representatives," David Levin, Loren S. Siegel, Gary Cohen, Marie Cohen, Mark Winkler, and

21 Jennie Lapointe, on behalf of a class defined herein, individually and on behalf of a class of

22 persons, for Preliminary Approval of the Settlement Agreement executed August 10, 2012 (the

23 "Settlement Agreement").  No party opposes the relief now sought.

24

25  IT IS HEREBY DETERMINED AND ORDERED AS FOLLOWS:

26

27

28

1.      The Settlement Agreement is hereby incorporated by reference in this Order as if fully set forth herein.  First-letter capitalized terms in this Order shall, unless otherwise defined herein, have the same meaning and definition as in the Settlement Agreement.

2.      Pursuant to Fed. R. Civ. P. 23, the terms of the Settlement Agreement, and the Settlement provided for therein, are preliminarily approved as (a) fair, just, reasonable, adequate, and in the best interests of the Settlement Class in light of the relevant factual, legal, practical, and procedural considerations of the Actions, (b) free of collusion to the detriment of Settlement Class Members, and (c) within the range of possible settlement suitable for final judicial approval, subject to further consideration thereof at the Final Approval Hearing described at paragraph 7 of this Order.

3.      The proposed settlement is sufficient to justify giving notice of the Settlement to the Settlement Class.

4.      Subject to the Settlement Agreement, and for purposes only of the settlement of this Actions, the Court hereby provisionally CERTIFIES the following Settlement Class:

> All persons in the United States from January 1, 2008 to January 31, 2012 whose Citibank HELOC Accounts were suspended or reduced based on a claim by Citibank of Collateral Deterioration regarding the value of the property securing the HELOC.

The persons potentially comprising the Settlement Class are identified on the Class List, as defined in Section 1.15 of the Settlement Agreement.

5.      David Levin, Loren S. Siegel, Gary Cohen, Marie Cohen, Mark Winkler and Jennie Lapointe are appointed as Class Representatives of the Settlement Class.

6.      Plaintiffs' Counsel, Jay Edelson, Steven Woodrow and Evan Meyers of Edelson McGuire LLC and Jim Patterson of Patterson Law Group, are appointed as Class Counsel.

7.      A Final Approval Hearing shall be held before the undersigned on March 15, 2013

- 2 -

at 9:00 a.m. in Courtroom 7, 19th Floor, of the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102, to determine, among other things: (a) whether the Settlement should be finally approved as fair, reasonable, and adequate; (b) whether the Actions should be dismissed with prejudice as to the Class Representatives David Levin, Loren S. Siegel, Gary Cohen, Marie Cohen, Mark Winkler, and Jennie Lapointe, and the Settlement Class Members, pursuant to the terms of the Settlement Agreement; (c) whether Settlement Class Members should be bound by the Release set forth in Section 4 of the Settlement Agreement; (d) whether Settlement Class Members should be subject to a permanent injunction that bars them from filing, commencing, prosecuting, intervening in, or participating in (as class members or otherwise), any lawsuit, claim, demand or proceeding in any jurisdiction that is based on or related to, directly or indirectly, matters within the scope of the Released Claims; (e) whether the Settlement Class should be finally certified; and (f) the amount of attorneys' fees and costs to be awarded to Class Counsel. The Final Approval Hearing may be adjourned or continued by the Court without further notice to the members of the Settlement Class.

8.    The Court approves the proposed forms of Notice attached hereto as Exhibits A (summary "short form" notice) and B ("long form" website notice). Pursuant to the procedures detailed in the Settlement Agreement, within fourteen days of entry of this Order, the Claims Administrator shall establish and maintain a settlement website with links on the home page to only the Complaint, the Settlement Agreement, and the Preliminary Approval Order at a domain name to be mutually agreed upon by the Parties. By November 16, 2012 a link to the traditional "long form" notice shall be added to the settlement website substantially in the form attached hereto as Exhibit B. In addition, Defendant shall mail the summary form of the Notice, substantially in the form attached hereto as Exhibit A, through a billing statement insert, stand

- 3 -

alone direct mail notice, or a combination of the two, no later than December 17, 2012. The Notice referenced herein shall be mailed to the Class members to the last known mailing address of record on Citibank's account records, which addresses are to be updated by the national change of address resources offered by the United States Postal Service. Citibank shall have no obligation to re-mail any returned mail or attempt to obtain forwarding addresses for any returned mail. All expenses of notice shall be paid by Citibank.

9. The Court finds that the Settlement Agreement's plan for Notice is the best notice practicable under the circumstances, is due and sufficient notice to the Settlement Class and satisfies the requirements of due process and Rule 23 of the Federal Rules of Civil Procedure, and is hereby approved. The Court further finds that no other notice other than that specifically identified in the Settlement Agreement is necessary in this Action.

10. The Court approves the proposed Claim Form, attached hereto as Exhibit C. As set forth in Sections 1.10 and 3.2 of the Settlement Agreement, Settlement Class Members may submit Claim Forms by properly and fully completing them and either: (i) submitting them online by the Claims Deadline, which is midnight, Pacific Time, on January 31, 2013; or (ii) mailing them to the address identified on the Claim Form so that it is postmarked by the Claims Deadline, which is midnight, Pacific Time, on January 31, 2013. Any Claim Form that is not timely submitted or properly completed, that is sent to the wrong address or that does not otherwise comply with the terms of the Settlement Agreement, shall be deemed invalid and Settlement Class Members submitting such claims shall forfeit any right to payment, but the Settlement Agreement, subject to final approval, shall in all other respects be fully enforceable against them.

11. All Class members who wish to be excluded from the Settlement and not be bound by the Settlement Agreement must complete and mail a request for exclusion ("Opt-Out") to the address set forth in the Class Notice. Such request for exclusion must be postmarked no later than

- 4 -

midnight, Pacific Time, on January 31, 2013. For a Class member's Opt-Out to be valid, it must be timely filed and served (as judged by the filing deadline and postmark date set forth), and must (i) be signed by all loan debtors (including joint debtors and co-debtors) on the account; (ii) include the full name, address, and Citibank's account number(s) of the person requesting exclusion; (iii) be timely postmarked and mailed to the address designated in the Class Notice (which address is to be P.O. Box address to be secured and provided by Citibank); and (iv) include a written statement that he or she wishes to opt out/be excluded from the Class. A request for exclusion that does not comply with all the foregoing requirements, that is sent to an address other than the one designated on the Class Notice, or that is not sent within the time specified, shall be invalid, and the person(s) serving such a request shall be bound as a Settlement Class Member and by the Settlement Agreement, if the Settlement Agreement is finally approved. No Class member may purport to exercise any exclusion rights of any other person, or purport to exclude other Class members as a group, aggregate, or class involving more than one person, or as an agent or representative. Any such purported exclusion shall be invalid and the Class member(s) that is or are the subject of the purported opt-out shall be a member or members of the Settlement Class and treated and be bound by the Settlement Agreement and as a Settlement Class Member for all purposes.

12. Any Class member who successfully opts out of the Settlement shall be deemed to have waived any rights or benefits under the Settlement, and will have no standing to object to the Settlement.

13. Any Settlement Class Member who does not opt-out and who wishes to object to the Settlement must file a written Objection ("Objection") with the Court, and mail and serve it upon the Claims Administrator, Class Counsel and Counsel for Defendant, by midnight, Pacific Time, on January 31, 2013. To be considered valid, each Objection must be timely filed and

- 5 -

served (as judged by the filing deadline and postmark date and time set forth), and must (i) set forth the Settlement Class Member's full name, current address, and telephone number; (ii) contain the signatures of all living borrowers on the account; (iii) state that the Settlement Class Member objects to the Settlement, in whole or in part; (iv) set forth the legal and factual bases for the objection; and (v) provide copies of all documents or writings that such Settlement Class Member desires the Court to consider in support of his/her position. All living borrowers to a loan must object for such objection to be valid. Any Settlement Class Member who wishes to object and appear at the final approval hearing in person instead of submitting only written objections must include in the written objection a notice of intention to appear at the final approval hearing. Any Settlement Class Member who does not submit a timely written Objection in complete accordance with this Order shall not be treated as having filed a valid Objection to the Settlement, shall be deemed as having waived his or her objections in this Actions and shall forever be barred from making any such objections in this Actions. Class Counsel is to respond to any Objections and file any additional materials in support of final approval by February 22, 2013.

14.     Subject to final approval of the proposed settlement and Settlement Agreement, and subject to the parties or their attorney given the Notice required by this Order, the Court approves the provisions of the Settlement Agreement making the settlement and its release of claims binding on all member of the Settlement Class, whether or not they actually received notice of the Actions or its settlement or submitted a Claim Form.

15.     The Parties may file memoranda in support of the Settlement, and Plaintiffs' Counsel may file a motion or application for an award of Attorney's Fees and/or award of an incentive payment to the Class Representatives, consistent with the provisions of the Settlement Agreement. Such Memoranda should be filed and posted to the Settlement Website at least fourteen (14) days prior to the Opt Out/Objection Deadline.

- 6 -

16.     The Parties are hereby authorized to establish the means necessary to administer the Settlement in accordance with its terms.

17.     All proceedings in this Action other than such as may be necessary to carry out the terms and conditions of the Settlement Agreement or the responsibilities related or incidental thereto, are stayed and suspended until further order of this Court.

18.     If Final Approval of the Settlement is not achieved, or if the Settlement is terminated for any reason, the Settlement and all proceedings had in connection therewith shall be without prejudice to the *status quo ante* rights of the Parties, and all orders issued pursuant to the Settlement shall be vacated.  In such an event, the Settlement and all negotiations concerning it shall not be used or referred to in these Actions for any purpose whatsoever.  Except for the provisions of paragraph 18, 19 and 20 of this Order, which shall remain in effect notwithstanding, this Order shall otherwise be of no force or effect if Final Approval does not occur for any reason, and nothing in this Order shall be construed or used as an admission, concession, or declaration by or against Defendant, of any fault, wrongdoing, breach, or liability or as a waiver by any Party of any defenses it may have.

19.     Neither the Settlement nor the Settlement Agreement constitutes an admission, concession, or indication by the Parties of the validity of any claims or defenses in the Actions, or of any wrongdoing, liability, or violation of law by any of the Released Parties or Citibank, which vigorously denies all of the claims and allegations raised in the Actions.

20.     The Court reserves the right to approve the Settlement with such modifications, if any, as may be agreed to by Class Counsel and Counsel for Citibank and without future notice to the Settlement Class Members.

21.     All Settlement Class Members who have not timely and validly excluded themselves from the Class and all persons acting on behalf of or in concert with any such

- 7 -

Settlement Class Members are hereby preliminarily enjoined from, directly or indirectly: (i) commencing, prosecuting, participating in (as a class member or otherwise), and/or assisting in any lawsuit or other proceeding against Citibank or any of the Released Parties that asserts or purports to assert claims that (a) were alleged, asserted, described, set forth or referred to in the Actions, and/or (b) are within the scope of the Released Claims as embodied in Section 4 of the Settlement Agreement; and (ii) organizing or soliciting Settlement Class Members or those who Opt-Out into a separate class for purposes of pursuing, as a purported class action, a lawsuit or other proceeding on behalf of Settlement Class Members or those who Opt-Out, that asserts or purports to assert claims that (a) were alleged, asserted, described, set forth or referred to in the Actions, and/or (b) are within the scope of the Released Claims, as embodied in Section 4 of the Settlement Agreement.

22. Except as set forth in this Order and the Settlement Agreement, no person or entity, including but not limited to Plaintiffs' Counsel, Counsel for the Defendant, the Class Representatives, or Citibank, shall be permitted to initiate communications with Settlement Class Members, whether by written correspondence, notices, advertisements, or other media, concerning the Settlement or its terms without prior approval from the Court upon prior notice to Class Counsel and Counsel for Citibank.

THUS DONE AND SIGNED THIS <u>6th</u> DAY OF

<u>November</u> , 2012

_____

JUDGE MAXINE M. CHESNEY

- 8 -

# Exhibit B

# LEGAL NOTICE

**IF YOUR HOME EQUITY LINE OF CREDIT ("HELOC") WAS SUSPENDED OR REDUCED BY CITIBANK, YOU MAY BE ENTITLED TO BENEFITS FROM A CLASS ACTION SETTLEMENT**

*In Re Citibank HELOC Reduction Litigation,* Case No. 09-cv-0350 MMC

*Visit www.inrehelocsettlement.com for more information*

A proposed class action settlement has been reached in a putative nationwide class action case brought against the defendant, Citibank, N.A. ("Citibank"), in the United States District Court for the Northern District of California. The Settlement resolves litigation that challenged whether Citibank had a right to suspend or reduce borrowers' HELOCs. Your legal rights may be affected whether you act or don't act. Please read this notice carefully. Please also visit www.inrehelocsettlement.com to read the full agreement and to submit a claim.

### What is the Lawsuit About?

The lawsuit alleges that Citibank suspended and reduced certain of its borrowers' HELOCs on the grounds that the borrowers' homes have significantly declined in value without a basis for doing so.

Citibank denies that it violated any law. The Court has not determined who was right. Rather, the Parties have agreed to settle the lawsuit to avoid the expenses and burdens of further litigation.  This notice is not an admission of wrongdoing by any party.

### How Do I Know if I Am a Class Member?

You are a member of the Class if you were a person in the United States from January 1, 2008 to January 31, 2012 whose Citibank HELOC account was suspended or reduced based on a claim by Citibank that the value of the property or dwelling securing the HELOC (*e.g.*, your home) had experienced a significant decline in value.

### What Can I Get From the Settlement?

If you are a current Citibank HELOC customer, you will benefit from the Settlement's service enhancements, including the Notice of Right to Request Reinstatement of your HELOC. A full explanation of these service enhancements is set forth in the long form notice available at www.inrehelocsettlement.com.

If you have closed your Citibank HELOC account following a suspension or reduction of your HELOC, you may be entitled to a cash award of $120. If this form was mailed to you and includes a Claim Form, then Citibank has determined that you are eligible to receive the $120 cash award, provided you timely submit a claim in the manner explained below. If you were mailed this form but it doesn't include a Claim Form, then you are not eligible to receive the cash award and may not submit a claim for such an award.

### How Can I Receive Settlement Monetary Benefits?

Former Citibank HELOC customers who are eligible for a cash award may receive a $120 cash payment by completing and timely submitting a Claim Form. A copy of the Claim Form is available at www.inrehelocsettlement.com. You may submit the Claim Form online or mail a completed Claim Form to the following address:  *In re Citibank HELOC Litigation*, Settlement Administrator, P.O. Box 2838, Portland, OR 97208-2838.

**Claims Forms must either be submitted electronically or postmarked no later than January 31, 2013, midnight Pacific Time.**

### What are My Other Options?

You or your lawyer has the right to appear before the Court and object to the proposed Settlement. Your written objection must be postmarked by **January 31, 2013**.  If you do not wish to be a member of the Class, you may exclude yourself by writing to the Settlement Administrator and indicate that you wish to be excluded from the Class. If any co-borrower on your account requests exclusion, you cannot submit a claim form for a cash award. Specific instructions are available at www.inrehelocsettlement.com. Your request for exclusion *must* be postmarked by **January 31, 2013.**

If you object or do nothing, you will remain in the Class, and if the Court approves the Settlement, you will also be bound by all orders and judgments of the Court. <u>If the Settlement is approved by the Court, your claims against Citibank and other Released Parties for the Released Claims, which include but are not limited to, any and all claims in conjunction with the suspension or reduction of your HELOC based upon a decline in the value of your property, will be released</u>. For a detailed explanation of the Released Claims, please review the Settlement Agreement on the website.

### Who Represents Me?

The Court has approved Jay Edelson, Steven L. Woodrow and Evan Meyers of Edelson McGuire LLC and Jim Patterson of Patterson Law Group to be the attorneys representing the Class in this case. These attorneys are referred to as Class Counsel. You will not be charged for these lawyers. If you want to be represented by your own lawyer in this case, you may hire one at your expense.

Class Counsel will ask the Court for attorneys' fees and expenses of up to $1,214,000. Additionally, Citibank has agreed to pay $36,000 collectively to the Class Representatives to be shared for their services in helping to bring and settle this case. The Court may award less than these amounts.

### When Will the Court Consider the Proposed Settlement?

The Court will hold the Final Approval Hearing at 9:00 a.m. on March 15, 2013, at the United States District Court for the Northern District of California located at Courtroom 7, 19th Floor, 450 Golden Gate Avenue, San Francisco, California 94102. At that hearing, the Court will hear any objections concerning the fairness of the Settlement that have been properly raised, as set forth above.  The hearing may be postponed to a different date or time without notice. You are not required to come to the Final Approval Hearing.

### How Do I Get More Information?

For more information, please see www.inrehelocsettlement.com, which includes links to the long-form notice and the Claim Form. You may also contact Class Counsel, at the address or phone number below for any

reason, including requesting a copy of the Settlement Agreement. If you contact Class Counsel in writing, please include the case name and number, and your name and address on any letters, not just the envelopes.

**CLASS COUNSEL**
Jay Edelson, Steven L. Woodrow and Evan M. Meyers
Edelson McGuire, LLC, 350 N. LaSalle St., Suite 1300
Chicago, IL 60654   Tel: (866) 354-3015   www.edelson.com

**CLAIMS ADMINISTRATOR**
*In re Citibank HELOC Litigation*
Settlement Administrator
PO Box 2838
Portland, OR 97208-2838
TOLL FREE: 1-866-487-6522

# Exhibit C

## CLAIM FORM

### *In re Citibank HELOC Reduction Litigation*

Submit this Claim Form Online at www.inrehelocsettlement.com or
return this Claim Form to: *In re Citibank HELOC Litigation*, Settlement Administrator,
PO Box 2838, Portland, OR 97208-2838
Questions? Visit www.inrehelocsettlement.com or call 1-866-487-6522

### DEADLINE:  THIS CLAIM FORM MUST BE SUBMITTED: POSTMARKED BY JANUARY 31, 2013

**Instructions:** Mail this Claim Form only if all of the following are true.  You: (1) were a Citibank HELOC customer during the period from January 1, 2008 through January 31, 2012; (2) closed your HELOC account in response to Citibank's suspension or reduction of your HELOC based on Citibank's claim that your home value significantly declined in value; and (3) paid an early closure release fee to Citibank.

Each person seeking a cash benefit under the Class Action Settlement Agreement must complete a paper Claim Form. *You can only submit one Claim Form for each HELOC you closed in response to Citibank's suspension or reduction of your HELOC account.  Only former named account holders may file a Claim Form.*  **Where there are multiple account holders named on a single account, only one Claim Form may be filed.**  If any co-borrower on your account requests to be excluded from the Settlement, the claim will be deemed invalid. For further information, please visit www.inrehelocsettlement.com.

To submit a claim for a cash benefit, begin by filling in all of the information requested in Part A.  Once complete, move on to Part B and check each and every box that applies to you.  Once all of the boxes are checked, review and sign the Certification under Part C.

After the Claim Form is completed, submit it online using the Mail ID and Reference Code above, or mail it to the Settlement Administrator at *In re Citibank HELOC Litigation*, Settlement Administrator, PO Box 2838, Portland, OR 97208-2838.  All Claim Forms must be submitted online or postmarked by **January 31, 2013.**

### PART A - CLAIMANT INFORMATION*

First Name                                           MI        Last Name

Address

City                                                                                State        Zip Code

Contact Phone Number

Address of property serving as security for Citibank HELOC (*if different from address above*):

City                                                                                State        Zip Code

Phone Number

*Please provide a phone number where you can be reached if further information is required.*

Email

*\* All information in this section is required.*



01-CA4797
K8361 v.04 12.14.2012

## PART B – EARLY CLOSURE RELEASE FEE INFORMATION

### Cash Refund for Payment of Early Closure Release Fee

By submitting a Claim Form, I verify that I believe I am a member of the Class and that the following statements are true:

☐ I was a Citibank HELOC customer in the United States, and my HELOC was suspended or reduced by Citibank based on a claim that my home value significantly declined.

☐ As a result of Citibank's suspension or reduction of my HELOC, I closed my HELOC account.

☐ In closing my Citibank HELOC account, I paid Citibank an early closure release fee.

Failure to check all three boxes may result in the denial of your claim.

## PART C – CERTIFICATION UNDER PENALTY OF PERJURY

I declare under penalty of perjury that I believe I am a member of the Class, and all of the information in this Claim Form is true and accurate.

**Signature** _____      Date [  ] [  ] – [  ] [  ] – [  ] [  ]
                                                          MM        DD        YY

Print Name

[ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ]

If approved you will be entitled to a cash award of $120.00.

For further information, please visit www.inrehelocsettlement.com or call 1-866-487-6522



# Exhibit D

# NOTICE OF RIGHT TO REQUEST REINSTATEMENT OF YOUR HOME EQUITY LINE OF CREDIT ("HELOC")

Our records indicate your home equity line of credit was suspended or reduced based on our determination that your home significantly declined in value. You may appeal our decision to suspend or reduce y o u r HELOC if you believe that you have substantial equity in your home because: (1) you believe the value of your home has not significantly decreased, and/or (2) you have paid down your first mortgage significantly since your HELOC was originated.

Contact a Citibank customer service representative at 1-866-645-8767*, Monday through Friday, from 7:30 a.m. to 10:00 p.m. C.T. The representative will assist you by explaining the appeal process and answer any questions you may have.

If you choose to pursue your appeal, you will need to formally request in writing that your HELOC be reinstated or restored and complete the following steps:

**If you believe the value of your home has not significantly decreased:**

1. Contact LSI, Lender Services, Inc., at 1-866-612-9276*. LSI is a company that manages appraisers nationwide and is the only company approved by Citibank to provide appraisals for HELOC reviews. LSI will arrange for an appraiser to come to your home and complete a full appraisal. At the time you place the order, LSI will charge you a fee. Purchasing an appraisal does not guarantee that Citibank will automatically reinstate or restore your HELOC.

2. When you receive the appraisal from LSI, please send in all documentation, including your invoice, along with your written request to reinstate or restore your HELOC to:

   Citibank
   1000 Technology Drive
   MS 639 Attn: HELOC Review
   O'Fallon, MO 63368

3. Citibank will review the new information and consider reinstating/restoring all or part of your HELOC within twenty business days. When our review is complete, you will receive a letter advising you of our decision.

**If you have significantly paid down your first mortgage balance:**

1. Provide a copy of your most recent first mortgage statement showing your current first mortgage balance.

2. Send the mortgage statement and your written request to reinstate or restore your HELOC to: Citibank

   1000 Technology Drive
   MS 639 Attn: HELOC Review
   O'Fallon, MO 63368

**NOTE:** A pay down of your first mortgage balance alone may not be sufficient to permit reinstatement as it may not result in sufficient equity due to the current value of the property. Therefore, you may still want to provide an LSI appraisal as part of your written request for reinstatement. Purchasing an appraisal does not guarantee that Citibank will automatically reinstate or restore your HELOC.

*Calls are randomly monitored and recorded to ensure quality service.

# Exhibit E

**\*\*\*NOTICE OF PENDENCY OF CLASS ACTION SETTLEMENT\*\*\***

**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF CALIFORNIA**

*In Re Citibank HELOC Reduction Litigation*
Case No. 09-cv-0350-MMC

**(Former customers of Citibank must submit a Claim Form, Postmarked by January 31, 2013 to obtain Settlement Benefits)**

**IF CITIBANK SUSPENDED OR REDUCED YOUR HOME EQUITY LINE OF CREDIT ("HELOC") YOU MAY BE ENTITLED TO BENEFITS FROM A CLASS ACTION SETTLEMENT**

The United States District Court for the Northern District of California authorized this Notice. This is <u>not</u> a solicitation from a lawyer or a lawsuit against you.

You need not live in California to participate.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| EXCLUDE YOURSELF | You will receive no benefits, but you will retain any rights you might have to file a lawsuit against Citibank relating to its policies and/or practices of suspending or reducing HELOCs based on a significant decline in property value. |
| OBJECT | Write to the Court about the reasons that you are against the Settlement. |
| ATTEND A HEARING | Request that you be allowed to speak in Court about the fairness of the Settlement. |
| DO NOTHING | Current Citibank HELOC customers may apply for reinstatement or do nothing to obtain the settlement benefits for current customers.  If you elect to request reinstatement or do nothing, you will give up certain rights, as explained below.  Former customers will receive no benefit if they do nothing. |
| IF YOU ARE A FORMER CUSTOMER AND QUALIFY, SUBMIT A CLAIM FORM | This is for former customers of Citibank who incurred an early closure release fee when they terminated their HELOCs following a suspension or reduction of their HELOC by Citibank.  If you elect to receive a benefit or do nothing, you will give up certain rights as explained below. |

- **These rights and options—and the deadlines to exercise them—are explained in this Notice.**
- **The Court in charge of this case still has to decide whether to give final approval to the Settlement.  If it does, and after any appeals are resolved, the benefits to current customers will go into effect, and the benefits to Former Customers discussed in this Notice will be distributed to those who qualify and have timely submitted valid Claim Forms.**

### BASIC INFORMATION

| 1.  Why was this Notice issued? |
| --- |

A Court authorized this Notice to inform you of the settlement of a class action lawsuit against *Citibank, N.A.* ("Citibank" or "Defendant") pending in the United States District Court for the Northern District of California.  The Court on November 6, 2012 granted preliminary approval of the Settlement and has certified the Class, defined more fully bellow, subject to a fairness hearing, which will take place on March 15, 2013 at 9:00 a.m. in the United States Courthouse, Courtroom 7 – 19th Floor, 450 Golden Gate Avenue, San Francisco, California 94102 to determine if the Settlement is fair, reasonable and adequate.  At that time, the Court will also consider the request by Class Counsel for an award of attorneys' fees and expenses, and incentive payments to the Class Representatives.

This Notice explains the nature of the class action lawsuit and the terms of the Settlement and informs you of your legal rights and obligations. By agreeing to the Settlement, Citibank is not admitting it is liable to the Class, or anyone else, or that it violated any law or regulation. Indeed, Citibank denies any and all claims in the lawsuit.

You have options, which are explained below.

| 2.  Who is the Defendant? |
| --- |

Citibank is a national banking association.

| 3.  What Is The Lawsuit About? |
| --- |

Plaintiffs David Levin, Loren S. Siegel, Gary Cohen, Marie Cohen, Mark Winkler, and Jennie Lapointe filed their amended consolidated class action complaint in the United States District Court for the Northern District of California on behalf of all Citibank HELOC customers nationwide whose HELOCs were suspended or reduced based on a claim by Citibank that the value of the property securing the HELOC had experienced a significant decline in value, from January 1, 2008 to January 31, 2012.

2

The Plaintiffs alleged in the Complaint that Citibank suspended or reduced their respective HELOCs based on a claim that their homes had significantly declined in value when, according to the Plaintiffs, their home values purportedly had not declined.

You do not need to live in California to receive a benefit under the proposed Settlement if you are eligible.  This class action asserts claims on behalf of the nationwide class for alleged violations of the Truth in Lending Act ("TILA") and its implementing regulation, Regulation Z, breach of contract, breach of the implied covenants, and alleged violations of California's Unfair Competition Law ("UCL") Cal. Bus. & Prof. Code § 17200.  To resolve these matters without the expense and burden of further litigation, the Parties have reached this Settlement, which resolves any and all claims in conjunction with the Settlement Class Members' claims against Citibank and the other Released Parties relating to their HELOC suspensions or reductions.  The Settlement requires Citibank to provide settlement benefits to the Settlement Class Members, attorneys' fees to Class Counsel, and incentive payments to the Class Representatives, if approved by the Court.  This settlement is not an admission of wrongdoing by any Party.

## 4.  Who Is In The Class?

You are a member of the Class if you were a Citibank customer in the United States from January 1, 2008 to January 31, 2012, and your Citibank HELOC account was suspended or reduced based on a claim by Citibank that the value of the property or dwelling securing the HELOC (*e.g.*, your home) had experienced a significant decline in value.

You cannot participate in the Settlement if you are any judge presiding over this case and the judge's immediate family members.

## 5.  What Relief Is Provided To Settlement Class Members Under The Settlement?

**A.**    **Notice of Right to Request Reinstatement:**  The Settlement requires that Citibank send each Settlement Class Member who is a current Citibank HELOC customer a Notice of Right to Request Reinstatement of the suspended or reduced HELOC under Citibank's current HELOC suspension policies and procedures.  The Notice of Right to Request Reinstatement shall advise the current customers that they have the right to file a request for reinstatement of their HELOCs by initiating an appeals process.

**B.**    **Service Assurances**.  For a period of 18 months following the "Effective Date" as defined in the Settlement Agreement, Citibank agrees not to change its HELOC suspension and reduction policies (for suspensions and reductions based on significant declines in property values) in any material manner that would be less beneficial to its borrowers except that Citibank will maintain the full ability to modify its policies and practices based on amendments or clarifications of applicable law as enacted or interpreted by the courts, Congress, or federal regulators or as necessary for Citibank to comply with any such amendment, interpretation or clarification.

**C.     Enhanced Suspension Notices.**  For a period of 18 months commencing 30 days after the Effective Date as defined in the Settlement, Citibank shall, to the extent it is feasible and/or not cost prohibitive or unduly burdensome, include in its HELOC suspension and reduction Notices based on significant declines in property values: (1) the present value of the property as calculated by Citibank in connection with such line action, and (2) the appraised value required to be eligible to seek account reinstatement.  In the event that Citibank determines that it is not feasible, or that it is cost-prohibitive or unduly burdensome, to include such information in its suspension and reduction Notices, the Notices shall state that the customers may request such information by writing to Citibank at the address provided for in the suspension and/or reduction Notice.  Citibank will also commit for that time period to having its suspension and reduction Notices based on Collateral Deterioration advise customers that they may seek reinstatement if the customers believe that: (i) the value of their home has not significantly declined by seeking a valuation from Citibank's approved property appraisal vendor for review appraisals for HELOCs, and/or (ii) they have significantly paid down their first mortgage by providing a copy of their most recent first mortgage statement showing their current first mortgage balance.

**D.     Appraisals.**  Citibank will work with its approved property appraisal vendor with respect to the HELOC appeals process, to generally confirm that appraisal fees charged by the vendor to Citibank customers are reasonable based on industry-standard factors.  However, Citibank does not undertake an obligation to independently monitor or negotiate the appraisal fees charged by its property appraisal vendor or any other third-party vendors to any particular customer, or to ensure that the amount of the appraisal fees assessed by any such vendor is the lowest fee available by comparison to other appraisal service providers.

**F.     Benefits Specific to Former Customers**.  Former Citibank HELOC customers who are eligible to submit a claim and  sign, under the penalty of perjury, and timely submit completed Claim Forms verifying: (i) that the customer closed his or her HELOC account in response to Citibank's suspension or reduction of the account based upon a significant decline in the value of the property securing the HELOC, and (ii) that the customer paid an early closure release fee to Citibank after closing the account, shall be entitled to a cash award equal to $120.00 if they have not opted out of the settlement and meet such other criteria set forth in the Settlement Agreement.  Checks must be cashed within 120 days.

| |
|---|
| **6.  What Are My Legal Rights?** |

*How Do I Submit a Claim Form for Benefits?*

You are a Class Member if you meet the definition in Section 4 above.

<u>If you a current HELOC customer of Citibank, you do not need to do anything to receive settlement benefits</u>.

<u>If you are a former Citibank customer and you (1) have closed your HELOC in response to Citibank's suspension or reduction based upon a significant decline in the value of your home,</u>

and (2) paid an early closure release fee to Citibank, then you may submit a Claim Form as described below in order to receive settlement benefits.

**The Claim Form must be submitted online or postmarked by January 31, 2013, midnight Pacific Time, or your claim will be considered untimely and will be rejected**.

Follow the steps below to file a claim if you meet the criteria set forth above for former Citibank customers.

**Step 1 – Access the Claim Form.**  You may access the Claim Form at www.inrehelocsettlement.com starting on December 7, 2012. Please check back at that time.

**Step 2 – Complete the Claim Form.**  Fill out all necessary fields and information.  Make sure you sign the form.

**Step 3 – Submit the Claim Form.**  The Claim Form can be submitted via the Settlement Website or via U.S. Mail to:

*In re Citibank HELOC Litigation*
Settlement Administrator
PO Box 2838
Portland, OR 97208-2838

Claims that are not postmarked by the claims deadline set forth above will be considered untimely and will be rejected.

*What Happens After I File My Claim?*

Your claim will be reviewed upon its receipt. If your claim is approved by the Claims Administrator and the Court grants final approval to the Settlement, you will receive a check for $120.

By submitting the Claim Form, you will be bound by all orders and judgments of the Court, and your claims against Citibank and other Released Parties for any and all claims related to the suspension or reduction of your HELOC will be released.  A full explanation of this process, the release language, and the definition of Released Parties are set out in the Class Action Settlement Agreement, which can be found at www.inrehelocsettlement.com.

**If any co-borrower requests exclusion as set forth below, your claim will not be valid.**

*How Not to Participate in the Class*

Any Class member may request to be excluded from the Settlement at any time before the Opt-Out/Objection Deadline, by doing as follows:

To exercise your right to opt-out and be excluded from the Class, you must complete and return by mail a Request For Exclusion by the Opt-Out/Objection Deadline to the Claims Administrator.  **The Request for Exclusion must be signed, addressed to the Claims Administrator, and must include your name, a statement that says "I wish to be excluded from the Citibank HELOC Settlement" or words clearly to that effect, and include the address for the property securing the HELOC.**

Requests for Exclusion postmarked after the Opt-Out/Objection Deadline of **January 31, 2013**, midnight, Pacific Time, will be considered invalid and of no effect, and the Person who untimely submits a Request for Exclusion will remain a Settlement Class Member and will be bound by any orders entered by the Court (including a Judgment approving the Agreement and implementing the Release contemplated thereby).  All Settlement Class Members (exclusive of customers who submit a valid Request for Exclusion) will be bound by the Settlement Agreement and the Judgment, including the Release contained therein.

Any Person who timely and properly submits a Request for Exclusion shall not:  (i) be bound by any orders or Judgment entered in this Litigation nor by the Release, (ii) be entitled to any Settlement Benefit under this Settlement, (iii) gain any rights by virtue of this Settlement, and (iv) be entitled to object to any aspect of this Settlement, or this Litigation.

**Each Person requesting exclusion from the Class must personally sign his or her own individual Request For Exclusion.**  No Person may opt-out from the Settlement Classes any other Person or be opted-out by any other Person, and no Person shall be deemed opted-out of the Settlement Classes through any purported "mass" or "class" opt-outs.

*How Do I Object to the Settlement?*

If you intend to object to this Settlement, you must send a letter called a "Notice of Intent to Appear and Object," postmarked by **January 31, 2013**, midnight Pacific Time, that includes your personal signature, your full name and address, and all arguments, citations, and evidence supporting the objection.  The letter must also state that you are a Class Member and indicate whether you intend to appear at the Fairness Hearing, either with or without counsel.  A copy of this letter must be sent to the Court, to the Claims Administrator, to Class Counsel, and to Citibank's Counsel, at the addresses set forth below.  Objections must be filed and postmarked by the Opt-Out/Objection Deadline, **January 31, 2013**, midnight Pacific Time.  Counsel for any objector must file an appearance by the Opt-Out/Objection Deadline.  No Class Member shall be heard and no papers, briefs or pleadings submitted by such Class Member shall be received and considered by the Court unless the Court receives the Class Member's properly completed and signed Notice of Intent to Appear and Object by the Opt-Out/Objection Deadline.  Any Class Member who fails to timely or properly file a Notice of Intent to Appear and Object shall be deemed to have waived his or her objections and be forever barred from making any such objections in this Action, any appeal or in any other action or proceeding.

**<u>Settlement Administrator</u>**

*In re Citibank HELOC Litigation*

Settlement Administrator
PO Box 2838
Portland, OR 97208-2838

**Plaintiffs' Counsel**

Jay Edelson, Esq.                       James Patterson
Steven L. Woodrow, Esq.                 Patterson Law Group
Evan Meyers, Esq.                       402 W. Broadway, 29th Floor
EDELSON MCGUIRE LLC                     San Diego, CA 92101
350 North LaSalle, Suite1300            Tel: (619) 756-6990
Chicago, IL 60654                       www.pattersonlawgroup.com
Tel: 1 (866) 354-3015
www.edelson.com

**Defendant's Counsel**

Lucia Nale, Esq.
Debra Bogo-Ernst, Esq.
Mayer Brown LLP
71 South Wacker Drive
Chicago, IL 60606

**Office of the Clerk United States District**
**Court for the Northern District of California**

Office of the Clerk
United States District Court
450 Golden Gate Avenue
San Francisco, CA 94102
www.cand.uscourts.gov

## 7.  If I Remain In The Class, Who Represents Me?

The Court has approved the following attorneys to represent the Class.  They are called "Class Counsel."  You will not be charged for these lawyers.  If you want to be represented by your own lawyer, you may hire one at your own expense.

**Class Counsel:**

Jay Edelson, Esq.                       Jim Patterson
Steven L. Woodrow, Esq.                 Patterson Law Group
Evan Meyers, Esq.                       402 West Broadway, 29th Floor
EDELSON MCGUIRE LLC                     San Diego, CA 92101
350 North LaSalle, Suite1300            Tel: (619) 756-6990

Chicago, IL 60654                              www.pattersonlawgroup.com
Tel: (866) 354-3015
www.edelson.com

## 8.  What Is The Plaintiffs' Attorneys' Fees Award?

The Court has appointed the attorneys listed above to represent the Class.  At the Fairness
Hearing described above, Class Counsel will be seeking final approval of the Settlement and will
request approval by the Court of the fee award, consisting of attorneys' fees and costs up to
$1,214,000 for investigating the facts, litigating the case, and negotiating the settlement in this
matter to be paid by Citibank.  Citibank has agreed not to contest this amount.

## 9.  What Is The Incentive Award To The Class Representative?

As part of the preliminary approval of the Settlement, the Court has appointed six Class
Representatives: David Levin, Loren S. Siegel, Gary Cohen, Marie Cohen, Mark Winkler, and
Jennie Lapointe. At the Fairness Hearing, they will ask the Court to award them a collective
incentive award of $36,000, to be divided equally ($6,000 to each of them).  Citibank has agreed
not to contest this amount.

## 10.  What Claims Are Being Released In This Settlement?

Unless you timely submit a Request for Exclusion, upon final approval of the Settlement you
will have granted Citibank and all other Released Parties a full and complete release of the
Released Claims, described in Section 1.40 of the Settlement Agreement including, but not
limited to, all claims arising from the beginning of time to the Effective Date of the Settlement
Agreement relating to Citibank's HELOC suspension and reduction policies, systems, standards
and procedures regarding HELOC suspensions or reductions based, in whole or in part, on
claims that borrower home values have significantly declined, including without limitation, its
HELOC account suspensions and reinstatement standards, processes and policies that were or
could have been alleged in the Plaintiffs' Complaint, including those belonging to Plaintiffs and
the Releasing Parties.

The exact release language and the definitions of Released Claims, Released Parties, and
Releasing Parties contained in the Settlement Agreement is far more detailed, and you may want
or need to consider it before making your decision about participating in the Settlement.
Likewise, much more detail about all of the provisions is contained in the full Settlement
Agreement.  You can see a complete copy of the Class Action Settlement Agreement at
www.inrehelocsettlement.com.

## 11.  What Is Class Counsel's Opinion Of The Settlement?

Class Counsel have conducted extensive investigation into the factual and legal claims of the Class and the defenses that might be asserted by Defendant against those claims. Based on their investigation, Class Counsel believe that the Settlement is fair, reasonable, adequate and in the best interests of the Class. In making this evaluation, the Plaintiffs and Class Counsel have also taken into account the expense and length of continued proceedings necessary to continue to prosecute this class action against Defendant through trial, verdict, judgment, appeals and collections, and the uncertainty and the risk of the outcome of litigation, especially in complex action such as this, as well as the difficulties and delays inherent in such actions.

## 12. When Will The Court Determine The Fairness Of The Settlement?

The Court has given preliminary approval to the Settlement. A final hearing on the Settlement, which is called a Fairness Hearing, will be held to determine the fairness of the Settlement. At the Fairness Hearing, the Court will hear any proper objections to the Settlement, as well as Class Counsel's request for an award of attorneys' fees and expenses, and the incentive awards to the Class Representatives. The Court will hold the Fairness Hearing on March 15, 2013 at 9:00 am in United States Courthouse, Courtroom 7 – 19th Floor, 450 Golden Gate Avenue, San Francisco, California 94102.

YOU ARE NOT OBLIGATED TO ATTEND THE FAIRNESS HEARING UNLESS YOU PLAN TO OBJECT TO THE SETTLEMENT IN PERSON.

If the Settlement is not finally approved, the case will proceed as if no settlement had been attempted or agreed upon. There can be no assurance that if the Settlement is not approved, the Class will recover more than is provided in the Settlement, or indeed, anything at all.

## 13. Where Can I Obtain More Information About The Settlement?

Any questions you or your attorney may have concerning this Notice should be directed to Class Counsel at the address listed below. **You may also contact Class Counsel at (866) 354-3015 for any reason, including to receive a copy of the Class Action Settlement Agreement or a hard copy of the Claim Form.** If you contact Class Counsel in writing, please include the case name and number, and your name and address on any letters, not just the envelopes. **You may also read the Class Action Settlement Agreement, by visiting the website www.inrehelocsettlement.com.**

**Please do not contact the Court. Instead, to obtain information about the terms and conditions concerning the Settlement, you may contact Class Counsel, as follows:**

<u>Class Counsel:</u>

Jay Edelson, Esq.                                  Jim Patterson
Steven L. Woodrow, Esq.                            Patterson Law Group
Evan Meyers, Esq.                                  402 West Broadway, 29th Fl.
EDELSON MCGUIRE LLC                                San Diego, CA 92101

350 North LaSalle, Suite 1300
Chicago, IL 60654
Tel: (866) 354-3015
www.edelson.com

Tel: (609) 756-6990
www.pattersonlawgroup.com

# Exhibit F

1  Sean P. Reis (SBN 184044)
   EDELSON MCGUIRE, LLP
2  30021 Tomas Street, Suite 300
   Rancho Santa Margarita, California 92688
3  Telephone: (714) 352-5200
   Facsimile: (714) 352-5201
4  Email: sreis@edelson.com

5  Jay Edelson (Admitted *Pro Hac Vice*)
   Steven L. Woodrow (Admitted *Pro Hac Vice*)
6  Evan Meyers (Admitted *Pro Hac Vice*)
   EDELSON MCGUIRE, LLC
7  350 North LaSalle Street, Suite 1300
   Chicago, Illinois 60654
8  Telephone: (312) 589-6370
   Facsimile: (312) 589-6378
9  Email: jedelson@edelson.com
   Email: swoodrow@edelson.com
10 Email: emeyers@edelson.com

11 *Counsel for Plaintiffs*

12                    **UNITED STATES DISTRICT COURT**
                 **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
13

14 IN RE CITIBANK HELOC REDUCTION          No.  09-CV-0350-MMC
   LITIGATION
15                                          **CLASS ACTION**

16                                          **FINAL APPROVAL ORDER**

17                                          The Honorable Maxine M. Chesney

18

19      This matter coming to be heard pursuant to the Parties' motion for Final Approval of the

20 proposed Settlement Agreement, a hearing on the fairness of the proposed Settlement Agreement

21 having been held, at which objectors to the settlement could appear or be heard, and the Court

22 being fully advised in the premises, the Court hereby finds and orders that:

23      1.      On November 6, 2012, this Court entered an order preliminarily approving the

24 Settlement between Class Representatives David Levin, Loren S. Siegel, Gary Cohen, Marie

25 Cohen, Mark Winkler and Jennie Lapointe ("Class Representatives"), individually and as

26 representatives of the "Settlement Class" (as defined in Section 1.13 of the Settlement

27 Agreement), on the one hand, and Citibank, N.A. ("Citibank" or "Defendant"). This order

28

---

Final Approval Order                                          Case No. 09-cv-0350

1   preliminarily approved the Settlement Agreement, provisionally certified a Settlement Class,

2   approved a form of Notice (as specified in the Settlement Agreement, which is hereby

3   incorporated by reference in this Order as if fully set forth herein[1]), authorized the mailing of such

4   Notice, and ruled that such Notice complies with the terms of the Settlement Agreement and due

5   process.

6       2.      The Court scheduled a fairness hearing, or Final Approval Hearing, for March 15,

7   2013, and directed the Parties to notify the Class of this Final Approval Hearing as part of the

8   Notice.

9       3.      The Court finds that Defendant, in accordance with the terms of the Settlement

10  Agreement and the Preliminary Approval Order, caused notice of the Agreement to be timely

11  mailed on December 7, 2012 to those individuals identified as potential class members on the

12  Class List and posted on the internet.

13      4.      A total of _____ Class members requested exclusion from the Settlement

14  Agreement (listed on Exhibit A to this order). Having validly opted out in accordance with the

15  terms of the Settlement Agreement, these Class members are not subject to this Order.  *[To be*

16  *revised if additional requests for exclusion are received prior to the opt-out deadline.]*

17      5.      On March 15, 2013, the Court held a Final Approval Hearing to which Class

18  members, including those with objections, were invited to attend. The Court received objections

19  from ____ Class members, and ____ Class members, or their counsel, appeared at the Final

20  Approval Hearing.

21      6.      The Court, being fully advised and having afforded Class members an opportunity

22  to object, hereby finds that the Settlement is appropriate under Fed. R. Civ. P. 23, the Notice sent

23  to Class and published on the Internet satisfies the requirements of due process and Fed. R. Civ. P.

24  23, and the Parties have fully complied with the Preliminary Approval Order.

25      7.      The Court finds that the Notice given provided the best notice practicable under the

26  circumstances, was due and sufficient notice to the Settlement Class, and was reasonably

27

28  [1]  Capitalized terms herein have the meaning provided in the Settlement Agreement.

2

Final Approval Order                                                    Case No. 09-cv-0350

1  calculated to communicate actual notice of the litigation and the proposed settlement to the Class.

2  Under these circumstances, it is fair and reasonable to make the Agreement and its release of

3  claims binding on all Class members whether or not they actually received notice of this action

4  and the proposed Settlement. The Court finds that the Settlement and the Court's granting of the

5  Final Approval Order and Judgment of Dismissal is binding on all Class members, whether or not

6  they actually received actual notice of the Settlement, the Final Approval Order, or the Judgment

7  of Dismissal.

8       8.    The Court finds the Settlement Agreement to be fair and made in good faith.

9  Further the Court finds that there has been no collusion between the parties in reaching the

10  Settlement Agreement.

11      9.    The Court hereby finds that the Settlement is fair, reasonable, and adequate and is

12  in the best interests of the Settlement Class. It approves the Settlement Agreement submitted by

13  the Parties and orders the Parties to perform their obligations pursuant to the Settlement

14  Agreement.

15      10.   The Court finds that for purposes of the Settlement the requirements for

16  certification of a Settlement Class pursuant to Fed. R. Civ. Proc. 23 are satisfied. The Court finds

17  that: (i) the Class is so numerous that joinder of all members is impracticable; (ii) there are

18  questions of fact or law common to the class; (iii) such common questions predominate over

19  questions affecting only individual members; (iv) the claims of the Class Representatives are

20  typical of the claims of the Class; (v) the Class Representatives will fairly and adequately protect

21  the interests of the Class; and (vi) a class action is an appropriate method to the fair and efficient

22  adjudication of the controversy.

23      11.   The Settlement Class as defined in the Settlement Agreement and the Preliminary

24  Approval Order is adjudged a final and permanent class for purposes of this Action, as well as for

25  the Final Approval Order and Judgment of Dismissal.

26      12.   The Agreement provides for payment of up to $ 1,214,000.00 to Class Counsel for

27  Attorneys' Fees, costs, and expenses incurred in prosecution of this Action.  Payment to Class

28  Counsel in the amount of _____ is hereby approved as reasonable

1  compensation for Class Counsel's work, which has resulted in a substantial benefit to the

2  Settlement Class and created Settlement Benefits that will be provided to Settlement Class

3  Members. No other Attorneys' Fees, expenses, or costs shall be paid by Defendant.

4       13.    The Agreement provides for an incentive payment of up to $36,000 to the Class

5  Representatives in settlement of their claims and in recognition of their services. A payment in the

6  amount of _____ for the Class Representatives collectively, to be divided in six (6) equal

7  parts to David Levin, Loren S. Siegel, Gary Cohen, Marie Cohen, Mark Winkler, and Jennie

8  Lapointe, is approved as fair and reasonable. The Class Representatives shall not be entitled to any

9  other payment under the Agreement.

10      14.    Any objections that were filed, timely or otherwise, have been considered and are

11 overruled. Therefore, all Class Members who have not successfully opted out are bound by this

12 Final Approval Order. They are further bound by the terms of the Settlement Agreement,

13 including but not limited to its Release provisions, as described in Sections 1.40 and 4 of the

14 Settlement Agreement.

15      15.    The Class Representatives and Class members hereby release Citibank and each

16 and every Released Party from all Released Claims as defined in Section 1.40 of the Settlement

17 Agreement.

18      16.    A Judgment of Dismissal in the form attached to the Settlement Agreement as

19 Exhibit G shall be entered herewith which shall dismiss this Action with prejudice and without

20 costs (other than what has been provided for in the Agreement). By this Judgment of Dismissal,

21 the Court dismisses the claims of the Class Representatives and the Class members against

22 Citibank and the Released Parties with prejudice and without costs.

23      17.    Notice of entry of this Order and the ensuing Judgment of Dismissal has been given

24 to Class Counsel on behalf of the Settlement Class. It shall not be necessary to send notice of entry

25 of this Final Approval Order or ensuing Judgment of Dismissal to individual members of the

26 Settlement Class.

27      18.    Class Representatives and all Class members (except those, if any, listed on Exhibit

28 A hereto) are permanently barred and enjoined from commencing, prosecuting, or continuing any

4

1  of the Released Claims, as described in Sections 1.40 and 4.3 of the Settlement Agreement,

2  against Citibank or any Released Party, either directly, representatively, derivatively, or in any

3  other capacity, whether by a complaint, counterclaim, defense, or otherwise, in any local, state, or

4  federal court, or in any agency or other authority or forum wherever located.

5      19.     After entry of the Judgment of Dismissal, the Court shall retain jurisdiction over

6  the construction, interpretation, implementation, and enforcement of the Agreement in order to

7  supervise and adjudicate any disputes arising from the disbursement of settlement benefits.

8      20.     In the event that (i) the Settlement Agreement is terminated pursuant to its terms; or

9  (ii) the Settlement Agreement, Preliminary Approval Order, Final Approval Order, or Judgment of

10  Dismissal are reversed, vacated, or modified in any material respect by this or any other court,

11  then (a) all orders entered pursuant to the Settlement Agreement shall be vacated, including this

12  Final Approval Order; (b) the instant action shall proceed as though a Settlement Agreement had

13  never been reached; and (c) no reference to the prior Settlement Agreement, or any documents

14  related thereto, shall be made for any purpose; provided, however, that if the Parties to the

15  Settlement Agreement agree to appeal an adverse ruling jointly and the Settlement Agreement,

16  Final Approval Order, and Judgment of Dismissal are upheld on appeal in all material respects,

17  then the Settlement Agreement, Final Approval Order, and Judgment of Dismissal shall be given

18  full force and effect. In the event of (i) or (ii) in this Paragraph 20, all parties reserve all of their

19  rights existing prior to the execution of the Settlement Agreement, and the doctrines of res judicata

20  and collateral estoppel shall not be applied.

21      21.     Neither the Settlement Agreement, this Order, nor any of their provisions, nor any

22  of the documents (including but not limited to the parties' Memorandum of Understanding, drafts

23  of the Settlement Agreement, the Preliminary Approval Order, the Final Approval Order, and the

24  Judgment of Dismissal), negotiations, or proceedings relating in any way to the Settlement, shall

25  be construed as or deemed to be evidence of an admission or concession of any kind of any

26  person, and shall not be offered or received in evidence, or subject to discovery, in this or any

27  other action or proceeding except in an action brought to enforce its terms or except as may be

28  required by law or court order.

5

1      THUS DONE AND SIGNED THIS ___ DAY OF _____, 2013 AT SAN

2 FRANCISCO, CALIFORNIA.

3

4                                 _____
                                         JUDGE MAXINE CHESNEY

Final Approval Order                                               Case No. 09-cv-0350

# Exhibit A to
# Final Approval Order

**IN RE CITIBANK HELOC REDUCTION**

**LITIGATION**

Requests for Exclusion

| Epiq Tracking Number | First Name 1 | Middle 1 | Last Name 1 | Frist Name2 | Middle 2 | Last Name 2 |
|---|---|---|---|---|---|---|
| 66869 | BARRY | W | HODGES | | | |
| 29477 | PATRICK | J | BUDRONIS | | | |
| 150327 | DEAN | S | CAMPBELL | | | |
| 111100 | WILLIAM | P | TAYLOR | | | |
| 103521 | SUSAN | D | LOVELESS | DONALD | S | LOVELESS |
| 85359 | ROBERT | C | CUTRIGHT | DIANE | M | CUTRIGHT |
| 136635 | VAHE | | HOVANESSIAN | ANNIE | P | HOVANESSIAN |
| 156716 | NAI | WING | TAM | | | |
| 75112 | STEVEN | M | DEVER | | | |
| 111364 | JAMES | P | CUNNINGHAM | | | |
| 15291 | ROBERT | | ALLISON | NICOLE | | ALLISON |
| 98676 | MONICA | | KEMBLOWSKI | | | |
| 74812 | SADETA | | KRIJESTORAC | | | |
| 134963 | RONALD | P | ZIRGES | MARGARET | A | ZIRGES |
| 139697 | LAURA | | JACKSON | | | |
| 120924 | JOHN | J | ENGELHARDT | MARY | L | ENGELHARDT |
| 86868 | LAWRENCE | | TWEDT | DE | ETTA | TWEDT |
| 151503 | MAURICE | S | KARPMAN | | | |

# Exhibit G

1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

IN RE CITIBANK HELOC REDUCTION
LITIGATION

No.  09-CV-0350-MMC

**CLASS ACTION**

**FINAL JUDGMENT OF DISMISSAL**

The Honorable Maxine M. Chesney

8
9
10

Defendant Citibank, N.A. ("Defendant"), having settled with the Settlement Class and the Court having entered its Order Granting Final Approval of Settlement and Directing Entry of Judgment,

11

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

12
13

1.      All claims of all members of the Settlement Class against Defendant, as defined in this Court's Final Approval Order, are dismissed with prejudice;

14
15
16

2.      All claims of named plaintiffs, David Levin, Loren S. Siegel, Gary Cohen, Marie Cohen, and Mark Winkler, and Jennie LaPointe against Defendant are dismissed with prejudice;

17
18
19
20

3.      Notwithstanding the dismissal of claims in the preceding paragraphs, the Court shall retain jurisdiction over the construction, interpretation, implementation and enforcement of the Settlement Agreement and to supervise and to adjudicate any disputes arising from the disbursement of settlement benefits; and

21
22
23
24

4.      All members of the Settlement Class, as defined in this Court's Final Approval Order, are bound by the Release of Claims set forth in the parties' Settlement Agreement and are hereby permanently enjoined and restrained from filing or prosecuting any Released Claim against any Released Party as those terms are defined the Parties' Settlement Agreement.

25
26
27
28

1    THUS DONE AND SIGNED THIS ___ DAY OF _____, 2013 AT SAN

2  FRANCISCO, CALIFORNIA.

3                                            _____
                                             JUDGE MAXINE CHESNEY

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

# Exhibit H

Sean Reis (SBN 184044)
EDELSON MCGUIRE LLP
30021 Tomas Street, Suite 300
Rancho Santa Margarita, CA 92688
949-459-2124 (phone)
949-459-2123 (fax)
sreis@edelson.com

*Attorneys for Plaintiffs*
(Additional counsel appear on the signature page)

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| **IN RE CITIBANK HELOC REDUCTION LITIGATION** | Case No. C-09-0350 MMC<br><br>**FOURTH AMENDED / CONSOLIDATED CLASS ACTION COMPLAINT FOR:**<br><br>**1) Violation of TILA and Regulation Z;**<br>**2) Breach of Contract;**<br>**3) Breach of Implied Covenants;**<br>**4) Violation of Cal. Bus. & Prof. Code § 17200, et seq.; and**<br>**5) Violation of Cal. Bus. & Prof. Code § 17200, et seq.**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Hon. Maxine M. Chesney |

David Levin, Loren S. Siegel, Gary and Marie Cohen ("the Cohens"), Mark Winkler and Jennie Lapointe (collectively "Plaintiffs"), for their Fourth Amended / Consolidated Complaint ("Complaint"), allege as follows upon information and belief, based upon, *inter alia*, investigation conducted by and through their attorneys, except as to those allegations pertaining to Plaintiffs and their counsel personally, which are alleged upon personal knowledge:

**Introduction**

1.     This case is about Defendant Citibank, N.A.'s ("Citibank") illegal and improper reduction and suspension of credit limits on home equity lines of credit ("HELOCs") across the country in a thinly-veiled, unlawful attempt to limit its exposure to the risk of collapse in the United States housing market and to rid itself of below-market interest rate loans.  Citibank broke its promises to the homeowners that were depending on their HELOC loans and broke the law in the process.

2.     Citibank originates, services, and owns billions of dollars worth of prime and subprime mortgages, including the HELOCs at issue in this Complaint.  Each member of the proposed class had a HELOC that Citibank either unfairly and unlawfully reduced or suspended without justification.  Plaintiffs bring this class action on behalf of themselves and the putative class for damages and attorneys' fees under the Truth-in-Lending Act (15 U.S.C.§1640(a)) ("TILA"), damages for breach of contract and breach of the implied covenants of good faith and fair dealing, and restitution and injunctive relief under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17203 ("UCL").

**Nature of the Claim**

3.     As early as April 2008, Citibank began sending form letters to thousands of homeowners indicating that their HELOC loans were being summarily decreased or suspended because of a purported decline in their home values.  Many of these homes had not actually suffered a significant decline in value, but Citibank nevertheless suspended or reduced the credit limits on the corresponding HELOCs.  For instance, the letter Citibank sent to Plaintiff Levin stated:

We have determined that *home values in your area, including your home value, have significantly declined*.  As a result of this decline, *your home's value no longer supports the current credit limit for your home equity line of credit*. . . . This reduction in your credit limit will remain in effect until the value in your home has been sufficiently restored.  In the future, if you believe that market conditions in your home's area are improving and you wish to request that your credit limit be increased, you must call us . . . .

(emphasis added).  Citibank never informed Levin how it determined Levin's home value had significantly declined.  Instead, Citibank informed Levin that if he sought to reinstate his credit limit he would have to obtain a formal appraisal at his own expense.

4.     On information and belief, for the purposes of the suspensions and reductions of its HELOCs, Citibank made value determinations through dubious automated valuation models ("AVMs"), which are computerized econometric models tied to a database of information related to home values.  These self-serving AVM's were specifically tailored to serve Citibank's unlawful purpose of manufacturing a basis to decrease or suspend homeowners' HELOC loans to protect Citibank's own financial interests associated with the downside risk of the declining housing market and to get rid of the low interest rate HELOC loans.  As a result, Citibank sent its suspension and reduction letters to many homeowners whose home value had not declined significantly and reduced the credit limits on the corresponding HELOCs.

5.     On information and belief, the basis of Citibank's letters was an AVM that used unreliable or inaccurate data.  The home loan industry made widespread use of the AVMs in underwriting the loans that led to the current mortgage meltdown.  Indeed, the abuse and manipulation of AVMs to overvalue real estate (in order to justify larger loans and correspondingly larger origination and/or transaction fees) has been widely criticized. AVMs remain just as susceptible to manipulation and gross error now that the major TARP recipients (including Citibank) seek to aggressively reduce their outstanding credit lines.  For example, with respect to Plaintiffs Cohens' home, Citibank's AVM admittedly estimated Cohens' house to be worth $280,000 less than the value stated by Citibank's own appraiser. Citibank's AVM further apparently failed to consider that Plaintiff Winkler had paid off his first

mortgage and owned his home free and clear at the time his HELOC was reduced to $10,000. Indeed, at the time Winkler's HELOC was reduced, it was secured by more than $750,000 in available equity.

6.      Citibank's systematic mass reduction and suspension of its HELOCs was unlawful and deceptive.  Federal regulators have warned financial institutions that it is a direct violation of federal law to "reduce the credit limits of all HELOC accounts in a geographic area in which real estate values are generally declining without assessing the value of the collateral that secures each affected HELOC account."  Citibank's misuse of its secret, self-serving AVMs did not account for individual property characteristics and other critical variables, which prevented Citibank from having a sound factual basis for the HELOC suspensions and reductions and which deprived homeowners of their lawful right to an individual determination of whether their homes had suffered a significant decline in value.

**Parties**

7.      **Plaintiffs David Levin and Loren S. Siegel:** Mr. Levin and Ms. Siegel (the "Levins") are husband and wife and are residents of Oakland, California.  From July 2006 to May 2008, they had a HELOC from Citibank secured by their personal residence. On March 17, 2008, Citibank reduced the credit limit on their HELOC virtually down to his outstanding balance as of that date without any prior notice to them.

8.      **Plaintiffs Gary and Marie Cohen:**  The Cohens are residents of Los Angeles, California.  In May 2006, Citibank originated a HELOC for the Cohens, secured by their personal residence.  On August 10, 2009, Citibank suspended the Cohens' HELOC from future draws.

9.      **Plaintiffs Mark Winkler and Jennie Lapointe:**  Mr. Winkler and Ms. Lapointe (the "Winklers") are husband and wife and are residents of San Diego, California.  In April 2007, Citibank originated a $250,000 HELOC for the Winklers that was secured by their personal residence.  Just one year later, and after they had paid off their first mortgage on the property, Citibank reduced their HELOC to $10,000.

C

10.     **Defendant Citibank, N.A.:** Citibank is a national banking association with its main offices at 3900 Paradise Road, Suite 127, Las Vegas, Nevada 89109.  Citibank is one of the country's largest banks and has offices in this state and throughout the country.

### Jurisdiction and Venue

11.     Citibank is a national banking association whose head offices are in Nevada, and is a citizen of Nevada under 28 U.S.C. § 1348 and *Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303 (2006).  This Complaint alleges claims on behalf of a national class of homeowners who are minimally diverse from Citibank.  On information and belief, the aggregate of these claims exceed the sum or value of $5,000,000.  This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332(d)(2).  This Court further has federal question jurisdiction under 28 U.S.C. § 1331, as the action arises in significant part under Regulation Z of TILA, 15 U.S.C, § 1601 et seq., 12 C.F.R. § 226.5b.  Supplemental jurisdiction over Plaintiffs' state law claims is proper under 28 U.S.C. § 1367.

12.     This Court has personal jurisdiction over Citibank under Cal. Code Civ. Proc. § 410.10 because some of the acts alleged herein were committed, and Plaintiffs incurred their injury, in California (and, specifically, the Northern District of California with respect to Levin).

13.     Venue is also proper before this Court under 28 U.S.C. § 1391(b)(2).

### Intradistrict Assignment

14.     A substantial part of the events that give rise to the claim occurred in the place of the Levins' residence, in Oakland, Alameda County.  Under Local Rules 3-2(c), (d), this civil action should be assigned to the Oakland division of the Northern District of California.

### Allegations as to Levins' Individual Claims

15.     Citibank and the Levins entered into a HELOC agreement in July 2006.  Under the terms of that agreement, Citibank provided the Levins a $144,000 line of credit for personal, family and/or household uses.  Levins' HELOC was secured by a mortgage (as that term is defined under Cal. Civ. Code 2920) on their primary residence.

16.     On March 17, 2008, without any warning whatsoever, Citibank reduced Levins' credit limit by more than $80,000 – to the balance on that date.  On March 18, 2008, Citibank sent a letter to the Levins stating that Citibank had "determined that home values in your area, including your home value, have significantly declined. As a result of this decline, your home's value no longer supports the current credit limit for your home equity line of credit."  Citibank's March 18 letter was Levins' first notice that Citibank had already reduced their credit line the day before.

17.     On or about March 19, 2008 and prior to receiving Citibank's March 18 letter, Mr. Levin wrote two checks drawn from his HELOC account.  Citibank did not honor these checks, causing the payees of these checks to assess "not sufficient funds" fees against Mr. Levin.  Mr. Levin received Citibank's letter on March 21, 2008, only after his checks were declined.

18.     Mr. Levin contacted Citibank by telephone and was informed that Citibank would only consider reinstating the original credit limit to his HELOC if he obtained an appraisal, at his own expense, which indicated his home value has sufficiently recovered.  Citibank did not indicate what valuation would suffice to reinstate the original credit limit on the Levins' HELOC.

19.     The Levins sustained a variety of damages from Citibank's wrongful acts.  Under their HELOC agreement with Citibank, the Levins paid Citibank a $50 annual fee to maintain an account with Citibank.  When Citibank reduced their HELOC's credit limit, it proportionately reduced and diminished the benefit of the bargain the Levins expected to realize from that fee.

20.     Levins' HELOC with Citibank was their primary line of credit.  Citibank's unilateral reduction of the credit limits on Levins' HELOC dramatically lowered the ratio of credit the Levins had available to them to the outstanding balance on that credit.  In turn, on information and belief, Citibank's acts drove up their Credit Utilization Rate, a major component of their credit rating.  Citibank's acts damaged Levins' credit rating and increased the cost of credit to them.

21.     Citibank's reduction of the credit limit forced the Levins to find a replacement home equity line from another lender in May 2008.  In connection with this replacement HELOC, the Levins obtained a home appraisal confirming that their home value had not significantly declined, and in fact had declined by less than 10% since they obtained their original HELOC from Citibank.  The Levins paid substantial closing costs (including fees for home appraisal and

mortgage origination) to obtain their replacement HELOC.  When the Levins paid off and terminated their HELOC with Citibank, Citibank assessed a $434 early termination fee against them.

### Allegations as to the Cohens' Individual Claims

22.     Citibank and the Cohens entered into a HELOC agreement in May 2006.  Under the terms of the agreement, Citibank provided the Cohens a $500,000 line of credit, obtained by the Cohens for personal, family and/or household purposes.  In December 2006, Citibank increased the level of the available credit to $510,000.  The Cohens' first mortgage balance at that time was approximately $610,000.  The Cohens' HELOC was secured by a mortgage (as that term is defined under Cal. Civ. Code 2920) on their primary residence.

23.     In August 2009, the Cohens received a letter from Citibank indicating that it had suspended the Cohens' HELOC from future draws effective immediately.  The letter stated that the suspension was due to the fact that "home values in many areas of the country are declining" and that the "value of [the Cohens'] home has significantly declined."  The letter did not state what the new declined value was, how Citibank determined the new value, what the initial home value at the HELOC origination was, what value was needed for full reinstatement of the HELOC, or any other material information.

24.     The Cohens immediately telephoned Citibank's customer service and requested explanation.  They were told that Citibank's AVM had determined their current home value to be $1,018,000, which represented a substantial decline in value from the original appraisal of $1,650,000 at the time the HELOC was obtained from Citibank.  When the Cohens vigorously disputed this value, Citibank's representative responded that in order for Citibank to even consider reinstatement, the Cohens must order and pay for an on-site appraisal of their home by an appraisal company of Citibank's own choosing.

25.     Gary Cohen then reluctantly called LSI, the appraisal company of Citibank's choosing, to schedule an appraisal for the purposes of challenging the valuation of Citibank's AVM.  The LSI representative stated to Mr. Cohen that the appraisal fee depended upon what

C.

Mr. Cohen believed his home was worth.  Given Mr. Cohen's own estimate that the property was worth over $1 million, the LSI representative informed him that the appraisal fee would be $750.  On information and belief, the standard rate for appraisals was $175 to $350 at the time LSI appraised the Cohen's house.

26.     On August 19, 2009, an LSI appraiser from Santa Ana, California, an area nearly 50 miles away from the subject area, performed a cursory appraisal of the Cohens' home.  His appraisal report showed the property to be valued at $1,300,000 which is approximately $280,000 greater than the value rendered by Citibank's AVM.

27.     The Cohens still believed the LSI appraisal to be unreasonably lower than the market value.  In September 2009, they ordered an appraisal from an independent company, Citywide Valuation Services, Inc. ("CVS").  The CVS appraisal stated that the current market value of the property as of September 21, 2009 was $1,700,000.

28.     The Cohens immediately forwarded the CVS appraisal to LSI and Citibank and demanded reinstatement of their HELOC based on the new market value of the property.  But the Citibank representative assigned to the Cohens' case refused to accept the CVS appraisal and refused to even speak to the CVS appraiser.

29.     Despite the significant disparity between Citibank's AVM and the valuation by Citibank's chosen appraiser, and despite the difference of $680,000 between the AVM and the valuation by the independent appraiser, Citibank has refused to reinstate the Cohens' HELOC. The severe discrepancies in valuation, and Citibank's subsequent refusal to reinstate the Cohen's HELOC, further evidences that Citibank had no sound factual basis to suspend the HELOC in the first place.

30.     Citibank took the above actions despite Regulation Z's provision that allows lenders to suspend HELOCs when the unencumbered equity in the collateral property of the borrower has decreased by 50%.  12 C.F.R. § 226.5(b)(f)(3).  By the time Citibank suspended their HELOC, the Cohens had paid down their first mortgage by nearly $50,000, thereby increasing the available, unencumbered equity by this amount.  The fair market value report

prepared by the independent appraiser further confirmed that the property value had actually increased by $50,000 (from $1,650,000 at the time of the HELOC origination to $1,700,000 at the time of the appraisal). There was no sound factual basis for concluding there had been a "significant decline" in home value warranting the HELOC suspension or Citibank's subsequent refusal to reinstate the line.

31. Citibank's suspension of the Cohens' HELOC denied them access to credit and dramatically increased the ratio of credit the Cohens used to the amount of credit they had available to them. In turn, on information and belief, Citibank's acts drove up the Cohens' Credit Utilization Rate, a major component of their credit rating, thereby damaging their credit rating and increasing the cost of credit available to them. Additionally, the Cohens had to pay $750 to the Citibank appraiser and $175 to the independent appraiser just to prove that Citibank's AVM grossly undervalued their home.

**Allegations as to the Winklers' Individual Claims**

32. In April 2007, the Winklers obtained a first mortgage for approximately $600,000 from Union Bank and a $250,000 HELOC from Citibank, both secured by their home. The Winklers' HELOC was obtained for family, personal, and household purposes, such as home renovations. At the time of the origination of his HELOC, the Winklers' home was worth over $1,000,000.

33. In April 2008, the Winklers learned that Citibank unilaterally reduced their HELOC from $250,000 to $10,000. By that time, their first mortgage was fully paid off and the home was still worth at least $1,000,000. The Winklers believe that Citibank's decision to reduce their HELOC was solely based on a geographic area survey covering home values in the area where the Winklers' home is located, not on an actual assessment of the Winklers' home value or available equity. Had Citibank assessed the Winklers' home, it would have realized that at least $750,000 in unencumbered equity secured the $250,000 HELOC and that there had not been a significant decline in value. Indeed, the Winklers owned their home free and clear, and the equity securing Winklers' HELOC increased by more than $600,000 since they paid off

the first loan.

34.     Upon learning of the reduction of his HELOC, Mr. Winkler promptly contacted Citibank and requested reinstatement of his HELOC both over the phone and in writing. Citibank refused to reinstate the HELOC.

35.     By reducing Winklers' HELOC by 96%, Citibank denied the Winklers access to $240,000, thereby preventing them from enjoying the benefits of their contractual relationship with Citibank.  Upon information and belief, Citibank stopped short of completely freezing Winklers' HELOC so that it could falsely justify charging fees and penalties associated with the HELOC.  Instead, Citibank left them with a paltry $10,000 available credit secured by more than $750,000 in unencumbered equity.

36.     After Citibank reduced and refused to reinstate their HELOC, the Winklers were left with two alternatives:  they could (1) keep the significantly reduced HELOC, or (2) close the HELOC and obtain a replacement at a significantly higher interest rate.  The Winklers chose the latter alternative.  In connection with closing the HELOC, Citibank charged the Winklers a $191.00 early termination fee.  Mr. Winkler asked Citibank to waive the fee, but Citibank refused to do so.  Because the Winklers did not want to incur additional fees, costs, or other burdens associated with maintaining the significantly reduced HELOC, the Winklers were forced to close their HELOC and pay the early termination fee.

37.     At bottom, the Winklers entered into a contractual relationship with Citibank for, among other things, a $250,000 HELOC.  Citibank essentially froze Winklers' HELOC when it reduced the available credit by 96%.  The reduction was unwarranted since the Winklers owed nothing on their home, which was worth at least $1,000,000 at the time of the reduction. Despite the reduction, Citibank required the Winklers to maintain the HELOC, along with its associated burdens, or alternatively, to pay $191.00 early termination fee to close the HELOC.

### Class Certification Allegations

38.     Plaintiffs seek certification of a class under Federal Rule 23.

39.     **Definition of the Class:** Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs bring this Complaint against Citibank on behalf of a class (the "Class") of all persons in the United States from January 1, 2008 to January 31, 2012 whose Citibank HELOC accounts were suspended or reduced based on a claim by Citibank of collateral deterioration regarding the value of the property securing the HELOC. Excluded from the Class are any judge presiding over this case and the judge's immediate family members.

40.     **Numerosity:** The exact number of the members of the Class is unknown and is not available to Plaintiffs, but it is clear that individual joinder is impracticable. Citibank sent its generic credit line freeze letters (or substantially similar letters) to thousands of HELOC borrowers, and a substantial percentage of the recipients of these letters fall into the definition of the Class.  Class Members can easily be identified through Citibank's records.

41.     **Commonality:** Common questions of fact and law exist as to all members of the Class and predominate over the questions affecting only individual members. These common questions include:

(a)     What were Citibank's criteria for reducing the credit limits on its HELOCs;

(b)     What were Citibank's methods for valuing the homes securing the HELOCs which credit limits it reduced;

(c)     Whether Citibank's reduction of, and/or failure to reinstate, the credit limits on the HELOCs violated Regulation Z and/or TILA;

(d)     Whether Citibank's reduction of, and/or failure to reinstate, the credit limits breached the terms of the HELOC agreements;

(e)     Whether Citibank's reduction of, and/or failure to reinstate, the credit limits on the HELOCs was unfair and/or illegal and constituted a violation of California's UCL;

(f)     Whether an appraisal fee charged by the appraisal company of Citibank's choosing was unreasonably excessive and if yes, whether such an excessive fee meant to deter or did deter the appeals of the HELOC suspensions and reductions;

(g)     Whether Citibank's reduction of, and/or failure to reinstate, the credit limits on the HELOCs diminished the benefit of the bargain its customers derived from paying annual fees to maintain their HELOC accounts;

(h)     Whether Citibank's reduction of, and/or failure to reinstate, the credit limits on

the HELOCs while assessing and collecting annual account fees was unfair and/or illegal and constituted a violation of California's UCL; and

(i) Whether Plaintiffs and the Class are entitled to relief, and the nature of such relief.

42. **Typicality:** Plaintiffs' claims are typical of the claims of other members of the Class, as Plaintiffs and other members sustained damages arising out of the wrongful conduct of Citibank, based upon the same transactions that were made uniformly to Plaintiffs and other members of the Class. The California laws under which Plaintiffs' claims arise do not conflict with the laws of any other state in any material way.

43. **Adequate Representation:** Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class, and have retained counsel who are competent and experienced in complex class actions. Plaintiffs have no interest antagonistic to those of the Class, and Citibank has no defenses unique to Plaintiffs.

44. **Policies Generally Applicable to the Class:** This class action is also appropriate for certification because Citibank has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole. The policies of Citibank challenged herein apply and affect members of the Class uniformly, and Plaintiffs' challenge of these policies hinges on Citibank's conduct, not on facts or law applicable uniquely to Plaintiffs.

45. **Predominance and Superiority:** This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, as joinder of all members is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Citibank's actions. It would be virtually impossible for the individual members of the Class to obtain effective relief from the misconduct of Citibank. Even if members of the Class themselves could sustain such individual litigation, it would still not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class

action presents far fewer management difficulties and provides the benefits of single

adjudication, economy of scale, and comprehensive supervision by a single Court.  Economies

of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

**Count I: Violation of TILA and Regulation Z**
**(Actual and Statutory Damages on behalf of all Plaintiffs and the Class)**

46.     The above allegations are incorporated by reference.

47.     The Truth-in-Lending Act ("TILA") and its implementing regulation (Regulation

Z) restrict Citibank from changing any of the terms of a mortgage or HELOC, including the

credit limit.  15 U.S.C. § 1647(c)(1); 12 C.F.R. § 226.5b(f)(3).  The exception relevant here

permits Citibank to reduce the credit limits on its HELOCs "during any period in which . . .

[t]he value of the consumer's principal dwelling which secures any outstanding balance is

significantly less than the original appraisal value of the dwelling."  15 U.S.C. § 1647(c)(2)(B);

12 C.F.R. § 226.5b(f)(3)(vi)(A).

48.     The Federal Reserve Board Official Staff Commentary to Regulation Z ("the

Official Staff Commentary") defines "significant decline" for purposes of § 226.5b(f)(3)(vi)(A)

as a decline in home value so that "the initial difference between the credit limit and the

available equity (based on the property's appraised value . . . ) is reduced by fifty percent."  The

Official Staff Commentary further states that Regulation Z "does not require a creditor to obtain

an appraisal before suspending credit privileges [but] a significant decline must occur before

suspension can occur."  On August 26, 2008, the Office of Thrift Supervision issued official

guidance that warned it would violate Regulation Z to "*reduce the credit limits of all HELOC*

*accounts in a geographic area in which real estate values are generally declining without*

*assessing the value of the collateral that secures each affected HELOC account.*"

49.     Before reducing the limits of its customers' HELOCs, Citibank had an obligation

to have a sound factual basis for concluding that the value of the homes had actually declined

significantly.  *See* 15 U.S.C. § 1647(c)(2)(B); 12 C.F.R. § 226.5b(f)(3)(vi)(A); FDIC June 26,

2008 Financial Institution Letter (FIL-58-2008), *Home Equity Lines of Credit, Consumer*

*Protection and Risk Management Consideration When Changing Credit Limits and Suggested*

1
2
*Best Practices*, 2. Instead, on information and belief, Citibank knowingly and intentionally
3
used certain valuation methods that drastically devalued the Class members' properties in order
4
to justify the blanket suspensions of their HELOCs. In the Cohens' case, Citibank understated
5
the value of their property by approximately $280,000 when compared to Citibank's own
6
appraisal, and by nearly $700,000 if compared to the independent market value appraisal.

7
      50.     Additionally, because a "significant decline" requires a consideration of the
8
property's available (unencumbered) equity, Citibank had an obligation to calculate and
9
consider the available equity in each property in order to determine whether the available equity
10
had suffered a significant decline within the meaning of Regulation Z. *See* Official Staff
11
Commentary to 12 C.F.R. 226.5b(f)(3)(vi), Section 6. Such a calculation necessarily required
12
Citibank to determine the existence of any other mortgages or encumbrances on the property
13
and, if so, whether the balance of any other such mortgages had actually decreased since the
14
initial creation of the HELOC. Citibank failed to make this required inquiry, as evidenced by
15
the fact that it reduced the Winkers' HELOC to $10,000 despite the fact that the Winkers had
16
paid off their first mortgage and owned their million dollar home free and clear at the time.

17
      51.     Citibank violated TILA and Regulation Z by suspending and reducing the Class
18
members' HELOCs without first determining the level of available equity in their property,
19
which has not significantly declined within the meaning of Regulation Z, due to a significantly
20
higher home value than initially determined by Citibank's AVMs, and due to the Class
21
members paying down the balances on their first mortgages. Upon information and belief,
22
Citibank intentionally ignored or disregarded this information before it chose to suspend the
23
Class members' HELOCs and when deciding whether to reinstate suspended or reduced
24
HELOCs.

25
      52.     Indeed, the appraisal the Levins obtained in connection with their replacement
26
HELOC indicates that their home value had declined only marginally – not enough to justify a
27
reduction of their HELOC. Likewise, the independent appraisal obtained by the Cohens
28
showed that their home value has actually gone up as compared to the value at the HELOC

origination. Finally, the Winklers' home value did not decline at all, and by paying off their

$600,000 primary mortgage they substantially increased the equity in their home. Citibank's

suspension or reduction of Plaintiffs HELOCs, and subsequent failure to reinstate them raises

three implications:

> (a)     Citibank's AVMs are inherently flawed because they undervalue individual properties, and cannot be used to justify reductions of the HELOCs;

> (b)     Citibank failed to conduct an individual inquiry, or consider current mortgage balances in determining whether a specific home had suffered a significant decline in value; and

> (c)     Citibank ignored subsequent higher valuations obtained through the AVMs or actual appraisals, which confirmed that homeowners' home values were no longer suffering from a substantial decline, or, indeed, that they had never suffered a substantial decline.

53.     On information and belief, Citibank 1) used inaccurate self-serving AVMs to reduce the credit limits on the Class members' HELOCs, failed to continue to monitor the value of the Class members' homes, and insisted that the Class members obtain formal appraisals to reinstate their HELOCs and/or 2) used inherently faulty AVMs that undervalued the Class members' home to justify the reduction of the credit limits on the Class member's HELOCs.

54.     Finally, the Official Staff Commentary to Regulation Z, 226.5b(f)(3)(i), provides that a bank may not impose "'triggering events' or responses that the regulation expressly addresses in a manner different from that provided in the regulation." Namely, "a contract cannot contain a provision allowing the creditor to freeze a line due to an insignificant decline in property value since the regulation allows that response only for a significant decline." *Id.*

55.     In direct violation of this provision, Citibank unlawfully suspended the Class members' HELOCs in response to insignificant declines in home values or where the value of the underlying property had not declined at all (in the Cohens' case, the home value has increased by $50,000 from the time of the HELOC origination). Alternatively, the value of the homes securing the HELOCs for Plaintiffs and other Class members was no longer in a significant decline from the original valuation, and Citibank failed to reinstate their credit limits.

56.     Citibank's reduction of and/or refusal to reinstate the credit limit for Plaintiffs' and other Class members' HELOCs violated and continues to violate TILA and Regulation Z.

57.     Citibank's violations of TILA and Regulation Z damaged Plaintiffs and the other Class members.  These damages include the denial of the full use of the bargained-for benefit of the HELOCs, early termination fees, appraisal fees, replacement HELOC closing costs, the increased price of credit, adverse effects on credit scores, the lost benefit of the bargain on annual account fees, and "not sufficient funds" fees.

58.     Plaintiffs, on their own behalf and behalf of the other Class members, seek actual damages under 15 U.S.C. § 1640(a)(1), statutory damages under 15 U.S.C. § 1640(a)(2)(B), and costs of the action, together with reasonable attorneys' fees under 15 U.S.C. § 1640(a)(3).

### Count II: Breach of Contract
### (on behalf of all Plaintiffs and the Class)

59.     The above allegations are incorporated by reference.

60.     Plaintiffs and the other Class members obtained HELOCs from Citibank.  The terms of these HELOC agreements constitute a contract between the Class members and Citibank.

61.     The HELOC agreements contain a term which purports to provide Citibank the discretion to reduce the credit limit "during any period in which . . . the value of the [home securing the HELOC] declines significantly below the [home's] appraised value for purposes of the Account."  Citibank drafted the terms of the HELOC agreements, and any ambiguity in the phrase "declines significantly" must be strictly construed against Citibank.

62.     Plaintiffs and the other Class members performed under their HELOC agreements with Citibank and made all payments due to Citibank under the HELOC agreements.

63.     The credit limit under the Class members' HELOC agreements was a material term of the contract between the Class members and Citibank.  Citibank materially breached the terms of the HELOC agreements by reducing the credit limit for Plaintiffs' and other Class members' HELOCs because their home value did not decline significantly.  Alternatively, Citibank materially breached the terms of the HELOC agreements by failing to reinstate the credit limits for

Plaintiffs' and other Class members' HELOCs after the value of the homes securing the HELOCs was no longer in a significant decline and/or when Citibank became aware or should have become aware that there was not a then-present significant decline in value.

64.     To the extent that any of the Class members' HELOCs contain any term purporting to allow Citibank to unilaterally reduce the credit limit of TILA Class members without complying with TILA and Regulation Z, such terms are void and violate public policy.

65.     Citibank's breach of contract damaged Plaintiffs and the other Class members. These damages include the denial of the full use of the bargained-for benefit of the HELOCs, early termination fees, appraisal fees, replacement HELOC closing costs, the increased price of credit, adverse effects on credit scores, the lost benefit of the bargain on annual account fees, and "not sufficient funds" fees.

66.     Plaintiffs, on their own behalf and behalf of the other Class members, seek damages for Citibank's breach of contract, as well as interest, attorneys' fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

### Count III:  Breach of Implied Covenant of Good Faith and Fair Dealing
### (On behalf of the Cohens and the Class)

67.     The above allegations are incorporated by reference.

68.     The Cohens and the other Class members obtained HELOCs from Citibank.  The terms of these HELOC agreements constitute a contract between the Class members and Citibank.

69.     Implied in the terms of each of these HELOC Agreements was a covenant of good faith and fair dealing.  This implied covenant prevents Citibank from engaging in conduct, and exercising its discretion, in a manner that frustrates the Class members' rights to the benefits of the contracts or that would injure the right of the Class members to receive the benefits of their HELOC agreements.

70.     The credit limit, and the process of appealing the suspensions and reductions in the credit limit by Citibank, were material terms of the Class members' HELOC agreements.

Citibank breached the implied covenant of good faith and fair dealing by wrongfully exercising

its discretion to require that all appeals be initiated by ordering an appraisal from a single

appraisal company, Lender Services, Inc. ("LSI"), which, in turn, charged the Class members an

excessive fee for the appraisal of their properties and quoted the fee depending on the

homeowners' own estimate of their respective home values. Such an excessive fee was

substantially higher than the industry standard appraisal fee and was not refundable by Citibank

and/or LSI. Upon information and belief, this non-refundable excessive fee set by LSI, the sole

appraisal company approved by Citibank, deterred many HELOC borrowers from appealing

Citibank's suspensions and reductions of their HELOCs.

71.     Upon information and belief, Citibank's arrangement with LSI was designed to

discourage HELOC borrowers from seeking reinstatement of their suspended or reduced

HELOCs. Citibank wrongfully and in bad faith exercised its discretion under the HELOC

agreements in a manner that constituted a breach of the implied covenant of good faith and fair

dealing, and its decisions and actions were designed to frustrate the Class members' right to

receive the full benefits of their HELOC agreements.

72.     Citibank's breach of the implied covenant of good faith and fair dealing caused

the Cohens and other Class members to incur damages. These damages occurred in the form of

the Class members being denied the full use of their HELOCs, excessive appraisal fees, the

increased price of credit, adverse effects on credit scores, loss of interest, and other damages.

73.     The Cohens, on their own behalf and on behalf of the other Class members, seek

damages for Citibank's breach of the implied covenant of good faith and fair dealing, plus

reinstatement of the HELOCs that were suspended or reduced in breach of the implied

covenants, interest, attorneys' fees, and costs in an amount to be determined at trial.

### Count IV: Violation of California's UCL, Cal. Bus. & Prof. Code § 17200
### (on behalf of all Plaintiffs and the Class)

74.     The above allegations are incorporated by reference.

75.     Citibank's reduction of and/or failure to reinstate the original credit limits for

Plaintiffs and other Class members' HELOCs violated TILA and Regulation Z. Citibank sent a form letter to each of the Class members that stated the suspension or reduction of the credit limits was due to the significant decline in the value of the homes that secured the HELOCs.

76. Citibank's form letters were deceptive and untrue because they were based on AVMs that recklessly or intentionally undervalued the homes securing the Class members' HELOCs. On information and belief, Citibank either intentionally or recklessly used AVMs that did not have adequate safeguards to ensure their integrity or accuracy to falsely justify reducing Plaintiffs' and other Class members' HELOC limits. Moreover, Citibank's misuse and/or mishandling of these AVMs violated TILA and Regulation Z inasmuch as these particular AVMs were not sufficient, reliable, or adequate grounds to justify Citibank's reduction of the HELOC limits.

77. In light of Citibank's actions, its reduction of and/or failure to reinstate the Class members' HELOC limits was unfair because it caused a substantial injury to consumers and competition that was not outweighed by any countervailing benefits to consumers or to competition and was not an injury the consumers themselves could reasonably have avoided. Moreover, Citibank's reduction of and/or failure to reinstate the Class members' HELOC limits offends public policy and/or violates the policy or spirit behind TILA, Regulation Z, Title XI of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, and the UCL, is oppressive and unscrupulous, and threatens or harms competition in the post-bust HELOC market.

78. These unlawful, deceptive, and unfair acts and practices are unfair competition in violation of the UCL. Citibank's violations of the UCL caused Plaintiffs and the other Class members injury in fact, through lost money and property.

79. Citibank's violations of the UCL damaged Plaintiffs and the other Class members, as Citibank obtained money and/or property that rightfully belonged to Plaintiffs and the Class members, including the lost benefit of the bargain on annual account fees, and lost use of the funds available for credit.

80. Plaintiffs, on their own behalf and behalf of the other Class members, seek

restitution of any money or property obtained by Citibank from Plaintiffs and the Class members through such unfair competition under the UCL (Cal. Bus. & Prof. Code § 17203), as well as interest, attorneys' fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5. Plaintiffs further seek injunctive relief in the form of reinstatement of all HELOCs improperly suspended or reduced by Citibank in violation of TILA and Regulation Z.

**Count V: Violation of California's UCL, Cal. Bus. & Prof. Code § 17200**
**(on behalf of the Levins and the Class)**

81. The above allegations are incorporated by reference.

82. The Levins and the other Class members obtained HELOCs from Citibank under the terms of the HELOC agreements. According to these HELOC agreements, the Levins and the other Class members paid Citibank an annual fee to maintain their HELOC accounts. When Citibank reduced their credit limits, it proportionately diminished the benefit of the bargain associated with that fee.

83. On information and belief, Citibank has used AVMs to justify its reduction of the credit limits for the Levins and other Class members' HELOCs. On information and belief, Citibank violated TILA and Regulation Z and breached the implied covenant of good faith and fair dealing in their HELOC agreements by either intentionally or recklessly using AVMs that they knew or should have known lacked adequate safeguards to ensure their integrity or accuracy to justify reducing the Levins' and other Class members' HELOC limits. Citibank's use of AVMs deprived the Levins and other Class members of the benefit of the bargain associated with Citibank's annual fee.

84. The imposition and failure to refund the annual fee was unfair because Citibank's reduction of Levins' and other Class members' HELOC limits and use of AVMs deprived them of the benefit of the bargain associated with Citibank's annual fee. This caused a substantial injury to consumers and competition that was not outweighed by any countervailing benefits to consumers or to competition and was not an injury the consumers themselves could reasonably have avoided. Moreover, Citibank's imposition and failure to refund the annual fee was premised on a violation

of TILA and Regulation Z and offends public policy and/or violates the policy or spirit behind TILA, Regulation Z, Title XI of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, and the UCL, is oppressive and unscrupulous, and threatens or harms competition in the post-mortgage bust market for HELOCs.

85.     These unfair acts and practices constitute unfair competition in violation of the UCL.

86.     Citibank's violations of the UCL damaged the Levins and the other Class members. Citibank's violations of the UCL caused the Levins and the other Class members injury in fact, through lost money and property, including the lost benefit of the bargain associated with Citibank's annual account fees.

87.     The Levins, on their own behalf and behalf of the other Class members, seek restitution of any money or property gained by Citibank from the Levin and the other Class members through such unfair competition under the UCL (Cal. Bus. & Prof. Code § 17203), as well as interest, attorneys' fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5. The Levins further seek injunctive relief in the form of reinstatement of all HELOCs improperly suspended or reduced by Citibank in violation of TILA and Regulation Z.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court enter judgment and orders in their favor and against Citibank as follows:

(a)     Certifying the action as a class action and designating Plaintiffs and their counsel as representatives of the Class;

(b)     Awarding statutory damages, actual damages, attorneys' fees, and costs under 15 U.S.C. § 1640(a)(2)(B) for the Class on Count I;

(c)     Awarding actual damages for the Class on Count II, including damages for denial of the full use of the bargained-for benefit of the HELOCs, damages for adverse effects on credit scores, early termination fees, appraisal fees, replacement HELOC closing costs, the increased price of credit, the lost benefit of the bargain on annual account fees, and "not sufficient funds" fees;

(d)     Awarding actual damages for the Class under Count III, including damages

for denial of the full use of the bargained-for benefit of the HELOCs, damages for adverse effects on credit scores, early termination fees, appraisal fees, replacement HELOC closing costs, the increased price of credit, and "not sufficient funds" fees;

(e)    Restitution on Count IV for all money or property obtained by Citibank from Plaintiffs and the other Class members through Citibank's unfair competition, including annual account fees and lost use of the funds available for credit, as well as reinstatement of all unlawfully suspended or reduced HELOC accounts;

(f)    Restitution for the Class under Count V for all money or property obtained by Citibank from Levin and the other Class members through Citibank's unfair competition, including Citibank's annual account fees, as well as reinstatement of all unlawfully suspended or reduced HELOC accounts;

(g)    Awarding reasonable attorneys' fees for Plaintiffs and their counsel;

(h)    Awarding pre- and post-judgment interest; and

(i)    Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiffs hereby demand a trial by jury of all issues so triable.

Dated: October 31, 2012    DAVID LEVIN, LOREN S. SIEGEL, MARK WINKLER, JENNIE LAPOINTE, and GARY AND MARIE COHEN, on their own behalf and on behalf of all others similarly situated

By:   /s/ Sean P. Reis

Sean Reis (SBN 184044)
EDELSON MCGUIRE LLP
30021 Tomas Street, Suite 300
Rancho Santa Margarita, CA 92688
949-459-2124 (phone)
949-459-2123 (fax)
sreis@edelson.com

Jay Edelson (admitted *pro hac vice*)
Steven l. Woodrow (admitted *pro hac vice*)
Evan M. Meyers (admitted *pro hac vice*)
EDLESON MCGUIRE, LLC
350 North LaSalle Street, Suite 1300
Chicago, IL 60654
Tel: (312) 589-6370
Fax: (312) 589-6378
jedelson@edelson.com
swoodrow@edelson.com
emeyers@edelson.com

James R. Patterson (SBN 211102)
Alisa A. Martin (SBN 224037)
PATTERSON LAW GROUP
402 West Broadway, 29th Floor
San Diego, CA 92101
Tel:   (619) 756-6990
Fax:  (619) 756-6991
jpatterson@pattesonlawgroup.com
amartin@pattersonlawgroup.com

David C. Parisi (SBN162248)
Suzanne L. Havens Beckman (SBN 188814)
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, CA 91403
Tel:  (818) 990-1299
Fax:  (818) 501-7852
dparisi@parisihavens.com
shavensbeckman@parisihavens.com

Gene J. Stonebarger (SBN 209461)
STONEBARGER LAW, APC
75 Iron Point Circle, Suite 145
Folsom, CA 95630
Tel:  (916) 235-7140
Fax: (916) 235-7141
gstonebarger@stonebargerlaw.com

*Counsel for Plaintiffs and the Class*

# CERTIFICATE OF SERVICE

I, Sean P. Reis, hereby certify that on October 31, 2012, I electronically filed the foregoing *Plaintiffs' Fourth Amended / Consolidated Class Action Complaint and Jury Demand* with the Clerk of the Court using the CM/ECF system. Notice of this filing is sent to the following parties by operation of the Court's electronic filing system:

Lucia Nale
Debra Bogo-Ernst
Andrew S. Rosenman
Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606

Christopher P Murphy
Lisa Walgenbach Cornehl
Mayer Brown LLP
350 South Grand Avenue, 25th Floor
Los Angeles, CA 90071-1503

/s/ Sean Reis