# Exhibit 3

Sean P. Reis (SBN 184044)
EDELSON MCGUIRE, LLP
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Telephone: (949) 459-2124
Facsimile: (949) 459-2123
Email: sreis@edelson.com

Jay Edelson (Admitted *Pro Hac Vice*)
Steven L. Woodrow (Admitted *Pro Hac Vice*)
Evan Meyers (Admitted *Pro Hac Vice*)
EDELSON MCGUIRE LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone: (312) 589-6370
Facsimile: (312) 589-6378
Email: jedelson@edelson.com
Email: swoodrow@edelson.com
Email: emeyers@edelson.com

*Counsel for Plaintiffs and the Settlement Class*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE CITIBANK HELOC REDUCTION LITIGATION | No: 09-CV-0350-MMC<br><br>**DECLARATION OF ATTORNEY STEVEN L. WOODROW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |

I, Steven Lezell Woodrow, declare on oath as follows:

1. I am a Partner with the law firm of Edelson McGuire and can testify competently to the information set forth in this Declaration if called upon to do so. The Court granted my application to appear *pro hac vice* in this matter on February 22, 2012. (Dkt. 151.) The Court has appointed me Class Counsel by its Order granting preliminary approval of the class action settlement reached in this case. (Dkt. 173.)

*Investigation Into Banking Industry's HELOC Suspension Practices*

2. The first wave of HELOC suspensions and reductions to have started in 2008 following the sharp decline in the housing market. As a result of these suspensions, our law firm received a flood of calls and other inquiries from HELOC customers nationwide claiming that their bank had improperly suspended their accounts. These interviews expanded into a comprehensive investigation into the HELOC suspension and reduction policies of several major lending institutions across the country, including an investigation into Citibank's practices and policies. As part of this investigation, our firm's attorneys conducted legal research into TILA and its legislative history with a particular focus on HELOC account suspensions and reinstatements, Regulation Z, Official Commentary from the Board of Governors of the Federal Reserve, and regulatory guidance from the Office of the Comptroller of the Currency ("OCC") and persuasive authority from the Office of Thrift Supervision ("OTS") and Federal Deposit Insurance Corporation ("FDIC"). We also issued requests under the Freedom of Information Act regarding customer complaints from major banks and met face-to-face with lawmakers on both sides of the issue to discuss HELOC suspension laws and regulations and the impact of such suspensions on different communities across the country.

3. Throughout the course of our investigation, we interviewed and corresponded with hundreds of HELOC customers, including dozens of Citibank customers, whose accounts had been suspended or reduced. We also received and reviewed thousands of pages of HELOC contracts, financial records, appraisals and other property and income valuations, bank correspondence, letters from members of Congress, HELOC suspension notices, monthly billing statements, and notes of phone conversations and other materials provided by aggrieved homeowners. We then compared

and contrasted the policies and practices of several major banks to determine which banks were complying with TILA, Regulation Z, and their borrowers' HELOC contracts, and which were not.

4. In further support of our investigation, lawyers from our offices collaborated with federal lawmakers and lawmakers from California, Florida, and Illinois, along with other public officials in an effort to share information and call attention to the legal issues involved with unjustified HELOC suspensions and reductions and the lasting impact that such actions can have on unsuspecting homeowners. Jay Edelson from our firm testified at a town hall hearing in Orlando, Florida, hosted by the Florida Senate President Mike Haridopolos, that was devoted to HELOC suspensions. Our firm also took the lead in responding to the Federal Reserve Board of Governors' request for public comment on proposed changes to Regulation Z's HELOC suspension rules and issued FOIA and other requests for information to the Office of the Comptroller of the Currency and other regulatory bodies.

5. As a result of this investigation, our firm was retained to represent the named Plaintiffs in their cases against Citibank, as well as several other homeowners with claims against the country's major HELOC lenders, including JPMorgan Chase Bank, N.A., Wells Fargo Bank, N.A., National City Bank, GMAC Mortgage LLC, and OneWest Bank, F.S.B.

*The Mediation Process*

6. Prior to consolidation of the cases, the Parties engaged in early settlement discussions regarding the general legal landscape of the HELOC litigation as well as each Party's respective views on the underlying lawsuits. Although these discussions did not result in a settlement, they helped establish communication between counsel for the Parties that ultimately proved necessary when negotiating the terms of the Agreement. In May 2010, spurred on by the Court's referral of the *Levin* matter to "Private ADR", the Parties began discussing settlement in earnest. At the Court's direction, the Parties ultimately agreed to schedule mediation with the Honorable Edward Infante (ret.). Counsel for the parties met prior to the mediation to discuss documents and other information the Plaintiffs would need to obtain a meaningful understanding of Citibank's HELOC policies and operations prior to engaging in formal negotiations.

7. In November 2010, following the Court's order consolidating the cases, counsel for the

Parties met in San Francisco with Judge Infante for a full-day mediation session. Judge Infante had served as the mediator in the HELOC litigation involving Wells Fargo, *Hamilton v. Wells Fargo Bank, N.A.*, No. 09-cv-4152-CW (N.D. Cal.), and therefore had unique experience in mediating HELOC class action settlements. The *Hamilton* settlement, which shares several similarities with the instant Agreement, received final approval from Judge Wilken on May 11, 2012.

8. During the mediation session before Judge Infante in this case, the Parties engaged in several hours of arm's-length negotiations. Eventually, the Parties reached an agreement with respect to the general relief to be made available to the Settlement Class. During the several weeks following the mediation, the Parties worked to reduce their settlement framework down to a formal Memorandum of Understanding ("MOU"). Thereafter, the Parties worked to expand the MOU into a formal Agreement. Over the weeks and months that followed, the Parties continued to negotiate specific details such as the scope of the release and the specific language to be used in the class notices and Notice of Right to Request Reinstatement, while finalizing the Agreement.

9. Once the Parties had reached an agreement in principle with respect to relief for the proposed Settlement Class, the Parties continued to negotiate the remaining terms of the Agreement. The Parties participated in several in-person and telephonic negotiations regarding class member incentive awards and attorneys fees. At times, counsel for both Parties conferred separately with Judge Infante regarding the negotiations. Unable to settle those issues, on November 2, 2011, the Parties engaged in a second telephonic mediation session with Judge Infante. After discussing the matter with both sides, Judge Infante made a mediator's proposal with respect to fees, taking into consideration the Party's respective positions, the relief made available to the Settlement Class, and the amount of time put into the case. Both Parties ultimately accepted Judge Infante's proposal as to the total amount of fees and incentive awards.

10. During the several months that followed, the Parties finalized the Agreement. The Court held regular telephone conferences during this time, which proved instrumental in helping the Parties to remain focused and prepare for preliminary approval.

***Information learned through the mediation and discovery***

11. Prior to and during the mediation process Class Counsel received and analyzed hundreds of

pages of formal and informal discovery, along with Citibank's responses to several sets of interrogatories. The Parties also exchanged information on an informal basis regarding the makeup of the Class and the Class Members' claims and damages, along with what type of relief Class Members could feasibly hope to receive. During the settlement process, we further learned that a meaningful percentage of customers who had sought reinstatement were ultimately successful at having their accounts reinstated. This indicated to proposed Class Counsel that Citibank's appeals process had legitimacy and could provide borrowers, subject to certain adjustments, a viable opportunity to successfully appeal Citibank's decisions. We also learned that the appeal success rate has improved over the years as more detailed information regarding the reinstatement has been made available to the borrowers.

12. Finally, we learned through the mediation and discovery that Citibank had made meaningful changes to its HELOC suspension, reduction, and reinstatement practices that were more benefitical to borrowers following the filing of *Levin* lawsuit but prior to the Parties' mediation. One change involved improvements to Citibank's suspension notices, which previously informed borrowers that they could appeal the suspension if they believed that their home had regained some of its lost value. The notices, however, did not inform borrowers that they could appeal immediately if the borrowers disputed that their home values had declined significantly in the first place. Citibank has since revised its suspension notices to indicate that borrowers who don't believe their home values have declined can immediately appeal Citibank's decision. Likewise, Citibank now considers first mortgage pay-downs when calculating the available equity in a customers' house, which arguably goes beyond what is required under Regulation Z and enables more homeowners to successfully appeal the suspension of their HELOCs. Together, these actions have enabled a significantly greater number of customers to successfully appeal the suspension of their HELOCs and have their credit lines restored.

***Settlement Benefits***

13. The Settlement provides substantial relief to the Class, which includes over one hundred thousand Citibank HELOC customers nationwide. As part of the Settlement, Class Members who have already closed their accounts with Citibank will receive a cash payment in the amount of $120

upon filing a claim form. This amount represents a negotiated percentage of the early closure fees that certain former customers incurred when they closed their HELOCs. Additionally, Citibank has, as part of the Settlement, already sent notices to Class members that they may request reinstatement of their HELOCs. Based on our conversations with Class members, a significant percentage of Class Members will respond to the Notice by applying for reinstatement, and a significant portion of borrowers who seek reinstatement will be successful.

*Notice to the Class Members*

14. In strict compliance with the court-approved notice plan, claims administer Epic Consulting caused Notice to be disseminated to the members of the Settlement Class. U.S. mail notice was sent to the last known address in Citibank's records for all Settlement Class Members, which had been updated using the national change of address registry. Citibank has also indicated that it has properly notified the appropriate authorities that notice was sent under the Class Action Fairness Act (CAFA).

15. Epic Consulting also established the settlement website where Class Members can download a claim form, obtain additional information about the terms of the Settlement Agreement, and learn how to file a claim, seek reinstatement of their suspended or reduced HELOCs, and opt-out or object to the settlement.

*The Reaction of Class Members*

16. In the weeks following the dissemination of the Class Notice, our firm has received over 100 telephone, email, mail and fax inquiries from Settlement Class Members requesting information regarding the nature of the underlying lawsuit and the Settlement and seeking advice on what they should do in light of the settlement. Class Counsel has promptly responded to each and every inquiry and spent considerable time addressing Class Members' questions regarding the Settlement. Going forward, our firm will continue to respond to all inquiries from the Class and provide comprehensive assistance to the Class Members.

17. Class Members' reaction to the settlement has been favorable. In addition to the positive feedback received during many of the telephone inquiries, especially once the settlement benefits are fully explained, to-date only 18 Class Members (21 total requests) have submitted timely

requests for exclusion and only three Class Members have filed objections. During our various calls with Class Members, many have indicated they intend to seek reinstatement of their HELOCs. Likewise, to-date over 11% of the total eligible borrowers have filed claims, and other former customers who incurred termination fees have expressed their intent to file claims as well.

*Class Counsel's Opinion of the Settlement*

18. In Class Counsel's opinion, this settlement is fair, adequate, and reasonable. From the onset, this litigation has brought exception relief to Class Members—including after the lawsuits were initiated—to make the policies more favorable to Citibank's customers.

19. Our investigation has shown that reinstatement of suspended HELOCs is at the top of the wish list for most current Citibank customers. We accordingly negotiated an Agreement that prohibits Citibank from changing its current practices to revert to prior policies that were less favorable to its customers. The Agreement further requires Citibank to modify its suspension notices to inform customers of their right to request additional information, such as value required to support reinstatement. This benefit is particularly important because, before the lawsuits were filed, Citibank did not provide such information to borrowers and therefore withheld from borrowers the very information that they would need to know whether to engage in the appeals process. As part of the settlement, Citibank also included a Notice of Right to Seek Reinstatement in the settlement Notice, which has already been disseminated to Class Members. These settlement benefits directly address the chief underlying issues and concerns in Plaintiffs' Complaints.

20. The underlying cases arose from HELOC suspensions that began to occur in the middle of 2008. Our firm therefore initiated Plaintiffs' cases with the understanding that many of the applicable legal issues had been largely untested in the courts. In the absence of a settlement, Plaintiffs face significant procedural hurdles associated with continued litigation, not to mention the underlying challenge of proving their case on the merits. Citibank has put forth several defenses in the cases and Citibank's counsel has represented to our firm that it is prepared to fight Plaintiffs' anticipated motion for adversarial class certification and defend Citibank on the merits should this Settlement fail to achieve final approval. Therefore, especially given the exceptional results achieved for the Class, the added cost, burden, and uncertainty of continued litigation likely would

not lead to better relief for the Class. Regardless, we believed and continue to believe in the merits of Plaintiffs' legal positions and factual assertions and believe they would be successful in obtaining certification of an adversarial class, and ultimately succeed on the merits, absent the Settlement.

21. Class Counsel are among the leading attorneys in the nation with respect to lenders' ability to suspend or reduce HELOCs under TILA, Regulation Z, and the banks' contracts and have successfully prosecuted several similar actions against industry leaders, including JP Morgan Chase, N.A., Wells Fargo Banks, N.A., National City Bank, One West Bank, F.S.B., and GMAC Mortgage, LLC. Attorneys from our firm, Edelson McGuire, have met with lawmakers regarding unjustified HELOC suspensions, and our firm submitted a comprehensive response to the Federal Reserve Board's request for public comment to the proposed changes to Regulation Z. Our involvement with, and investigation of, the HELOC industry has likewise continued through the litigation period and we have remained abreast of changes to the legal landscape and the various changes to policies and procedures that banks have implemented at various times. This included reviewing hundreds of pages of formal, informal, and confirmatory discovery produced throughout the various settlement processes.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 17th day of January 2013, at Denver, Colorado.

STEVEN L. WOODROW, ESQ.

By:     /s/ Steven L. Woodrow

## RULE 45 CERTIFICATION

Pursuant to the provisions of Section X.B of the Northern District of California's General Order No. 45, I certify that I, Sean P. Reis, have obtained the concurrence of Steven L. Woodrow in filing this document, whose signature appears herein.

Dated: January 17, 2013                    /s/ Sean P. Reis